1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

| | |
|---|---|
| 11 FEDERAL AGRICULTURAL MORTGAGE CORPORATION, | Case No. 1:24-cv-01455-KES-SAB |
| 12          Plaintiff, | |
| 13     v. | |
| 14 ASSEMI BROTHERS, LLC; MARICOPA | **ORDER APPOINTING RECEIVER AND FOR PRELIMINARY INJUNCTION** |
| 15 ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW | |
| 16 AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER | |
| 17 AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; | |
| 18 GRADON FARMS, LLC, | |
| 19          Defendants. | |

20

21         On November 27, 2024, Plaintiff Federal Agricultural Mortgage Corporation ("Farmer Mac"

22  or "Plaintiff") filed an Ex Parte Motion for Appointment of Receiver and for Preliminary Injunction.

23  Doc. 15 ("Motion").  The Court calendared the Motion for hearing on January 6, 2024, and set a

24  deadline of January 2, 2024, for any opposition to be filed.  Doc. 26.  The Motion is unopposed and

25  the Court is satisfied that all parties in interest have had sufficient notice of the Motion.

26  Accordingly, the Motion is SUBMITTED without oral argument pursuant to Local Rule 230(g), and

27  the hearing currently set for January 6, 2024, is VACATED.  The Court issues the following written

28  order.

Upon due consideration of the Motion, the Complaint (defined below), the Declaration of Zachary Carpenter (the "Plaintiff Declaration"), the Declaration of receiver Lance Miller (the "Receiver Declaration"), the Court being advised that the relief granted herein has been agreed to by both Plaintiff and all Borrower Defendants (defined below) except for Borrower Defendant Aseemi Brothers, LLC,[1] and good cause appearing therefor, the Court hereby finds that:

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties hereto are of diverse citizenship. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

B.      On November 27, 2024, Plaintiff filed a Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause; and Injunctive Relief (the "Complaint") against the Borrower Defendants.

C.      Lance Miller of Pivot Management Group, LLC ("Pivot Group") is not interested in this action and is competent and qualified to act as receiver.

D.      Appointment of a receiver is appropriate pursuant to Rule 66 of the Federal Rules of Civil Procedure, Rule 232 of the Local Rules of Practice for the United States District Court for the Eastern District of California (the "Local Rules"), and the Court's inherent equitable power to order the appointment of a receiver under federal law.

E.      The appointment of a receiver is not intended to be, nor shall it be, an election of remedies by Plaintiff, and Plaintiff expressly reserves its rights and remedies against Defendants, the Receivership Property, and any and all persons or entities that have any obligations to Plaintiff under applicable law and the Loan Documents with respect to the debt owed to Plaintiff under the Loan Documents.

F.      Good cause exists for the appointment of a receiver in order to preserve perishable agriculture and real property and to maximize the recovery to Plaintiff Farmer Mac through the

---

[1] Borrower Defendant Assemi Brothers LLC has not agreed to the relief set forth herein. However, Assemi Brothers LLC does not own any of the Collateral subject to this Order. Additionally, the Court provided two weeks for any defendant to file an opposition to the Motion, Doc. 26, and none were filed. The Court is satisfied that all parties in interest have had sufficient notice of the Motion.

preservation, management and orderly sale of certain of the assets of Borrower Defendants Assemi Brothers, LLC, a California limited liability company ("Assemi Brothers"), Maricopa Orchards, LLC, a California limited liability company ("Maricopa"), C & A Farms, LLC, a California limited liability company ("C & A Farms"), Whitesbridge Farms, LLC, a California limited liability company ("Whitesbridge"), Willow Avenue Investments, LLC, a California limited liability company ("Willow Avenue"), Lincoln Grantor Farms, LLC, a California limited liability company ("Lincoln"), Copper Avenue Investments, LLC, a California limited liability company ("Copper Avenue"), ACAP Farms, LLC, a California limited liability company ("ACAP"), Cantua Orchards, LLC, a California limited liability company ("Cantua"), and Gradon Farms, LLC, a California limited liability company ("Gradon", and collectively, the "Borrower Defendants"), and for the collection of obligations owed to Borrower Defendants on account of the Receivership Property (as defined below) owned by the Borrower Defendants.[2]

G.      Good cause exists for the entry of a preliminary injunction restraining and enjoining the Borrower Defendants and their agents, affiliates, partners, property managers, employees, assignees, successors, representatives, and all persons acting under and/or in concert with them from committing or permitting waste of the Receivership Property, including any misuse of cash from the operations of Borrower Defendants that are part of the Receivership Property; from removing, transferring, encumbering, or otherwise disposing of the Receivership Property; and from interfering with the Receiver in the discharge of the Receiver's duties. Plaintiff has established that: (i) as a result of the amounts due and owing under the Farmer Mac Loans, the defaults thereunder, and the difficulty in curing any such defaults, Plaintiff is likely to succeed on the merits of its claim; (ii) Plaintiff is likely to suffer irreparable harm in the absence of an injunction; (iii) the balance of the equities is in Plaintiff's favor; and (iv) when coupled with the appointment of a receiver, an injunction benefits the public interest because the Receiver needs to be able fulfill his duties and obligations without potentially disruptive interference.

---

[2] Capitalized terms used herein but not defined herein shall have the meaning given them in the Complaint.

H.      Certain costs may be incurred by the Receiver (as defined below) in this action, in Case No. 1:24-cv-01102-KES-SAB or in other related cases where the Receiver has been or will be appointed as receiver, as well as expenses incurred in relation to real property and other collateral subject to liens held by various other lenders (together, the "Other Real Estate Lenders"), that are properly allocable in whole or in part to the Other Real Estate Lenders. Plaintiff and the Receiver have reached an agreement on the allocation of costs between it and the Other Real Estate Lenders. In the event of a dispute over any cost allocable to Plaintiff or the Other Real Estate Lenders, the Receiver shall consult with Plaintiff and the Other Real Estate Lenders in an effort to reach joint agreement on allocation, and to pay any such agreed allocated cost amount. Absent agreement, any dispute over which costs (or partial costs) may be paid by a receivership estate shall be determined by the Court, after notice and a hearing.

I.      For all other costs borne by the Receiver that are properly allocable to real property or other collateral held by Other Real Estate Lenders ("Other Property") or real property held by Defendants and related entities that are not subject to any lender's mortgage or deed of trust (the "Free and Clear Properties"), all rights are reserved to the Receiver to seek payment from or surcharge against such entities or properties, with all defenses and rights by such entities (or their property) expressly reserved.

J.      Plaintiff has advised the Court that it has agreed to finance such amounts as are reasonably necessary to pay for ongoing operations on, and maintenance of, the Receivership Property in accordance with the budget, as may be amended by agreement between Plaintiff, Defendants and Receiver, or as otherwise ordered by the Court (the "Budget") attached hereto as **Exhibit A**. The amounts funded under the Budget constitute loans by Plaintiff to Defendants that shall be administered by the Receiver.

Based upon the foregoing, **IT IS ORDERED:**

I.      **GENERAL PROVISIONS**

1.      Lance Miller of Pivot Management Group, LLC (the "Receiver"),[3] who the Court

_____

[3] The Receiver shall charge the amounts set forth in the Miller Declaration for his services and

finds is qualified and independent, is hereby appointed as receiver and shall be vested with complete jurisdiction and sole control over all of the: (a) Receivership Property and the business operations related to the Receivership Property; and (b) any claims, demands, or causes of action of any kind, character or description, regardless of the legal principle or theory upon which the same may be based, whether known or unknown, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, wherever located (collectively, the "Causes of Action"), to the extent that such Causes of Action constitute Receivership Property; provided, that, for the avoidance of doubt, this Order shall not authorize or obligate Receiver to take control of, oversee, operate, fund, or maintain any Other Property or the Free and Clear Properties, except as explicitly set forth herein.

2.      The Receiver is awarded exclusive possession and control over the "Receivership Property" defined as follows:

a.      The Real Property, as defined in the Complaint and specifically:

(i)      The property subject to any of: (1) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by C & A Farms, encumbering real property located in Fresno County, California as more particularly described therein and recorded as file no. 2023-0011222 in the Fresno County Recorder, Fresno County, California on February 8, 2023; (2) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by C & A Farms, encumbering real property located in Fresno County, California as more particularly described therein and recorded as file no. 2023-0011223 in the Fresno County Recorder, Fresno County, California on February 8, 2023; (3) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Copper Avenue, ACAP, Lincoln, Gradon, and Cantua encumbering real property located in Kings County, California as more particularly described therein and recorded as document no. 2303339 in the

_____

expenses incurred, each of which is subject to annual adjustment upon notice to the parties.

Kings County Recorder, Kings County, California on March 3, 2023; (4) that certain Amended and Restated Open-End Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Copper Avenue, ACAP, Lincoln, Gradon, and Cantua, encumbering real property located in Fresno County, California as more particularly described therein and recorded as file no. 2023-0011386 in the Fresno County Recorder, Fresno County, California on February 8, 2023; (5) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Copper Avenue, ACAP, Lincoln, Gradon, and Cantua, encumbering real property located in Kings County, California as more particularly described therein and recorded as document no. 2303340 in the Kings County Recorder, Kings County, California on March 3, 2023; (6) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Copper Avenue, ACAP, Lincoln, Gradon, and Cantua, encumbering real property located in Fresno County, California as more particularly described therein and recorded as file no. 2023-0011359 in the Fresno County Recorder, Fresno County, California on February 8, 2023; (7) that certain Amended and Restated Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Maricopa, C & A Farms, and Willow, encumbering real property located in Kern County, California as more particularly described therein and recorded as document no. 223016523 in the Kern County Official Records, Kern County, California on February 13, 2023; (8) that certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Copper, Lincoln, and ACAP, encumbering real property located in Kings County, California as more particularly described therein and recorded as document no. 2301891 in the Kings County Official Records, Kings County, California on February 7, 2023; (9) that certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by C & A Farms, Cantua, and Gradon, encumbering real property located in Fresno County, California as more particularly described therein and recorded as file no. 2023-0010330 in the Fresno County Recorder, Fresno County, California on February 6, 2023; and (10) that certain Deed of Trust, Security Agreement, Assignment of Rents and Fixture Filing dated February 2, 2023, by Maricopa, C & A Farms, and Willow, encumbering real property located in Kern County, California

as more particularly described therein and recorded as document no. 223013714 in the Kern County Official Records, Kern County, California on February 6, 2023 (the foregoing nos. (1)-(10), collectively, the "Deeds of Trust"), not limited to APNs:

| APNs: | | |
|---|---|---|
| **KINGS COUNTY:** | **FRESNO COUNTY:** | **KERN COUNTY:** |
| | 038-141-21S | 220-170-01 |
| 004-130-030 | 040-020-18-S | 220-170-02 |
| 004-140-012 | 464-20-07 | 220-170-07 |
| (Portion) | 464-020-08 | 220-110-87 |
| 004-140-012 | 464-020-09 | 220-110-10 |
| (Portion) | 464-020-12 | 220-130-02 |
| 004-140-005 | 464-020-13 | 220-170-08 |
| 004-140-002 | 464-020-15 | 220-170-09 |
| 004-230-014 | 464-020-16 | 220-170-10 |
| 004-230-026 | 464-020-19 | 220-170-11 |
| (Portion) | 464-020-25 | 220-170-31 |
| 004-230-026 | 464-020-26 | 220-170-32 |
| (Portion) | 464-020-28 | 295-040-30 |
| 004-230-027 | 464-020-29 | 295-040-31 |
| 004-230-013 | 464-020-30 | 239-150-11 |
| | 464-020-31 | |
| | 464-020-34 | |
| | 464-020-35 | |
| | 464-020-36 | |
| | 464-020-37 | |
| | 464-060-17 | |
| | 477-021-09 | |

| | | |
|---|---|---|
| | **477-021-11** | |
| | **477-021-18** | |
| | **477-021-19** | |
| | **477-021-20** | |
| | **477-021-25** | |
| | **464-101-23** | |
| | **464-070-10** | |
| | **464-070-11** | |

Along with all other property and fixtures associated with said APNs described in said Deeds of Trust.

      b.      Other Collateral

      (i)      In addition to the Real Property, pursuant to Section 19 of each of the Deeds of Trust, the Deeds of Trust "constitute a security agreement within the meaning of the Uniform Commercial Code as adopted by the State of California," and provide that the Farmer Mac Loans are secured, pursuant to the recital portion of each of the Deeds of Trust, by certain other items of personal property collateral and fixtures, including but not limited to: all buildings, improvements, equipment, fixtures and permanent plantings affixed, attached to or incorporated in the Real Property, all water rights appurtenant to the Real Property (the "Water Rights"), whether such water rights are riparian, appropriative or otherwise, along with all ditch and ditch rights and shares of stock, licenses, permits and contracts evidencing such water or ditch rights appurtenant to the Real Property, and all wells, reservoirs, dams, embankment or fixtures located on the real Property, all windmills, pumps, irrigation, equipment, motors, engines, and devices of every kind associated with the Real Property (exclusive of the Water Rights, the "Personal Property"; and together with the Water Rights and the Real Property, the "Collateral"), and said interests perfected by UCC Financing Statements Filing Number 18-7631437101, and Filing Number 19-7741674006 filed with the California Secretary of State, and Filing No. 2018-0011387-00 in Fresno County, California, Filing No. 2019-0123393 in Fresno County, California, and Filing No. 1917425, in

Kings County, California.

(ii)    For the avoidance of doubt, the Collateral does not include: (a) crops or crop proceeds that are subject to the lien of U.S. Bank; or (b) equipment that is not (1) a fixture affixed to the real property or (2) wells, irrigation and drainage pumps, motors, pipes, sprinklers, drip line and emitters, filters, water measurement, meters, control structures, or other irrigation equipment or frost protection related equipment.

3.    The Borrower Defendants and their affiliates performing services for or on behalf of Borrower Defendants shall: (a) make their respective files, books, records, pertinent electronic files, and personnel, including directors, officers, management, and employees, available to the Receiver, on reasonable advance notice, to assist the Receiver in the performance of his duties; and (b) promptly provide Receiver with copies of all mail, regular, overnight or express or personal delivery, addressed to any of the Borrower Defendants related to the Receivership Property.

4.    In addition to the rights, powers, benefits, and authorities granted in the preceding paragraphs, the Receiver is hereby vested with complete and sole authority and jurisdiction over the Receivership Property to the maximum extent permitted by 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and this Court's inherent powers, and is hereby empowered and permitted to take any and all actions necessary and proper to carry out the express provisions of this Order, including but not limited to the following rights, powers, benefits, and responsibilities:

a.    To take immediate possession of, custody of, and control over all the Receivership Property;

b.    To enter into any property where the Receivership Property may be located in order to take immediate possession of, custody of, and control over Receivership Property;

c.    To manage, control, operate and maintain the Receivership Property including, without limitation, the continuation, renegotiation, resolution, or termination of any contract related to the Receivership Property; provided, however, that nothing in this Order authorizes the Receiver to terminate any well agreements, water supply agreements, access agreements, or similar agreements, or other contracts that, in each case, also explicitly benefit Other Property or Free and Clear Properties;

9

d.      Subject to further order of the Court, to abandon or sell Receivership Property as the Receiver may deem prudent outside of the ordinary course of the Borrower Defendants' businesses.

i.      All sales or transfers made by the Receiver shall be free of liens, claims, and encumbrances, with any such liens, claims and encumbrances attaching to the proceeds therefrom subject to further order of the Court; and

ii.      The Receiver may abandon or sell Receivership Property outside of the ordinary course of the Borrower Defendants' businesses by motion, and shall obtain such order(s) from the Court and shall provide no less than fourteen (14) days' notice of such motion(s) to the Court and all parties in interest in this receivership, and the lack of any written objection by such parties in interest within the fourteen-day period shall be deemed consent to such use, abandonment, or sale;

e.      To make a motion or application to the Court regarding instruction or clarification in connection with the powers and scope of the receivership, Receivership Property, and this Order, including but not limited to obtaining orders further instructing the Receiver or orders clarifying or expanding the scope of the receivership or the Receivership Property;

f.      To demand, collect, sue for, and receive all receipts, rents, profits, monies, security deposits, advance deposits, funds, earnings, issues, income, and/or other revenues or payments arising from the Receivership Property, as a whole or as to any and all improvements thereon;

g.      To take and receive possession of any money on deposit in any bank accounts and chattel paper of Borrower-Defendants, in either case that is Receivership Property. The Receiver shall have co-administrator status on Borrower-Defendants' respective cash management systems and bank accounts and may continue to use and make payments through Borrower-Defendants' respective cash management systems and bank accounts for a period beginning on the day of entry of this Order up to and including January 13, 2025.

h.      To establish bank accounts at any bank the Receiver deems appropriate for the deposit of monies and funds collected and received in connection with his administration of the

1  receivership estate, including but not limited to any funds advanced by Plaintiff, provided that all

2  funds on deposit are insured by an agency of the United States government;

3          i.      To take possession of all proceeds of all Receivership Property and the 2025

4  Crop (as defined below), as deemed appropriate by the Receiver, including, but not limited to, taking

5  possession of any such Receivership Property in the possession or control of any other party after

6  consulting with Plaintiff; provided, however, that nothing in this Order shall permit the Receiver to:

7                  i.      interfere with, terminate, or refuse to honor the existing well, water

8  supply, access, and other agreements relating to water that benefit the collateral of any of the Other

9  Real Estate Lenders or the Free and Clear Properties; or

10                 ii.     interfere with any Other Real Estate Lenders' Permitted Actions (as

11  defined below), absent further Order of the Court;

12          j.      To immediately borrow from Plaintiff such funds as Receiver and Plaintiff

13  deem necessary for the current operation of the receivership estate, to continue to borrow money

14  from Plaintiff for the operation of the receivership estate as needed, from time-to-time, and to issue

15  to Plaintiff from time-to-time Receiver's Certificates or such other documents or instruments to

16  evidence such borrowings as well as protective advances made by the Plaintiff following the

17  commencement of this action but prior to the appointment of the Receiver, subject to Plaintiff's sole

18  right to decide whether or not to advance any or all funds requested by the Receiver, and to issue

19  further Receiver's Certificates as such funds may be reasonably necessary for the Receiver to fulfill

20  his duties and as agreed upon in writing by Plaintiff, with such Receiver's Certificates or such other

21  documents or instruments to have liens against (i) the Receivership Property that are immediately

22  senior in priority to the existing liens of Plaintiff,[4] and (ii) the crop to be grown on, and in 2025

23  harvested from, the Receivership Property (the "2025 Crop"), which 2025 Crop would not exist but

24  for the funding provided hereunder, that are senior to the liens of all other lienholders on the 2025

25  Crop. With the exceptions of fees and expenses owing to the Receiver, Receiver's Counsel, and the

26

27  _____

[4] References to the liens of Plaintiff herein include those liens held by U.S. Bank National

28  Association, as Custodian/Trustee for Farmer Mac.

other professionals employed by the Receiver, such Receiver's Certificates shall have seniority over all other claims against the receivership estate on a priority repayment basis. Any liability for such borrowings shall solely be the responsibility of the Borrower Defendants, and not the Receiver. After any Receiver's Certificate, or such other documents or instruments, is issued, a copy of such shall be filed with the Court. The original instrument shall be delivered to Plaintiff to be filed and/or recorded in Plaintiff's discretion, as applicable. Notwithstanding anything to the contrary, and with the exception of the 2025 Crop, the Receiver's Certificates shall not create any lien on or otherwise encumber any property that is not Receivership Property or any property against which Plaintiff did not hold a perfected, first priority lien;

k.      To execute and prepare all documents and to perform all acts, including entering into contracts and operating licenses, and signing checks or initiating and processing electronic funds transfers in the Receiver's own name (solely in his capacity as receiver), which the Receiver reasonably believes are necessary to preserving, protecting, managing, controlling and/or liquidating the Receivership Property, including, but not limited to any Receivership Property now in the possession or control of any third party;

l.      To compromise debts of the Borrower Defendants in connection with or related to the Receivership Property and to do all things and to incur the risks and obligations of similar businesses operating in accordance with reasonable agricultural and/or viticultural standards and practices, and no risk or obligation incurred by the Receiver shall be at the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

m.      To investigate, identify, pursue, and resolve, any and all claims or causes of action that constitute Receivership Property;

n.      To take all reasonable actions to collect, including contacting account debtors and bringing and prosecuting actions, all accounts receivable of the Borrower Defendants relating to the Receivership Property, whether now existing or hereafter created, and to direct such account debtors to cease sending further accounts receivable payments to the Borrower Defendants or any other third party and to instruct such account debtors and/or any other third party to send any and all payments directly to the Receiver;

o.    To hire and terminate agents, employees, appraisers, guards, clerks, accountants, liquidators, auctioneers, attorneys, management companies, and consultants without cause, to administer the receivership estate, and to protect the Receivership Property as the Receiver deems reasonably necessary; to purchase insurance, materials, supplies and services and to pay therefore at the usual rate and prices out of funds that shall come into his possession; to pay the reasonable value of said services out of the proceeds of the estate or funds that come into his possession; and that no risk or obligation incurred by the Receiver shall be the personal risk or obligation of the Receiver, but shall be the risk or obligation of the receivership estate;

p.    To employ, subject to Court approval, such brokers or agents as the Receiver determines appropriate in his business judgment to aid in the marketing or sale of Receivership Property undertaken pursuant to Paragraph 4(d)(i) and (ii) hereof; provided, (i) the Receiver shall consult with Plaintiff on the selection of any broker or agent for such marketing or sale process, and include Plaintiff when interviewing potential brokers and agents; (ii) any and all such appointments or engagements shall be subject to the prior written consent of Plaintiff (which written consent shall not be unreasonably withheld or delayed and which may be provided through counsel and by electronic mail); (iii) the Receiver shall provide Plaintiff all information reasonably requested by Plaintiff in connection with the marketing and sale of Receivership Property; and (iv) for the avoidance of doubt, (x) any such marketing or sale process may be independent of the Prudential Receivership and any other receivership in which Receiver is serving as receiver, and (y) the Receiver's brokers or agents in this proceeding may be different than those from the Prudential Receivership and any other receivership in which the Receiver is serving as receiver;

q.    To employ a law firm as Receiver's legal counsel ("Receiver's Counsel") in this matter, as reasonably necessary to accomplish the purposes of this Order and pay the reasonable fees and expenses of such Receiver's Counsel for services rendered in preparation of and during the receivership, as approved by the Court. Receiver's Counsel shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate and in preparing for the Receiver's appointment. The attorneys' fees and costs incurred by Receiver's Counsel may be included in the administrative costs and expenses to be paid to the Receiver in accordance with

13

Paragraph 12 of this Order;

r.        To institute ancillary proceedings in this Court, the State of California, or other states and countries, prosecute and tender all suits or insurance claims, and pursue all remedies available by law as is necessary to preserve and protect the Receivership Property and ensure compliance with the Receiver's authority, and the Receiver may engage the services of legal counsel in furtherance of such actions. The Receiver may pay for such services from the funds of the receivership estate;

s.        To exclude Borrower Defendants or anyone claiming under or through the Borrower Defendants who does not have a lease or rental agreement entitling them to possession of the Receivership Property, or any portion thereof;

t.        To bring and prosecute all proper action for collection of payments, rent, and lease payments due, if any, on the Receivership Property, as well as necessary actions and proceedings for the removal of tenants or lessees in default for any rental or lease agreement, or any other persons, from the Receivership Property, to bring and prosecute all proper actions for the protection of the Receivership Property or recovery thereof;

u.        To assume, extend, or modify any pre-receivership contracts or agreements, including solar purchase options and unexpired leases, relating solely to the Receivership Property and/or reject such contracts in the Receiver's sole judgment and discretion;

v.        To employ Pivot Group as Receiver's financial advisor in this matter, as reasonably necessary to accomplish the purposes of this Order. Compensation to Pivot Group shall be based on the hourly rates and expenses as set forth in the Receiver Declaration, subject to annual adjustment upon notice to the parties. Pivot Group shall be entitled to reimbursement of all reasonable costs and expenses incurred on behalf of the receivership estate. The fees and costs incurred by Pivot Group may be included in the administrative costs and expenses to be paid to the Receiver in accordance with Paragraph 12 of this Order;

w.        To analyze the books, records, pertinent electronic files, and files of Borrower Defendants and any of their affiliates performing services for or on behalf of Borrower Defendants, including bank accounts, accounting records, and software related thereto, to determine the sources

and uses of cash, accounts, and proceeds of the Receivership Property and to copy and/or map such books, records, pertinent electronic files, and files as Receiver deems appropriate; and

        x.     To post a sufficient bond or undertaking with the Court in the amount of $1,000,000.00, as required by L.R. 232(i).

5.     If there is insufficient insurance coverage on the Receivership Property, it is hereby ordered that the Receiver shall have thirty (30) business days to procure said insurance on the Receivership Property, provided the Receiver has funds available to do so. The Receiver is acting solely in his capacity as Receiver and shall have no personal liability for claims against the Borrower Defendants, individually or collectively, or for failure to obtain insurance. With respect to any insurance coverage, the Receiver, and other parties with insurable interests, shall be named as additional insureds on the policies for the period that the Receiver shall be in possession of the Receivership Property. With respect to any property coverage in existence or obtained on or with respect to the Receivership Property, Plaintiff shall be named as the mortgagee and loss payee.

6.     Upon presentation of a conformed copy of this Order to any third party, banks, or depositories owing performance of any obligation or duty to Borrower Defendants with respect to the Receivership Property, such third parties shall render any performance or duties with respect to the Receivership Property directly to the Receiver, and such copy may be presented to any recalcitrant third parties to advise the same of the Receiver's appointment and obtain cooperation.

7.     Receiver, as an officer of the Court, shall be entitled to the assistance of law enforcement officials when taking possession, or at any other time during the term of the receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property and assets, without further order from the Court.

8.     Any securities or deposits that constitute Receivership Property and which tenants or other persons have paid to Borrower Defendants or their agents and which are not paid to the Receiver, and over which the Receiver has no control, shall be obligations of Borrower Defendants, and may not be refunded to the tenants by the Receiver.

///

///

9.      The Receiver shall be under no obligation to complete or file tax returns on behalf of Borrower Defendants for income or other taxes arising before the date of this Order. The Receiver shall otherwise comply with all applicable laws and regulations relating to tax-reporting requirements. The Receiver shall furnish Borrower Defendants with such access to books and records within the Receiver's custody or control as reasonably may be necessary for Borrower Defendants to complete and file tax returns on their own behalf.

10.     The Receiver shall not be entitled to utilize the tax identification numbers of any of the Borrower Defendants in connection with any powers exercised pursuant to this Order and shall obtain new tax identification numbers.

11.     Any utility company providing services to real property subject to this Order, including gas, electricity, water, sewer, trash collection, telephone, cable, communications Wi-Fi, Internet, or similar services, shall be prohibited from discontinuing services to Receivership Property and prohibited from failing to comply with any request by the Receiver to, and are prohibited from refusing to, reinstitute service to the subject property based any non-payment by Borrower Defendants prior to the Receiver's appointment by the Court based upon unpaid bills incurred by Borrower Defendants. Further, such utilities shall transfer any deposits held by the utility company solely on account of Receivership Property to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. The Receiver shall make commercially reasonable efforts to open new accounts under the name of the Receiver within 30 days of entry of this Order, and until such time as such new accounts are open the Receiver may continue to operate under Borrower Defendants' accounts.

12.     All proceeds arising from the Receivership Property shall be used to pay: (a) amounts owed to non-insider third parties arising in the ordinary course of business for operations conducted on or related to Receivership Property, as well as all amounts the Receiver determines, in his reasonable business judgment, are necessary to maintain, preserve, and care for Receivership Property; (b) the fees and costs owing to Receiver, Receiver's Counsel, and Receiver's other professionals, subject to and except as otherwise set forth below, and (c) any indemnification owing

to the Receiver pursuant to Paragraph 16 below in connection herewith (collectively, the "Administrative Claimants"), in each case prior to payment to Plaintiff. Plaintiff has agreed and there hereby is a carveout from Plaintiff's interests in the Receivership Property sufficient to secure payment in full of all amounts owed or owing to the Administrative Claimants. The Receiver is acting solely in his capacity as Receiver and in no event shall have any personal liability for any debts or obligations incurred by or on behalf of Borrower Defendants.

**II.   <u>RECEIVER'S FURTHER DUTIES</u>**

13.   The Receiver shall have the following reporting requirements:

a.   Monthly Reporting/Compensation Procedures:

i.   Monthly Statements. On or before the 20th day of each month following the month for which compensation is sought, the Receiver and his professionals shall file and serve on the Plaintiff, the Defendants, and all parties receiving ECF notice (collectively, the "Notice Parties") a statement detailing the fees and expenses incurred for the prior month (each, a "Monthly Statement"); provided, however, the parties may redact any privileged material or attorney work product from any invoices or time records submitted with the Monthly Statements. Each Monthly Statement shall identify the extent to which the fees and expenses incurred for the prior month exceed the estimated fees and expenses set forth in the Budget and an explanation for why the budget was exceeded.

ii.   Interim Payment. Within three (3) business days of the filing of the Monthly Statement, the Receiver shall pay, without further order of the Court, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Statement that are approved by the Receiver (each, an "Interim Payment"). An Interim Payment shall be deemed conditionally allowed by the Court until the Court reviews and allows such fees and expenses on a final basis pursuant to the Quarterly Fee Motion procedures described below.

iii.   Application of LR 232(g). The interim compensation procedures described above are not subject to the notice and hearing procedures of Local Rule 232(g).

///

///

b.      Quarterly Reporting/Compensation Procedures:

i.      Quarterly Fee Motion.  Approximately every three (3) months, the Receiver and his professionals shall file a motion that requests final allowance and approval of the fees and expenses requested in the Monthly Statements for the prior three-month period, including all Interim Payments ("Quarterly Fee Motion") and set such Quarterly Fee Motion for hearing before the Court pursuant to Local Rule 232(g).  The Quarterly Fee Motion shall be filed and served in the same manner as the Monthly Statements.  The Court may vacate any hearing and take any Quarterly Fee Motion under submission at its discretion.

ii.      Objection Period. The Notice Parties shall have 14 days following the filing of a Quarterly Fee Motion (the "Objection Period") to review the Quarterly Fee Motion.

iii.      Notice of Objection. If any Notice Party wishes to object to the fees or expenses in a Quarterly Fee Motion, the objecting Notice Party must—within the Objection Period—serve (but not file with the Court) a "Notice of Objection" on the Receiver and the applicable professional to which the Quarterly Fee Motion relates.  A Notice of Objection must state the nature of the objection with reasonable specificity and identify the amount of the fees or costs to which the objection is made.

iv.      Resolution of Notices of Objection. The parties shall attempt to resolve any such Notice of Objection consensually. If the parties are unable to reach a resolution within five (5) days after service of the Notice of Objection, unless otherwise extended by agreement, the objecting party may file a written objection with the Court. The Court will consider and dispose of any filed objections on a final basis at the hearing on the applicable Quarterly Fee Motion or after taking the matter under submission, and authorize the Receiver to pay the full, approved amount of the fees and/or expenses that remain unpaid. If the objection relates to whether a redacted time entry is privileged or attorney work product, the Court may review the unredacted time entries in camera to resolve the objection.

v.      Refund of Disallowed Fees or Expenses. Any portion of an Interim Payment not ultimately allowed by the Court will be refunded by the relevant professional within five (5) business days of an order disallowing such fees or expenses on a final basis.

c.      Pursuant to 28 U.S.C. § 754, the Receiver shall, to the extent practicable, within ten (10) days following entry of this Order, file copies of the Complaint and of this Order with the Clerk of the District Court for every federal judicial district in which the Receiver has reason to believe Receivership Property may be found (the "Receivership Filings"). Notwithstanding the ten-day time limitation set forth in 28 U.S.C. § 754, the Receiver may apply to the Court for an extension of time within which to complete the Receivership Filings. Subject to the Court's discretion, such applications shall be freely granted to enable the provisions of this Order to be carried out; and

d.      The Receiver shall, when practicable, file in this action an inventory of all property of which he has taken possession pursuant to this Order and shall conduct periodic accountings thereafter;

14.     The Receiver shall make advances to the Borrower Defendants pursuant to the Budget as determined by the Receiver in his reasonable discretion and as provided for herein. For the avoidance of doubt, notwithstanding whether the Receiver determines that additional funding is needed for the purposes set forth in the Budget, Plaintiff shall have no obligations to fund any additional amounts.

15.     The scope of the Receiver's duties to Plaintiff are solely as follows: (a) to preserve the Receivership Property and protect it from dissipation and diminution in value; (b) to conduct business and operations in connection with the Receivership Property, including the collection and disbursement of proceeds of Receivership Property; and (c) to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary court of business subject to the Court's approval.

16.     The Receiver shall be entitled, to the fullest extent of the law, to indemnification from the Borrower Defendants, and such Borrower Defendants shall hold the Receiver harmless from any liability, loss, or damage the Receiver may suffer as a result of claims, demands, costs or judgments against him arising out of the activities to be carried out pursuant to the authority and

obligations of his appointment pursuant to this Order or any supplemental Order, which indemnification and obligation to hold harmless shall be paid solely from the Receivership Property; provided however, the Receiver shall not be entitled to indemnification for willful misconduct, gross negligence, or fraud as determined by a final order of the Court. The carveout and charging lien provided for in Paragraph 12 above shall also apply to any indemnification obligations owed pursuant to this Paragraph.

17.     Receiver shall reasonably cooperate and communicate with U.S. Bank, the Other Real Estate Lenders, the Borrower Defendants and other parties in interest with respect to his reporting obligations pursuant to the terms of this Order and shall provide any reports set forth in Paragraph 13 above to U.S. Bank, the Other Real Estate Lenders, and the Defendants at the same time that it provides such to Plaintiff and this Court and, upon request, other parties in interest.

18.     For the avoidance of doubt, no provision of this Order shall be interpreted to prohibit or interfere with Borrower Defendants' right to seek protection under the United States Bankruptcy Code.

19.     Except as specifically set forth herein, this Order shall not prejudice the rights of any Other Real Estate Lenders to seek any and all enforcement remedies or take other such actions, including but not limited to foreclosure or the seeking of the appointment of a receiver as to their respective interests in Other Property, excluding the Receivership Property and proceeds of Receivership Property (collectively, the "Permitted Actions"), and nothing in this Order shall be deemed to preclude the Permitted Actions or the ability of such other receiver to collect, hold, and disburse proceeds attributable to Other Property over which such receiver is appointed, in accordance with any order appointing such a receiver.

**PRELIMINARY INJUNCTION IN AID OF THE RECEIVER**

**IT IS FURTHER ORDERED** that, except by leave of the Court, Receiver's express prior written consent, or as otherwise set forth herein, including Paragraph 19 above, during the pendency of the receivership ordered herein, Borrower Defendants and all of their customers, principals, investors, collectors, stockholders, members, managers, lessors, other creditors, judgment holders, and/or other persons, including those seeking to establish or enforce any claim, debt, right, lien,

and/or interest against Borrower Defendants or Receivership Property, or any of their subsidiaries or affiliates, and/or all others acting for or on behalf of such persons, attorneys, trustees, agents, sheriffs, constables, marshals, and/or any other officers and their deputies, and their respective attorneys, servants, agents, and/or employees, be and are hereby stayed from:

1.    Interfering, hindering or molesting in any way the Receiver in the performance of the Receiver's duties and other performance of any duties incidental thereto;

2.    Transferring, directly or indirectly, any interest by sale, gift, pledge, grant of security interest, assignment or encumbrance in any manner the Receivership Property or proceeds thereof;

3.    Diverting any water from any of the Receivership Property to or for the benefit of any non-Borrower Defendant entity, except to the extent that such diversion is made consistent with a valid water supply agreement or similar agreement between such party and Borrower Defendant;

4.    Moving the physical location of Receivership Property from any location where Borrower Defendants are conducting business or storing the Receivership Property, or any proceeds and products thereof, from the business premises except at the direction of the Receiver;

5.    Transferring, concealing, destroying, defacing, or altering any of Borrower Defendants' books and records for the Receivership Property;

6.    Demanding, collecting, receiving, or in any other way diverting or using any of the receipts, rents, issues, profits, and or proceeds emanating from the Receivership Property;

7.    Causing any mail, express or overnight or personal delivery of Borrower Defendants in their capacity as the owner, manager or operator of the Receivership Property to be forwarded to any addresses other than the business address of each of the Borrower Defendants, or otherwise interfering with or intercepting any mail, express or overnight or personal delivery intended for Borrower Defendants in their capacity as the owner, manager or operator of the Receivership Property;

8.    Failing to cooperate with or reasonably assist Receiver, as required by this Order, including promptly advising of the nature and extent of insurance coverage and contracts, or refusing to promptly turn over to the Receiver all contracts, monies, checks, or proceeds that constitute Receivership Property and/or failing to make available to the Receiver all files, pertinent electronic

files, books, and records of Borrower Defendants and their affiliates performing services for or on behalf of Borrower Defendants relating to the Receivership Property;

9.      Terminating, modifying, or otherwise amending any contract or agreement with a third party that in any way relates to Receivership Property, including but not limited to Defendants' vendors or employees;

10.     Plaintiff and its officers, employees, and agents and the Receiver shall have prompt access to all business premises of Borrower Defendants that are related to the Receivership Property and the books and records of the foregoing to enable Plaintiff and the Receiver to review and inspect the goods, farm products, inventory, and other Receivership Property for the purposes of accounting and appraisal.  For the avoidance of doubt, except as specifically set forth herein, the foregoing Paragraphs 1-10 shall not prejudice U.S. Bank's or any Other Real Estate Lenders' rights to seek or take any and all Permitted Actions, and nothing in the foregoing Paragraphs 1-10 shall be deemed to preclude the Permitted Actions.

**IT IS FURTHER ORDERED** that except by leave of the Court, Receiver's express prior written consent, or as otherwise set forth herein, including Paragraph 19 above, during the pendency of the receivership ordered herein, Borrower Defendants and all of their investors, shareholders, members, managers, collectors, lessors, customers, tenants, junior lien holders of the Receivership Property, and other persons seeking to establish or enforce any claim, right or interest against or on behalf of Borrower Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals and other officers and their deputies, and their respective attorneys, agents, servants, and employees be and are hereby stayed from the following without further order of the Court:

1.      Commencing, prosecuting, continuing or enforcing any suit or proceeding against Borrower Defendants, except as such actions may be filed to toll any applicable statutes of limitations, with respect to the Receivership Property;

2.      Commencing, prosecuting, continuing or entering into any suit or proceeding in the name or on behalf of Borrower Defendants with respect to the Receivership Property;

3.      Accelerating the due date of any obligation or claimed obligation in connection with,

enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, any Receivership Property or attempting to foreclose, forfeit, alter, or terminate any of Borrower Defendants' interest in any Receivership Property, including, without limitation, the establishment, granting or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise with respect to the Receivership Property;

4.      Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any Receivership Property, wheresoever located; and

5.      Doing any act or thing whatsoever to interfere with the Receiver taking control, possession, or management of the Receivership Property or any other property subject to this Order, or to in any way interfere with the Receiver, or to harass or interfere with the duties of the Receiver, or to interfere in any manner with the exclusive jurisdiction of the Court over the property and assets of Borrower Defendants. For the avoidance of doubt, except as specifically set for the herein, the foregoing Paragraphs 1-5 shall not prejudice U.S. Bank's or any Other Real Estate Lenders' rights to seek or take any and all Permitted Actions, and nothing in the foregoing Paragraphs 1-5 shall be deemed to preclude the Permitted Actions.

**IT IS FURTHER ORDERED** that upon entry of this Order, Plaintiff shall take all reasonable efforts to serve this Order promptly on all Borrower Defendants, U.S. Bank, and the Other Real Estate Lenders; provided, however, that any such parties that have appeared in this case and are receiving notices via the Court's CM/ECF system shall be deemed to have been served a copy of this Order upon its entry by the Court.

**IT IS SO ORDERED.**

IT IS SO ORDERED.

Dated:   January 3, 2025

_____
UNITED STATES DISTRICT JUDGE

Exhibit A

CONFIDENTIAL

**Maricopa Orchards - DLM**
**Receivership Forecast - Conservative Summaries**
**12/12/2024**

*($000s, except acres)*

| Lender | Total Budget | | | | | | | |
| | Opex[1] | | | Receiver Pro Fees | | | | Total |
| | Acres[2] | Acre % | Opex | In/Out | Acres | Acre % | Pro Fees | |
|---|---|---|---|---|---|---|---|---|
| ▇▇▇▇ | | | | ▇ | | | | ▇▇▇ |
| ▇▇▇▇ | | | | ▇ | | | | |
| Farmer Mac | 1,189 | 4.9% | 3,830 | In | 1,189 | 4.9% | 373 | 4,203 |
| ▇▇▇▇ | | | ▇▇ | | | | ▇▇ | ▇▇ |



*($000s, except acres)*

| Lender | Through Q1 2025 | | | | | | | |
| | Opex[1] | | | Receiver Pro Fees | | | | Total |
| | Acres[2] | Acre % | Opex | In/Out | Acres | Acre % | Pro Fees | |
|---|---|---|---|---|---|---|---|---|
| ▇▇▇▇ | | | | ▇ | | | | ▇▇▇ |
| ▇▇▇▇ | | | | ▇ | | | | |
| Farmer Mac | 1,189 | 4.9% | 2,038 | In | 1,189 | 4.9% | 204 | 2,241 |
| ▇▇▇▇ | | | ▇▇ | | | | ▇▇ | ▇▇ |



*Notes*
[1] *Includes loan interest of $5.3M and $1.2M in the Total Budget and Through Q1, respectively*
*Nut harvest costs of $9.9M occur outside of this forecast period*
[2] *Planted acres only (source: Field Worksheet Copy 11.13.24)*

**Maricopa Orchards - DLM**
**Receivership Forecast - Conservative Thru Q1**
**12/12/2024**     *2025 Crop Budget --->*

| $ thousands | | Forecast 11/8/24 | Forecast 11/15/24 | Forecast 11/22/24 | Forecast 11/29/24 | Forecast 12/6/24 | Forecast 12/13/24 | Forecast 12/20/24 | Forecast 12/27/24 | Forecast 1/3/25 | Forecast 1/10/25 | Forecast 1/17/25 | Forecast 1/24/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Disbursements** | | | | | | | | | | | | | |
| Labor | $ | - | (245) | (179) | - | (179) | - | (179) | - | - | (179) | - | - |
| Lease Payments | | - | - | - | - | - | - | - | - | - | - | - | - |
| CapEx | | - | - | - | - | - | - | - | - | - | - | - | - |
| Property Tax & Land Base Charges | | - | - | (1,324) | - | - | (3,335) | - | - | - | - | - | - |
| Growing | | (608) | (837) | (1,923) | (1,102) | (904) | (904) | (904) | (904) | (904) | (1,370) | (1,370) | (1,370) |
| Harvest | | - | - | - | - | - | - | - | - | - | - | - | - |
| Overhead | | (243) | (243) | (243) | (243) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) |
| Contract Farming Deposit | | - | - | - | - | (1,114) | - | - | - | - | - | - | - |
| Miscellaneous | | (2) | (6) | (28) | (12) | (18) | (18) | (18) | (18) | (18) | (27) | (27) | (27) |
| Past Due A/P | | - | - | - | - | (518) | (505) | (483) | (480) | (378) | (261) | (202) | (184) |
| [1] Operating Disbursements | $ | (852) | (1,331) | (3,697) | (1,357) | (2,782) | (4,811) | (1,633) | (1,452) | (1,349) | (1,887) | (1,649) | (1,631) |
| | | | | | | | | | | | | | |
| **Non-Operating Disbursements** | | | | | | | | | | | | | |
| Receiver / Pivot Fees | $ | (130) | (130) | (130) | (105) | (105) | (137) | (83) | (83) | (91) | (91) | (91) | (91) |
| Receiver Legal Fees & Claims Agent | | (113) | (113) | (113) | (113) | (113) | (113) | (55) | (55) | (60) | (60) | (60) | (60) |
| Lender Legal Fees | | (132) | (132) | (132) | (132) | (113) | (113) | (113) | (103) | (103) | (103) | (103) | (103) |
| Investment Banker | | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) | (34) |
| Retention Plan | | - | - | - | - | - | - | - | - | - | - | - | - |
| Non-Operating Disbursements | $ | (409) | (409) | (409) | (384) | (365) | (397) | (284) | (274) | (288) | (288) | (288) | (288) |
| | | | | | | | | | | | | | |
| **Debt Related Activity** | | | | | | | | | | | | | |
| Receivership Loan Interest | $ | (129) | - | - | - | (153) | - | - | - | (230) | - | - | - |
| Loan 2 Draw/(Repayment) | | 20,839 | 1,740 | 4,105 | 1,741 | 3,300 | 5,208 | 1,917 | 1,726 | 1,867 | 2,175 | 1,937 | 1,919 |
| Loan 1 Draw/(Repayment) | | (19,409) | - | - | - | - | - | - | - | - | - | - | - |
| Principal | | - | - | - | - | - | - | - | - | - | - | - | - |
| Debt Related Activity | $ | 1,302 | 1,740 | 4,105 | 1,741 | 3,147 | 5,208 | 1,917 | 1,726 | 1,637 | 2,175 | 1,937 | 1,919 |
| | | | | | | | | | | | | | |
| **Net Cash Flow** | $ | 41 | 0 | 0 | (0) | - | (0) | - | (0) | - | 0 | - | - |
| **Beginning Cash** | | 2,459 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| **Ending Cash** | $ | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| [2] Less: Min Cash | | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) |
| **Ending Net Cash** | $ | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| **Debt Roll Forward** | | | | | | | | | | | | | |
| Loan 1 Beg. Balance | $ | 19,409 | - | - | - | - | - | - | - | - | - | - | - |
| [3] Draw/(Repayment) | | (19,409) | - | - | - | - | - | - | - | - | - | - | - |
| Loan 1 End. Balance | $ | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| Loan 2 Beg. Balance | $ | - | 20,839 | 22,579 | 26,684 | 28,425 | 31,725 | 36,933 | 38,851 | 40,577 | 42,444 | 44,619 | 46,556 |
| [4] Draw/(Repayment) | | 20,839 | 1,740 | 4,105 | 1,741 | 3,300 | 5,208 | 1,917 | 1,726 | 1,867 | 2,175 | 1,937 | 1,919 |
| Loan 2 End. Balance | $ | 20,839 | 22,579 | 26,684 | 28,425 | 31,725 | 36,933 | 38,851 | 40,577 | 42,444 | 44,619 | 46,556 | 48,474 |

*Notes*

[1] Cash flows reflect weekly funding requirements, which are cumulative. Thus, if a party joins the receivership after the initial week, they are still responsible for funding the previous periods, less any amounts paid directly (i.e. property taxes).

[2] Minimum cash reserve of $2.5M includes amounts for Payroll and Working Capital

[3] Reflects amount used of initial receiver funding

[4] Includes roll-up of Loan 1 balance

CONFIDENTIAL

**Maricopa Orchards - DLM**
**Receivership Forecast - Conservative Thru Q1**
12/12/2024

| $ thousands | Forecast 1/31/25 | Forecast 2/7/25 | Forecast 2/14/25 | Forecast 2/21/25 | Forecast 2/28/25 | Forecast 3/7/25 | Forecast 3/14/25 | Forecast 3/21/25 | Forecast 3/28/25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Disbursements** | | | | | | | | | | |
| Labor | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (959) |
| Lease Payments | - | - | - | - | - | - | - | - | - | - |
| CapEx | - | (368) | - | - | (507) | (507) | - | - | - | (1,383) |
| Property Tax & Land Base Charges | - | - | - | - | - | - | - | - | - | (4,659) |
| Growing | (1,370) | (1,438) | (1,438) | (1,438) | (1,438) | (1,396) | (1,396) | (1,396) | (1,396) | (25,804) |
| Harvest | - | - | - | - | - | - | - | - | - | - |
| Overhead | (50) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (1,501) |
| Contract Farming Deposit | - | - | - | - | - | - | - | - | - | (1,114) |
| Miscellaneous | (27) | (29) | (29) | (29) | (29) | (28) | (28) | (28) | (28) | (474) |
| Past Due A/P | (183) | (145) | (140) | (140) | (140) | (140) | (140) | (132) | (123) | (4,293) |
| [1] Operating Disbursements | $ (1,630) | $ (1,990) | $ (1,617) | $ (1,617) | $ (2,124) | $ (2,081) | $ (1,574) | $ (1,566) | $ (1,556) | $ (40,187) |
| | | | | | | | | | | |
| **Non-Operating Disbursements** | | | | | | | | | | |
| Receiver / Pivot Fees | $ (128) | $ (86) | $ (86) | $ (86) | $ (86) | $ (86) | $ (86) | $ (86) | $ (86) | $ (2,084) |
| Receiver Legal Fees & Claims Agent | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (60) | (1,568) |
| Lender Legal Fees | (103) | (103) | (103) | (103) | (103) | (103) | (103) | (103) | (103) | (2,303) |
| Investment Banker | (9) | (9) | (9) | (9) | (9) | (9) | (9) | (9) | (9) | (484) |
| Retention Plan | - | - | - | - | - | - | - | - | - | - |
| Non-Operating Disbursements | $ (300) | $ (257) | $ (257) | $ (257) | $ (257) | $ (257) | $ (257) | $ (257) | $ (257) | $ (6,438) |
| | | | | | | | | | | |
| **Debt Related Activity** | | | | | | | | | | |
| Receivership Loan Interest | $ - | $ (362) | $ - | $ - | $ - | $ (348) | $ - | $ - | $ - | $ (1,222) |
| Loan 2 Draw/(Repayment) | 1,930 | 2,609 | 1,874 | 1,874 | 2,381 | 2,687 | 1,831 | 1,823 | 1,813 | 67,297 |
| Loan 1 Draw/(Repayment) | - | - | - | - | - | - | - | - | - | (19,409) |
| Principal | - | - | - | - | - | - | - | - | - | - |
| Debt Related Activity | $ 1,930 | $ 2,247 | $ 1,874 | $ 1,874 | $ 2,381 | $ 2,338 | $ 1,831 | $ 1,823 | $ 1,813 | $ 46,666 |
| | | | | | | | | | | |
| **Net Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 41 |
| **Beginning Cash** | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,459 |
| **Ending Cash** | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 |
| [2] Less: Min Cash | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | (2,500) | |
| **Ending Net Cash** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | |
| | | | | | | | | | | |
| **Debt Roll Forward** | | | | | | | | | | |
| Loan 1 Beg. Balance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 19,409 |
| [3] Draw/(Repayment) | - | - | - | - | - | - | - | - | - | (19,409) |
| Loan 1 End. Balance | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | |
| Loan 2 Beg. Balance | $ 48,474 | $ 50,404 | $ 53,013 | $ 54,887 | $ 56,761 | $ 59,143 | $ 61,829 | $ 63,660 | $ 65,483 | $ - |
| [4] Draw/(Repayment) | 1,930 | 2,609 | 1,874 | 1,874 | 2,381 | 2,687 | 1,831 | 1,823 | 1,813 | 67,297 |
| Loan 2 End. Balance | $ 50,404 | $ 53,013 | $ 54,887 | $ 56,761 | $ 59,143 | $ 61,829 | $ 63,660 | $ 65,483 | $ 67,297 | $ 67,297 |

**Notes**

[1] Cash flows reflect weekly funding requirements, which are cumulative. Thus, if a party joins the receivership after the initial week, they are still responsible for funding the previous periods, less any amounts paid directly (i.e. property taxes).

[2] Minimum cash reserve of $2.5M includes amounts for Payroll and Working Capital

[3] Reflects amount used of initial receiver funding

[4] Includes roll-up of Loan 1 balance