Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:  (312) 902-5200
Facsimile:  (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:  (214) 765-3600
Facsimile:  (214) 765-3602

*Attorneys for the Receiver*
Lance Miller

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC,<br><br>Defendants. | No. 1:24-cv-01455-KES-SAB<br><br>**NOTICE OF MOTION AND <u>UNOPPOSED</u> MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed concurrently with Ex Parte Application to Shorten Time*<br><br>Hearing:<br>Hearing Date: March 3, 2025 (subject to *Ex Parte* Application to Shorten Time)<br>Hearing Time: 1:30 P.M. PT<br>Location: Robert E. Coyle U.S. Courthouse<br>2500 Tulare Street<br>Courtroom 6, 7th floor<br>Fresno, CA 93721<br><br>**HONORABLE KIRK E. SHERRIFF** |

---

[1]   Designated as counsel for service pursuant to L.R. 182(c)(1).

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, Lance Miller, not individually but solely in his capacity as Court-appointed receiver (the "**Receiver**") moves the Court for entry of an order approving the marketing, auction, and sale procedures for certain Receivership Property being marketed by Pearson Realty, as reflected on Exhibit A hereto (the "**Broker Properties**").

PLEASE TAKE FURTHER NOTICE THAT, in support of the requested relief, the Receiver relies upon this *Notice of Motion and Motion* (the "**Motion**") and the declaration of Lance Miller (the "**Miller Declaration**") attached hereto as Exhibit B, the other files and records in this action, and any other evidence or argument the Court may consider.

PLEASE TAKE FURTHER NOTICE THAT, this Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on February 20, 2025, with

- Jason DeJonker and Nicholas Marcus on behalf of the Plaintiffs;
- David Hurst and Michael Nadel on behalf of the Farming Defendants (as defined in the Receivership Order);
- Gabriel Mathless and William Curtis on behalf of Federal Agricultural Mortgage Corporation; and
- Virginia Pedreira and Thomas Woods on behalf of Metropolitan Life Insurance Company, Metropolitan Real Estate Lending, LLC, and Brighthouse Life Insurance Company.

The above parties were requested to respond with any objections on or before Monday, February 24, 2025, at noon CT. **No party stated an objection to the relief requested in the Motion or to the Court holding an expedited hearing on the Motion.**

-2-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES
302748969

Dated: February 25, 2025

                                        Respectfully submitted,

                                        **KATTEN MUCHIN ROSENMAN LLP**

                                        By:    */s/ Terence G. Banich*
                                                       Terence G. Banich

                                        *Attorneys for the Receiver,*
                                        Lance Miller

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lance Miller, solely in his capacity as Court-appointed receiver (the "**Receiver**"), files this motion (the "**Motion**") to obtain an order approving the marketing, auction, and sale procedures for certain Receivership Property being marketed by Pearson Realty, as reflected on Exhibit A hereto (the "**Broker Properties**").

**I.    Factual Background**

On November 27, 2024, Federal Agricultural Mortgage Corporation ("**FarmerMac**") filed a *Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause; and Injunctive Relief* [24-01455, Dkt. No. 1] initiating Case No. 1:24-cv-01455-KES-SAB, and an *Ex Parte Application Regarding Motion for Order Appointing Receiver and for Preliminary Injunction* [24-01445, Dkt. No. 15].

On January 3, 2025, after the notice period passed without objection, the Court entered the *Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 29] (the "**Receivership Order**"), appointing the Receiver as general receiver over the Receivership Property (as defined in the Receivership Order).

**A.    The Receivership Property**

The scope of the Receiver's duties under the Receivership Order includes "to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary court of business subject to the Court's approval." Receivership Order ¶ 15.

In furtherance of these duties, the Receivership Order authorize the Receiver, subject to further Court order, to "sell Receivership Property as the Receiver may deem prudent outside of the ordinary course of the Defendants' businesses[]" with all such sales being "free of liens, claims, and encumbrances, with any such liens, claims and encumbrances attaching to the proceeds therefrom subject to further order of the Court[.]" Receivership Order ¶ 4(d)(i).

Following his assessment of the Receivership Property, the Receiver has determined in the exercise of his reasonable judgment, that an organized sale process, via public auction, will

maximize the value of the Broker Properties. In this regard, the Receiver has filed a motion to employ Pearson Real Estate ("**Broker**") as broker for the Broker Properties concurrently herewith.

## THE PROPOSED SALE PROCEDURES

The Receiver seeks approval to sell the Broker Properties to the bidder that makes the highest and best offer pursuant to the below proposed procedures (the "**Sale Procedures**"):

1. **Marketing:**

   a. **Listing Services.** The Broker will publish the listing of the Broker Properties on commercially reasonable sites and databases and take commercially reasonable actions to show the Broker Properties.

   b. **Publication of Sale.** The Broker will list each proposed sale in the Fresno Bee or other local newspaper for four weeks from the date of entry of an order approving the Sale Procedures (the "**Sale Procedures Order**") (the "**Publication Period**") in compliance with 28 U.S.C. § 2002. Any Auction of or Sale Hearing (each as defined below) regarding a Broker Property shall not occur before the conclusion of the Publication Period. The publication of the sale shall include a short description of the Broker Property(ies) and contact information for the Broker (phone number and/or website link) and state that the sale is subject to Court approval. The date of the Auction or Sale Hearing may be undetermined at the time of publication.

   c. **Overbidding.** If the Broker receives a bid, the Broker will continue to market the subject property for higher and better bids until the deadline to submit bids for Auction, as set forth in the Sale Notice (defined below), has passed.

2. **Auction and Sale Hearing.** If more than one bidder becomes qualified to bid for the purchase of a Broker Property, an auction will be held by the Receiver or his designee in open Court at the hearing date to be determined by the Receiver and noticed, which shall not be before the conclusion of the Publication Period (the "**Auction**" and "**Sale Hearing**"). At the conclusion of the Auction, the Receiver will seek confirmation of the sale to the successful bidder and entry of an order authorizing the sale free and clear of all liens, claims, encumbrances and other interests (the "**Interests**"), unless otherwise set forth in the applicable Purchase and Sale Agreement. If only one

-5-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES

302748969

bidder timely submits a qualified bid, then the Receiver will request entry of an order at the Sale Hearing without holding an Auction.

3. **Qualification to Bid.** To submit a qualified bid, a prospective purchaser must submit its bid in writing by a date noticed by the Receiver in the applicable Sale Notice and such bid must clearly include the following terms or information (a "**Qualified Bid**" and a "**Qualified Bidder**"):

    a. **Deposit.** A deposit of 10% of the purchase price which must be delivered to the Receiver with the Qualified Bid (the "**Deposit**"). The Receiver will hold the Deposit in trust or escrow pending approval of the Court. The Deposit shall be nonrefundable unless:

        i. Another bidder is the successful bidder at Auction and the Qualified Bidder does not wish to be deemed a backup bidder; or

        ii. The Court does not approve the sale through no fault of the Qualified Bidder.

    b. **Contingencies.** As of the date of the Auction or Sale Hearing, as applicable, there will be no outstanding contingencies other than Court approval.

    c. **Subject to Overbid at Auction and Court Approval.** The sale is subject to overbidding at Auction, if applicable, and Court approval.

    d. **No Liability of Receiver.** The Receiver shall have no liability under any circumstances, and the Qualified Bidder's only recourse in the event of alleged breach by Receiver is return of its Deposit.

    e. **Good Faith.** The Qualified Bidder must submit with its Qualified Bid a declaration signed under penalty of perjury disclosing any connections such bidder has to the Receiver, the Broker, any owner, borrower, or insider thereof, any creditor, or other interested party, and that it has not, and will not, collude with any other potential purchasers or anyone else with respect to the sale.

    f. **Ability to Close.** A Qualified Bid must be accompanied by evidence of the bidder's financial ability to close unconditionally in form and substance satisfactory to the Receiver in his discretion in consultation with Plaintiff.

-6-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES
302748969

        g.    **Purchase and Sale Agreement.** The Qualified Bid shall include a signed Purchase and Sale Agreement in form and content satisfactory to the Receiver in his discretion, in consultation with Plaintiff, indicating a readiness to immediately enter escrow. The Broker will provide a form of Purchase and Sale Agreement, and the Qualified Bidder must provide a redline with the Qualified Bid reflecting any revisions to such form.

    4.    **Stalking Horse Terms.** The Receiver may, in his sole discretion and in consultation with Plaintiff, offer incentives to initial bidders who submit Qualified Bids as defined above to serve as a "**Stalking Horse Bidder**," meaning that such bidder will submit an initial offer subject to overbid at Auction. Such Stalking Horse bids may include the following term in addition to other terms determined by the Receiver in the Receiver's discretion, in consultation with Plaintiff:

        a.    **Breakup Fee.** The Receiver may offer a breakup fee of up to 2% of the initial bid amount to a Stalking Horse Bidder that will be paid if, and only if, an overbidder other than the Stalking Horse Bidder is the successful purchaser of the Broker Property after Auction, Court approval, and closing of such sale.

    5.    **Dates and Deadlines.** The Receiver may schedule, reschedule, continue, adjourn, extend or modify any dates and deadlines or other terms relating to any provisions of these Sale Procedures in the Receiver's discretion, in consultation with Plaintiff, including the Auction or Sale Hearing.

    6.    **Notice of Sale Hearing and Auction.** The Auction or Sale Hearing will be held after the conclusion of the Publication Period. The Receiver will give not less than 14 days' written notice of any Auction or Sale Hearing (the "**Sale Notice**") to the parties entitled to notice in this case and to parties who have submitted a Qualified Bid. The Sale Notice will include the initial overbid amount and initial minimum bidding increments and any other details the Receiver deems appropriate including the Plaintiff's estimated secured loan payoff amount and the payoff amount of any junior lienholders. The initial overbid amount must be enough to pay the breakup fee, if any, plus a meaningful increase in value, taking account of any applicable commissions, in the Receiver's discretion in consultation with Plaintiff. Creditors may file objections to a proposed sale not less

-7-

than 7 days before the Sale Hearing. The Receiver may file any reply 2 days before the Sale Hearing.

7. **Sale Free and Clear of Interests**. The Receiver is seeking to sell the Broker Property(ies) free and clear of all Interests, with such Interests to attach to the sale proceeds to the same extent and with the same priority as existed immediately prior to the sale. The Sale Notice filed with the Court in advance of the hearing will set forth estimated sale proceeds and the proposed distribution of net proceeds to occur upon closing of the proposed sale.

8. **Amendments or Modifications.** The Receiver may amend, modify, supplement, or change these Sale Procedures in the Receiver's discretion, in consultation with Plaintiff, as necessary or appropriate to run this sales process, with all terms ultimately being subject to Court approval at the conclusion of the Sale Hearing.

9. **Credit Bidding.** Plaintiff has the option to credit bid the full amount of its secured claims without any premium to be paid therefor. Junior lienholders may credit bid the full amount of their secured claims; however, such credit bid will only be considered a Qualified Bid if accompanied by amounts sufficient to satisfy all senior liens in full at sale closing.

10. **Sale Order.** Promptly upon the conclusion of the Sale Hearing contemplated herein, the Receiver will submit a sale order confirming the sale to the successful bidder free and clear of all Interests, designating any backup bidders, making such other appropriate findings and rulings as may be requested by the Receiver at or before the hearing, including findings regarding the good faith of any Qualified Bidder, and providing that the sale shall close by such date determined by the Receiver (the "**Sale Order**"). If the Receiver complies with these Sale Procedures, which are consistent with 28 U.S.C. § 2001, no further motion must be filed before entry of the Sale Order.

11. **Compliance with Receivership Order.** Nothing in this Order is intended to, nor shall, override any notice, veto, consultation or consent rights held by Plaintiff pursuant to the Receivership Order.

## APPLICABLE AUTHORITY

The Receivership Order empowers the Receiver, subject to further Court order, to sell Receivership Property as he deems prudent, outside the ordinary course of business, free and clear

-8-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES
302748969

of all Interests, with such Interests attaching to the applicable sale proceeds. Receivership Order ¶ 4(d). Pursuant to 28 U.S.C. §§ 2001-2002, such sales may be by private sale or public auction. The Receiver, in the exercise of his business judgment, has determined that the sale of the Broker Properties through a competitive public auction process, as described above, will enable him to obtain the highest and best offer for the Broker Properties and is in the best interests of stakeholders.

In the context of receiverships, district courts have "broad powers and wide discretion to determine the appropriate relief." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (*quoting SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir.1978)). Indeed, "it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.'" *SEC v. Capital Cove Bancorp LLC*, No. SACV 15-980-JLS (JCx), 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015) (citations omitted).

The Supreme Court, in *Mellen v. Moline Malleable Iron Works*, confirmed the district court's power to approve a sale free and clear of all encumbrances. 131 U.S. 352, 367 (1889). *Accord Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (3d Cir. 1933) ("A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances"). Additionally, courts have the found that when the receiver's proposed solution is the lien attaching to the proceeds of the sale, rather than extinguishing the lien, that proposed solution is "fair, reasonable, consistent with the goals of equity, and properly within the Court's authority in the equitable receivership context." *SEC v. Champion-Cain*, No. 3:19-cv-1628-LAB-AHG, 2020 WL 4673397 * 5–6; *see Mellen*, 131 U.S. at 370 (transferring the creditor's rights from the property to the proceeds of the sale); *Capital Cove*, 2015 WL 9701154, at *8 (attaching the creditors' interests to the proceeds of the sale).

Furthermore, within its broad discretion, the district court has the authority to waive certain requirements of § 2001(a). Pursuant to § 2001(a), the Receiver will conduct the sale of the Broker Properties through a public auction and comply with the notice requirements of § 2002, but requests a waiver of the requirement that the auction be held "at public sale at the courthouse of the county,

-9-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES
302748969

parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs." 28 U.S.C. § 2001(a). Instead, the Receiver requests that the Court authorize it to hold all Auction(s), as necessary, at the Court and in conjunction with the Sale Hearing(s). Granting such relief rests soundly within this Court's discretion, particularly when parties consent to the requested relief. *See SEC v. Wang*, No. CV 13-7553 JAK (SS), 2015 WL 13950300 at *3 (C.D. Cal. Apr. 28, 2015). Here, there is no objection by FarmerMac to holding the Auction(s) at the Court and in conjunction with the Sale Hearing(s).

Overall, the Receiver believes that the proposed Sale Procedures will promote active bidding from interested parties and will dispel any doubt as to the best and highest offer reasonably available for the Broker Property(ies). Further, the Sale Procedures provide the Receiver with the opportunity to consider all qualified bids and to select, in his reasonable business judgment, and after consultation with his professionals and FarmerMac, the highest and best offer(s) for each property.

## II. Conclusion

For all the reasons set forth above, the Receiver respectfully submits that good cause exists for the Court to enter an order approving the Sale Procedures and granting the Receiver such other and further relief to which he may be justly entitled.

Dated: February 25, 2025

                                                                  Respectfully submitted,

                                                                   **KATTEN MUCHIN ROSENMAN LLP**

                                                                    By:   */s/ Terence G. Banich*
                                                                             Terence G. Banich

                                                                  *Attorneys for the Receiver,*
                                                                Lance Miller

-10-

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES
302748969

**PROOF OF SERVICE**

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On February 25, 2025, I served the following document(s) described as:

**NOTICE OF MOTION AND <u>UNOPPOSED</u> MOTION OF RECEIVER LANCE MILLER FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES; MEMORANDUM OF POINTS AND AUTHORITIES**

as follows:

**[ ]   BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]   BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[ ]   BY OVERNIGHT MAIL (FedEx):** I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]   BY PERSONAL SERVICE:** I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]   E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on February 25, 2025, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich

-11-