MILLER NASH LLP
Bernie Kornberg
bernie.kornberg@millernash.com
Jack Wallan
jack.wallan@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone:   562.435.8002
Facsimile:   562.435.7967

Attorneys for Interested Party
Rooster Capital IV, LLC, a Delaware Limited Liability Company

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>              Plaintiff,<br><br>      v.<br><br>ASSEMI BROTHERS, LLC et al.,<br><br>              Defendants. | Case No. 1:24-cv-01455-KES-SAB<br><br>**ROOSTER CAPITAL IV LLC'S OMNIBUS OPPOSITION TO RECEIVER LANCE MILLER'S MOTIONS TO BE HEARD ON MARCH 10, 2025**<br><br>Date:     March 10, 2025<br>Time:    1:30 p.m.<br>Ctrm:    6<br>Judge:   Hon. Kirk E. Sherriff |

## TABLE OF CONTENTS
**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

I. INTRODUCTION .............. 4  
II. PERTINENT FACTS AND PROCEDURAL HISTORY .............. 5  
   A. The Farmer Mac and Rooster Loans .............. 5  
   B. Procedural History .............. 6  
III. Argument .............. 6  
   A. The March 10 Motions Should Be Denied for Failure to Provide Notice to Rooster and Other Lien Creditors .............. 6  
   B. Opposition to the Auction Motion .............. 8  
   C. Opposition to the Banker Engagement Motion .............. 9  
   D. Opposition to the Broker Engagement Motion .............. 11  
IV. CONCLUSION .............. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re Ctr. Wholesale, Inc.*,
   759 F.2d 1440 (9th Cir. 1985) ................................................................................... 7, 8

*In re Ex-Cel Concrete Co., Inc.*,
   178 B.R. 198 (B.A.P. 9th Cir. 1995) ............................................................................ 8

*In re Loloee,*
   241 B.R. 655 (B.A.P. 9th Cir. 1999) ............................................................................ 7

*Mullane v. C. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ..................................................................................................... 6

*Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*,
   602 U.S. 268 (2024) ..................................................................................................... 7

**Other Authorities**

Federal Rule of Civil Procedure 24 ....................................................................................... 9

Rooster Capital IV, LLC, a Delaware Limited Liability Company ("Rooster") provides this omnibus opposition to the motion of receiver Lance Miller ("Receiver") for (i) for an order authorizing engagement and compensation of Pearson Realty ("Pearson") as real estate broker (the "Broker Engagement Motion") [Dkt. # 48]; (ii) for an order authorizing engagement and compensation of Capstone Capital Markets LLC ("Capstone") as investment banker (the ("Banker Engagement Motion") [Dkt. # 46;] and (iii) for an order establishing marketing, bid, and auction procedures for broker marketed properties (the "Auction Motion") [Dkt. #50] (and collectively, the "March 10 Motions") on the following grounds.

## I. INTRODUCTION

Rooster principally opposes the relief sought in the March 10 Motions for lack of proper notice. Rooster is the second position lien creditor on the real property which the Receiver seeks to ultimately sell. These motions directly bear on the sale of this real property and, if granted as written, will result in a potential impairment or reduction of Rooster's lien rights. Despite this fact, Rooster, nor any other junior lien creditor, was provided notice of the March 10 Motions. Rooster only learned of the motions when counsel discovered their filing on the docket after the fact. The failure to provide proper notice violates Rooster's due process rights and the motions should be denied on that basis alone.

As to the substance of the March 10 Motions, Rooster has had limited time to review due to the failure of notice, and without waiving any rights as to notice, has identified certain issues with the March 10 Motions that must be corrected before the auction and engagements are authorized. Most importantly, the Auction Motion seeks approval of any sale as free and clear of liens, something that Receiver expressly stated he does not seek in his ex parte application requesting shortened time. Further, the Auction Motion must provide Rooster with equal consultations rights as given to Federal Agricultural Mortgage Corporation ("Farmer Mac"). Finally, the Banker Engagement Motion and Broker Engagement Motion include requests for fees that are not justified and which should be removed as a condition of approval.

## II. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. The Farmer Mac and Rooster Loans

Between January 8, 2018 and February 2, 2023, the various Borrower Defendants (as defined in the Complaint) in this action signed a series of notes (the "Farmer Mac Notes") in favor of Conterra Agricultural Capital, LLC ("CAC"), which upon origination, were assigned to Farmer Mac. Compl. ¶ 18 [Dkt. #1]. The Farmer Mac Notes are secured by deeds of trust on real property (the "Farmer Mac Deeds of Trust") in Fresno County, Kings County, and Kern County (the "Real Property Collateral"). Compl. ¶ 20 [Dkt. #1]. The Borrower Defendants defaulted on the Farmer Mac Notes and assert a balance owed of no less than $41,833,201.59. Compl. ¶ 240 [Dkt. #1].

Rooster's interest in this matter is as the second position lender to the Borrower Defendants. On February 2, 2023, defendants Maricopa Orchards, LLC, Copper Avenue Investments, LLC, C&A Farms, LLC, ACAP Farms, LLC, Willow Avenue Investments, LLC, Lincoln Grantor Garms, LLC, Cantua Orchards, LLC, and Gardon Farms, LLC ("the Rooster Borrowers") signed a Note (the "Rooster Note") in favor of CAC in the amount of $7,400,000. Note, Ex. A to the Declaration of Mark A. Smith (the "Smith Decl."). The Rooster Note is secured by the same real property as the Real Property Collateral pursuant to deeds of trust recorded in Fresno County, Kings County, and Kern County (the "Rooster Deeds of Trust"). Smith Decl. ¶ 9; Exs. B-D to Smith Decl. Upon origination, the Rooster Note and Rooster Deeds of Trust were assigned by CAC to Rooster. Smith Decl. ¶ 8; Exs. B-D to Smith Decl. The Rooster Deeds of Trust are in second position to the Farmer Mac Deeds of Trust. Smith Decl. ¶ 10.

The Rooster Borrowers have defaulted on payments owed on, and other terms and conditions of, the Rooster Note, along with other related loan documents. Smith Decl. ¶ 12. As of February 28, 2025, the current balance of the Rooster Note is $8,400,606.46, constituting $7,400,000 in unpaid principal balance, $961,871.62 in interest, and $38,734.84 in fees and charges. Smith Decl. ¶ 13.

**B.     Procedural History**

This action was initiated by the November 27, 2024 complaint of Farmer Mac.  Compl., Dkt. #1.

On January 3, 2025, Receiver was appointed based on an unopposed ex parte application of Farmer Mac.  Order Appointing Receiver [Dkt. #29].

On February 25, 2025, Receiver filed each of the March 10 Motions, along with concurrent ex parte applications seeking that each be heard on shortened time.  Ex Parte Applications [Dkt. #s 47, 49, 51].  Notice of each ex parte application was provided solely by ECF notice, meaning that service was only as to the parties in the case.  Ex Parte Applications [Dkt. # 47, 49, 51].  Rooster is not a party, and thus did not receive notice.  Smith Decl. ¶ 16.

On February 26, 2025, this Court entered a minute order setting hearing on March 10, 2025 with opposition due on March 3, 2025.  Minute Order [Dkt. #51].  Rooster only discovered when it learned from the parties to the action that the Receiver might attempt to sell the Real Property Collateral.  Smith Decl. ¶ 14.  Rooster's counsel then discovered the March 10 Motions on the docket.  Smith Decl. ¶ 15.

### III. ARGUMENT

**A.     The March 10 Motions Should Be Denied for Failure to Provide Notice to Rooster and Other Lien Creditors**

The Supreme Court has set forth the requirement of notice regarding a proceeding as follows:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  [].  The notice must be of such nature as reasonably to convey the required information, [] and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. C. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Notice of the March 10 Motions was not provided to Rooster.  Smith Decl. ¶ 16.  Under *Mullane*, the failure to do so requires denial of the March 10 motions.

First, there can be no doubt that Rooster is an interested party in this matter.  A party is

1   legally interested in a matter if it has "an actual interest in the controversy, as distinguished from
2   a nominal party."); *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 279 n.3 (2024).
3   This is met by a party "whose pecuniary interest is directly affected." *Id.* at 279 n.3 & n.4
4   (collecting authorities).

5       Here, the Broker Engagement Motion and the Banker Engagement Motion both propose
6   that the fees for the services provided by each part are to be paid from the sale proceeds.  The
7   Receiver has stated that "[t]he Receiver will file a separate motion with the Court seeking
8   authority to sell the Broker Properties free and clear of all liens, claims, encumbrances, and other
9   interests at the appropriate time." Ex Parte Application on Auction Motion at p.2:17-19 [Dkt.
10  #51].  If a free and clear sale is authorized which does not pay Rooster and other junior creditor's
11  liens in full, then any fees charged by Capstone will constitute money not paid to the junior
12  lienholders.  A proceeding which affects the right to recovery on valid security interest grants the
13  lienholders a direct pecuniary interest in the matter. *See In re Ctr. Wholesale, Inc.*, 759 F.2d
14  1440, 1450 (9th Cir. 1985); *In re Loloee,* 241 B.R. 655, 663 (B.A.P. 9th Cir. 1999).

15      And even if that were not the case, the Banker Engagement Motion proposes to pay
16  Capstone a minimum transaction fee, retainer fees, and termination fees.  See Engagement
17  Agreement § 3 [Dkt. 46-2].  These fees will be paid via super priority Receiver's Certificates on
18  the Real Property Collateral.  Order Appointing Receiver § 4.j [Dkt. # 29].  Therefore, any
19  payment to Capstone will have a direct pecuniary effect on the payment to junior lienholders
20  whose liens values will be pushed down by any payments to the engaged professionals.  Rooster
21  thus has a direct pecuniary interest in the fees charged.

22      For the same reason, Rooster and junior lienholders have a direct pecuniary interest in the
23  Auction Motion.  Since the auction may result in the termination of junior liens without payment
24  in full, Rooster has an interest in ensuring that the auction is conducted in a manner that equally
25  balances its rights and interests with that of Farmer Mac.  The same applies to junior lienholders.
26  Accordingly, Rooster is an interested party as to the Auction Motion.

27      As interested parties, the notice that Rooster is entitled to "must be of such nature as
28  reasonably to convey the required information" and "it must afford a reasonable time for those

1  interested to make their appearance." Here, Rooster only learned of these motions from
2  reviewing the docket of the case, leading to a scramble to file an opposition. Smith Decl. ¶¶ 14-
3  15. This is not sufficient time given that opposition is due on March 3, three business days after
4  the hearing was set on February 26. See Ctr. Wholesale, Inc., 759 at 1450 ("the one-day notice
5  violated the requirements of the Due Process Clause because the notice was insufficient to permit
6  Owens-Corning to adequately prepare for the impending hearing in which Judge King approved
7  the CCO"). It is unclear if the other junior lienholders are aware of this motion at all. Notice was
8  not provided in accordance with the requirements of due process. An order without proper notice
9  is void. Id. The Court should deny these motions until proper notice is provided to all lien
10 creditors.

**B.     Opposition to the Auction Motion**

Despite its constitutionally insufficient notice, and without waiving any rights as to notice, Rooster has reviewed the Auction Motion and is able to provide the following preliminary objections.

**First**, any order on the Auction Motion should clearly state that the order does not authorize the sale free and clear of liens. As noted above, the ex parte application clearly states that the Auction Motion does not seek authority for a free and clear sale, but that such authority will only be authorized, if at all, through a later filed motion. Ex Parte Application on Auction Motion at p.2:17-19 [Dkt. #51].

However, the Auction Motion itself states that "[t]he Receiver is seeking to sell the Broker Property(ies) free and clear of all Interests." Auction Motion at p.8:2-3 [Dkt. #50]. The proposed order on the Auction Motion includes the same language. Proposed Order at p.5:11-15, p.5:10:26 [Dkt. 50-2]. Thus the relief sought by the Auction Motion does not reflect what was represented to the Court when the Receiver sought a hearing on shortened notice.

Further, any free and clear sale is void without proper notice to all lienholders. In re Ex-Cel Concrete Co., Inc., 178 B.R. 198, 205 (B.A.P. 9th Cir. 1995) ("the lack of any notice to Citicorp constituted constitutional lack of due process which could not confer in personam jurisdiction on the bankruptcy court to adjudicate Citicorp's property right"). As stated above,

notice was not provided by any recognized method of service. Thereof, any free and clear order is jurisdictionally void.

Any final order on the Auction Motion should clarify that the order does not authorize that any sale will be free of clear of liens unless such relief is sought and granted on a later date.

**Second**, the proposed order on the Auction Motion provides that the Receiver will consult with Farmer Mac regarding certain issues, including the ability of any bidder to close, the form of the purchase and sale agreement, the designation as a bidder of a stalking horse, and the right to reset deadlines. Proposed Order pp.4-5 [Dkt. 50-2]. As a junior lien creditor, Rooster has an equal, and likely greater, interest in ensuring that any auction is conducted in a manner likely to result in the greatest return to all creditors. Rooster should be provided consultation rights equal to that granted to Plaintiff.[1]

C.    **Opposition to the Banker Engagement Motion**

Despite its constitutionally insufficient notice, and without waiving any rights as to notice, Rooster has reviewed the Banker Engagement Motion and is able to provide the following preliminary objections.

**First**, the Engagement Agreement for Capstone (the "Banker Engagement Agreement"), attached to Declaration of Skye Root, provides for a two-tier fee structure. For property listed as "Sale Property", and described on Exhibit B to the Banker Engagement Agreement, there will be 1% transaction fee. For property listed as "Excluded Parcels", and described on Exhibit C of the Banker Engagement Agreement, there is a 2% transaction fee. Engagement Agreement § 3(c) [Dkt. #46-2]. In the Banker Engagement Agreement, Exhibit C is blank with no properties currently listed as Excluded Property. However, "Sale Property may be reclassified as Excluded Parcels, and vice versa, by a written agreement of the Receiver and Capstone." Engagement Agreement § 1 [Dkt. #46-2].

There is no language in the engagement agreement or elsewhere explaining the difference

---

[1] Rooster intends, pursuant to Federal Rule of Civil Procedure 24, to file a motion for intervention in this case. However, as Rooster has not had the time to do so given the shortened notice of this motion, and as this motion seeks relief directly affecting Rooster, intervention is not necessary for it to bring this opposition.

between Sale Property and Excluded Parcels, or criteria for each. Accordingly, the Receiver can agree to pay Capstone a 2% fee on any Sale Property for any or no reason at all. This is inappropriate as any increase in fees may come at the direct cost to junior lienholders. Any transfer of Sale Property to Excluded Parcels should be either disallowed or conditioned upon reasonable and objective criteria justifying the reclassification.

**Second**, the Banker Engagement Agreement provides for a minimum transaction fee of $5,000,000. Engagement Agreement § 3(c)(i) [Dkt. #46-2]. Capstone's fee is thus fixed unless it achieves a cumulative sale price of Sale Property of over $50 million (or of $25 million of Excluded Property). The Banker Engagement Motion provides no evidence that this term was negotiated, that other equally qualified investment bankers would require a similar minimum fee, or even that this fee is necessary at all. As part of the Receiver's motion, he requests the Court excuse Capstone from recording time because "Capstone does not keep detailed time records" as "its compensation is results based." Banker Engagement Motion at p.11:15-16 [Dkt. # 46]." There is no evidence here that a backstop is required to coerce Capstone to agree to an otherwise undesirable engagement. The minimum fee is inappropriate for a theoretically success-based engagement and should be removed from the Banker Engagement Agreement.

**Third**, the Banker Engagement Agreement provides for an Abandonment Fee if Receiver terminates the Banker Engagement Agreement without cause. The amount of the fee varies depending on the phase of the engagement at the time of abandonment. Engagement Agreement § 6 [Dkt. #46-2]. Rooster does not necessarily object to these fees, but Receiver should provide some justification as to how they were negotiated. Further, as Rooster may be forced to bear these fees as a junior creditor to any Receiver Certificates, it should be consulted by Receiver before Receiver exercises any right to terminate the Banker Engagement Agreement without cause.

**Fourth**, the Banker Engagement Agreement provides that Receiver agrees to fully indemnify Capstone for acts taken under the Banker Engagement Agreement unless the acts by Capstone are found by a court or tribunal to be "solely the result of Capstone's gross negligence or willful misconduct." Engagement Agreement § 8 [Dkt. #46-2]. Simply put, there is no reason

that Capstone should be indemnified for conduct ultimately found to meet simple negligence, and there is no evidence in the Banker Engagement Agreement that such a clause is necessary to secure the engagement. Indeed, the Broker Engagement Motion does not include any indemnification language at all.

### D. Opposition to the Broker Engagement Motion

Despite its constitutionally insufficient notice, and without waiving any rights as to notice, Rooster has reviewed the Broker Engagement Motion and is able to provide the following preliminary objections.

The sole objection of Rooster is to the commission of the proposed broker, Pearson. The Listing Agreement provides for a sliding scale between 4% and 1% depending on the "Transfer Sales Price", with a commission of 1% for anything above $500,000,000. Listing Agreement, Ex. B (Dkt. #48-2]. The Broker Engagement Motion does not provide any evidence that these fees were negotiated, or if so, if they are market rate based on the amount of the sale. The Court should deny the motion without such evidence to confirm the fees are fair and market based.

### IV. CONCLUSION

For the reasons set forth above, the Court should deny each of the March 10 Motions.

Dated: March 3, 2025                           MILLER NASH LLP


By: /s/ Bernie Kornberg
    Bernie Kornberg
    Jack Wallan

Attorneys for Interested Party
Rooster Capital IV, LLC, a Delaware Limited
Liability Company

## **PROOF OF SERVICE**

I, Bernie Kornberg, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 340 Golden Shore, Suite 450, Long Beach, California 90802.

On March 3, 2025, I electronically filed the attached documents:

**ROOSTER CAPITAL IV LLC'S OMNIBUS OPPOSITION TO RECEIVER LANCE MILLER'S MOTIONS TO BE HEARD ON MARCH 10, 2025**

**DECLARATION OF MARK A. SMITH IN SUPPORT OF ROOSTER CAPITAL IV LLC'S OMNIBUS OPPOSITION TO RECEIVER LANCE MILLER'S MOTIONS TO BE HEARD ON MARCH 10, 2025**

with the Clerk of the court using the CM/ECF system which will then send a notification to each registered user in the Case.

Further, on the same date, I provided service of the attached documents to Brookfield Special Investments by email copies to their counsel, Ira Kharasch at ikharasch@pszjlaw.com.

Executed on March 3, 2025, at Long Beach, California.

/s/ Bernie Kornberg

4905-9142-9154.2