MICHAEL R. FARRELL (BAR NO. 173831)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: mfarrell@allenmatkins.com
        mpham@allenmatkins.com

RICHARD M. PACHULSKI (BAR NO. 90073)
IRA D. KHARASCH (BAR NO. 109084)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4003
Phone: (310) 277-6910
Fax: (310) 201-0760
E-Mail: rpachulski@pszjlaw.com
        ikharasch@pszjlaw.com

Attorneys for Interested Party
AMERICAN EQUITY INVESTMENT LIFE INSURANCE
COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>ASSEMI BROTHERS, LLC, et al.,<br><br>Defendants. | Case No. 1:24-cv-01455-KES-SAB<br><br>**DECLARATION OF THADDEUS TRACY IN SUPPORT OF AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY'S RENEWED OPPOSITION TO RECEIVER'S MOTION FOR AN ORDER ESTABLISHING MARKETING, BID, AND AUCTION PROCEDURES FOR BROKER-MARKETED PROPERTIES**<br><br>Date: April 21, 2025<br>Time: 1:30 p.m.<br>Place: 2500 Tulare Street<br>       7th Floor, Courtroom 6<br>       Fresno, CA 93721 |

/ / /

/ / /

/ / /

I, Thaddeus Tracy, declare as follows:

1. I am a co-founder and principal of Farmers Gate LLC ("Farmers Gate"), which has been retained by American Equity Investment Life Insurance Company ("American Equity").

2. I submit this declaration in support of American Equity's *Renewed Opposition to Receiver's Motion for an Order Establishing Marketing, Bid, and Auction Procedures for Broker-Marketed Properties* (the "Opposition"). Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true and correct. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from my review of documents and information that I obtained during my own investigation or from American Equity. If called to testify, I could and would, without waiver of any applicable privilege, testify that the facts stated in this declaration are true and correct to the best of my knowledge, information, and belief.

3. In 2018, I co-founded Farmers Gate, an agriculture management firm that is also an investment platform focused on agricultural assets and operations.

4. Farmers Gate was engaged by American Equity in August 2024 in order to primarily provide consulting services focused on evaluating American Equity's collateral that is part of a larger farmer enterprise operated by the Assemi family and entities that they own or control.

5. I have direct experience with several of the parcels included in the collateral of Federal Agricultural Mortgage Corporation ("Farmer Mac") (which is also the collateral of American Equity) in the receivership arising out of the above-captioned action, as well as some of the other lender collateral in the related receiverships (i.e., those initiated by The Prudential Insurance Company of America and PGIM Real Estate Finance, LLC (together, "Prudential") and by Metropolitan Life Insurance Company, Brighthouse Life Insurance Company, or MetLife Real Estate Lending, LLC (collectively, "MetLife")), as such parcels were previously owned by a portfolio company of my prior business and for which I was directly involved with the original purchase in 2012. In addition, several of the assets owned in the current Farmers Gate portfolio are in close proximity to the assets in these related receiverships.

6. As an investment professional focused on the agricultural industry, I have participated in numerous sales of agricultural real estate over the last fourteen years.

7. From 2010 to 2018, I was a member of the senior executive team for a large permanent capital vehicle focused on capitalizing best-in-class agricultural businesses.

8. Prior to 2010, I was a full-time practicing real estate lawyer and a partner at Kirkland & Ellis LLP.

9. American Equity is a junior lender/lienholder behind Farmer Mac and Rooster Capital IV, LLC ("Rooster Capital") across seven ranches consisting of 3,900 acres of real property, of which 811 acres are planted to pistachios and 496 acres are planted to almonds. These ranches span multiple counties and irrigation districts in the Central Valley of California, from Fresno to south of Bakersfield.

10. In a seller's market, sale timelines can be compressed and bidders can be forced to move quickly for fear of missing out on scarce buying opportunities. However, the Central Valley today is definitely not a seller's market. Listings for farmland remain open for months as potential buyers wait for asking prices to come down, resulting in reduced valuations for farmland assets, regardless of crop. The financial distress affecting agricultural owners and operators in today's marketplace is well-documented and is expected to increase in intensity. A four-week marketing process is woefully insufficient to sell the assets subject to this receivership in order to obtain the highest price on the assets. Also, qualified bids should not be required until the expiration of the applicable publication notice in order to get the full benefit of such notice.

11. In order to properly market these assets, the marketing should go well beyond the broker's listing of the sale in the Fresno Bee or other local newspaper. Most institutional investors find out about investment opportunities through word of mouth or by direct contact with the listing broker, not from a listing in a local newspaper. The pool of potential bidders should be expanded beyond the Central Valley to include direct investors and asset managers located across the United States, many of whom, like Farmers Gate, will not be consulting the Fresno Bee. Similarly, the sale process will be benefited by the receiver not only consulting with Farmer Mac, but also with the junior lienholders who have their own knowledge about the properties encumbered by their

liens and their own network of potential buyers, and who are also more vested in obtaining the best price possible to pay off all lienholders, not just the senior liens.

12. The receiver's failure to define a "meaningful increase in value" that a potential bidder must bid over a stalking horse offer plus a 2% break-up fee may well chill the bidding as potential bidders will not be inclined to invest time and money in their critical due diligence in submitting an offer without knowing whether a submitted bid will even clear the initial threshold. This lack of clarity clearly favors the stalking horse offer in discouraging offers that may well be greater than the stalking horse offer, which stalking horse offer is hopefully already near fair market value. Similarly, the receiver's request to have unfettered discretion to modify any of the sale procedures can also chill the bidding, as potential buyers like certainty of process before they invest their time and money in the diligence process.

13. In determining the proper time periods for the marketing of the assets, and for parties to object to such sales, the complexity of these assets must be considered. Each parcel being listed for sale has its own attributes that impact valuation. For planted acres, those attributes include, among other considerations, year of planting, yield history, the presence and condition of infrastructure, potential for solar development, opportunities for water recharge projects, and specific agronomic considerations such as microclimate, soil quality, water quality and availability (including, in certain circumstances, pairing with open acres to increase water rights), plant health, and nutrient load. Any proposed sale price needs to be considered in light of these details, and completing that task, depending on the number of parcels included in a sale, will take considerable time. I also expect competing bids to cover some, but not all, of the same parcels, which further complicates a comparative analysis. Such review should not be rushed in order to achieve the best outcome.

14. In addition, the proximity to other parcels owned and operated by the borrowers (in certain cases, the parcels are adjacent), but not included as collateral for Farmer Mac's loans, makes the process of evaluating offers more complicated as separating those assets into separate collateral pools could have a materially negative impact on the aggregate value of the acreage.

15. For example, the Copus Ranch, which consists of 1,033 acres of open ground in the Wheeler Ridge Irrigation District, includes some parcels that are collateral for MetLife and Prudential loans and some parcels that are collateral for Farmer Mac loans. In fact, within this ranch, the Farmer Mac collateral is adjacent to both the MetLife and Prudential collateral. Accordingly, prior to consenting to a proposed sale of the Farmer Mac collateral, American Equity, as junior lienholder, will need to understand the extent to which that adjacency impacts the utilization and value of the property, including whether there is any shared infrastructure or services. This analysis extends to whether there are solar options currently in place or potentially available and that would be impacted by the sale of parcels to different buyers. If there were one single entity, such as a chief restructuring officer ("CRO") of the chapter 11 debtors in possession that controlled all of the assets that are now the subject of four active receiverships having three different receivers, such CRO would be able to consider a sale of the Farmer Mac collateral at the Copus Ranch and package that with adjacent parcels that are controlled today by receivers nominated by Prudential and MetLife. Failing to organize the sale process in this way denies value for junior lienholders and the borrowers. The diversity of interests that control the sale process today undermines the value that can be achieved.

16. Moreover, the decision by each receiver separately to rush properties to market risks flooding the market and pushing prices down, or worse, incentivizes a race among the sellers to transact first. A hurried sale process in this environment is a weak sale process and will generate a poor return.

17. Another example is Farmer Mac's senior liens on a parcel included in the Kamm Avenue Ranch that totals 11,000 acres, including approximately 7,700 acres planted primarily to pistachios. Within this ranch, the Farmer Mac collateral is 76 acres of open ground "land locked" by the Prudential collateral, with the MetLife collateral also close by. It is unclear how Farmer Mac, and American Equity as a junior lienholder, recovers any value for property that has only one logical buyer—the immediate neighbors.

18. Another example is the 5,218-acre Calaveras Ranch, of which 864 acres are planted to pistachios and almonds. Farmer Mac has 160 acres (80 acres planted to pistachios) of the ranch

as collateral for one of its loans. Other lenders with collateral at the Calaveras Ranch are Prudential, Modern Woodsmen of America ("MWA"), and American Equity. Ideally, the Calaveras Ranch would be marketed as a single property to capitalize on the shared irrigation infrastructure and services. But, as currently contemplated, individual parcels that constitute the Calaveras Ranch will be sold separately by MWA (3,011 acres), Prudential (1,727 acres), American Equity (320 acres), and Farmer Mac (160 acres). To further complicate the sales of all of these parcels, not only are some parcels the subject of either the Farmer Mac receivership or the Prudential receivership (each of which has its own sale process), but other parcels within the ranch (i.e., MWA's collateral and some of American Equity's collateral) are not the subject of any receivership (and will thus involve a different process for properties to be sold). In the end, American Equity stands to lose the most in this scenario as it is the senior lienholder on 320 acres and a junior lienholder behind MWA and Farmer Mac (and Rooster Capital) on 3,171 acres.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 14, 2025, at New York, New York.

> */s/ Thaddeus Tracy*
> *(original signature retained by*
> *attorney Matthew D. Pham)*
> Thaddeus Tracy