Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:   (312) 902-5200
Facsimile:   (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:   (214) 765-3600
Facsimile:   (214) 765-3602

*Attorneys for the Receiver*
Lance Miller

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC,<br><br>Defendants. | No. 1:24-cv-01455-KES-SAB<br><br>**OMNIBUS REPLY TO OBJECTIONS FILED BY AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY [DKT. NOS. 56 & 74] AND JOINDER FILED BY THE MARICOPA DEFENDANTS [DKT. NO. 75]**<br><br>Hearing:<br>Hearing Date:   April 21, 2025<br>Hearing Time:   1:30 P.M. PT<br><br>Location: Robert E. Coyle U.S. Courthouse<br>       2500 Tulare Street<br>       Courtroom 6, 7th floor<br>       Fresno, CA 93721<br><br>Judge:   Honorable Kirk E. Sherriff<br><br>Action Filed: November 27, 2024 |

---

[1]   Designated as counsel for service pursuant to L.R. 182(c)(1).

Lance Miller, solely in his capacity as Court-appointed receiver (the "**Receiver**") in the above-captioned case, hereby files this Omnibus Reply (the "**Reply**") and the declarations attached hereto as **Exhibit A** (the "**Supplemental Miller Declaration**") and **Exhibit B** (the "**Supplemental Grosz Declaration**") in further support of the following motions (collectively, the "**Motions**"): (1) *Notice of Motion and Unopposed Motion of Receiver Lance Miller for Order Authorizing Engagement and Compensation of Pearson Realty as Real Estate Broker; Memorandum of Points and Authorities in Support Thereof* [Dkt. No. 48] (the "**Employment Motion**"), and (2) *Notice of Motion and Unopposed Motion of Receiver Lance Miller for an Order Establishing Marketing, Bid, and Auction Procedures for Broker-Marketed Properties; Memorandum of Points and Authorities* [Dkt. No. 50] (the "**Marketing Motion**" to establish the "**Marketing Procedures**"), and in response to the oppositions filed by American Equity Investment Life Insurance Company ("**AEIL**") at Dkt. Nos. 56 (the "**Initial Objection**") and 74 (the "**Supplemental Objection**" and, together with the Initial Objection, the "**AEIL Objection**") and the joinder [Dkt. No. 75] (the "**Joinder**") filed by the Maricopa Orchards LLC and certain affiliates ("**MOC Defendants**"). The AEIL Objection and the Joinder are collectively referred to herein as the "**Objection**."[2]

## OMNIBUS REPLY

### I.   Preliminary Statement

Despite its protestations, AEIL does not really have concerns about the Receiver's proposed sale process.  To the contrary, AEIL's stated goal in this case can be summarized as follows: finding itself in a junior lien position amidst concerns of repayment from a full and fair sale process, AEIL believes that it can push the MOC Defendants into a bankruptcy filing where AEIL, as a debtor-in-possession lender, can improve its secured position. Suppl. Miller Dec. ¶ 21. To that end, the Receiver understands that AEIL is attempting a two-pronged approach: (1) it is aggressively pursuing claims under personal guarantees owed by the owners of the MOC Defendants – claims

---

[2] A separate objection was filed by Rooster Capital IV LLC ("**Rooster**"). Respective counsel for the Receiver and Rooster initially conferred on March 4-5, 2025, and have since reached agreement as to language that will fully resolve Rooster's objection to the Motions. A redline draft reflecting the agreed changes to the proposed order approving Pearson's employment is attached hereto as **Exhibit C** and a redline draft reflecting agreed changes to the prosed marketing procedures is attached hereto as **Exhibit D**.

for which the amount owed cannot be liquidated until these sales are completed; and (2) AEIL will object to every step in the administration of receivership assets and take all possible avenues of appeal in order to make the receivership as difficult as possible for other stakeholders. *Id.* AEIL's strategy in this regard is, of course, AEIL's prerogative to pursue, but its objections in this matter – and castigations of the Receiver's good faith efforts – are disingenuous and should be rejected as an effort towards strategic obstruction.

Before turning to the substance of this matter, the Receiver must address a few of the many self-serving misstatements that pervade the AEIL Objection:

- **Statement**: "Contrary to the Court's [March 6] Minute Order, the Receiver failed to contact American Equity to initiate meet-and-confer discussions." Suppl. Obj. at 1; *see also id. at* 2-4, n.3.

  o **The Truth**: Since March 6, 2025, the Receiver and Michael Rudnick, Managing Director, Investments, for Brookfield Asset Management,[3] have participated on at least four calls and exchanged multiple emails to discuss this matter. Suppl. Miller Dec. ¶ 16. In fact, the parties have exchanged drafts of a proposed protocol whereby the Receiver would hold weekly status meetings with AEIL, give AEIL prior notice of sale pleadings, and provide AEIL with consultation rights in exchange for AEIL withdrawing its Objection (along with any objection to the Receiver's employment of Capstone Capital Markets LLC ("**Capstone**")).[4] *Id.* ¶¶ 16-20. To obfuscate these facts, AEIL states that "the only substantive communication received by American Equity's *counsel* from the Receiver's *counsel* has been an email sent by the latter on March 21, 2025, regarding the Capstone sale process." Suppl. Obj. at 3 (emph. added). Although that statement is correct, there was no requirement that the conference occur through counsel and at no point did either party request that

---

[3] Brookfield Reinsurance acquired AEIL in approximately May of 2024.

[4] The protocol began in response to the MOC Defendants' Coordination Motion (defined below) but continued even after the Court denied the Coordination Motion filed in a related case.

counsel be involved. *Id.* ¶ 17. Simply put, there can be no argument that the Receiver and AEIL failed to meet and confer on this matter.

- **Statement**: "As the Court well knows (but perhaps the Receiver requires reminding), the Receiver's mandate is to protect the interests of all creditors of the receivership estate in its assets, not just the interest of the creditor that nominated the Receiver for appointment. The Receiver's conduct suggests a belief that the Court will rubber stamp the Receiver's/Farmer Mac's proposals without consideration of other interests. The Receiver should be disabused of any such belief." Suppl. Obj. at 2.
    - **The Truth**: Since his appointment, the Receiver has devoted substantial and extraordinary amounts of time to communicate with stakeholders in this case. Miller Suppl. Dec. ¶ 8. Among other things:
        - The Receiver has established a virtual data room (the "**VDR**") for use by lenders in this case (including AEIL), where they can access information regarding loan obligations, crop receipts and allocations, and diligence regarding water infrastructure related to Maricopa Orchards, LLC and its affiliates (the "**Company**"). *Id.*
        - The Receiver provides lengthy, bi-monthly written reports regarding all of his efforts. *Id.* These reports, provided to each lender with access to the VDR (including AEIL), detail the receivership's cash and budget performance, the status regarding ongoing sale efforts, and updates regarding any other noteworthy efforts impacting the receivership. *Id.* Each of these reports has a section specifically addressing the status of Pearson's and Capstone's sale efforts. *Id.* The Receiver has received ***no*** feedback or questions from AEIL regarding these updates. *Id.*
        - The Receiver has scheduled standing, weekly calls with the MOC Defendants, Prudential, FarmerMac, the MetLife/Brighthouse receiver, and others to keep them appraised of case status and the sale process. *Id.* ¶ 9, 14.

In addition to the foregoing and specifically with respect to AEIL:

- The Receiver has held numerous calls with Mr. Rudnick and included AEIL in Pearson's interview process, discussed further below. *Id.* ¶¶ 11, 16.
- The Receiver has proposed a protocol that would give AEIL weekly status calls, pre-notice of sale-related actions, and consultation rights but, as made apparent by the Objection, AEIL declined. *Id.* ¶¶ 16 (including Exhibits), 20.
- The Receiver offered to schedule calls between AEIL and Pearson, but AEIL declined. *Id.* ¶ 18. Moreover, AEIL has not requested additional information regarding the terms of Pearson's engagement or its compensation structure since the Motions were filed. *Id.*
- At the Receiver's request, Capstone contacted AEIL on two separate occasions to provide updates regarding the sale process, associated thinking regarding sale-related strategy and planning, and the desire to pursue a comprehensive and integrated sale process that would include AEIL's collateral. *Id.* ¶ 19.

Despite this, AEIL now complains it is excluded from the process and that the Receiver is playing "favorites." The Receiver is clearly aware of his mandate. AEIL's suggestion otherwise is inappropriate, to say the least.

- **Statement**: "The Receiver did not, in any way, address American Equity's objections to the Sale Procedures, nor did he submit revised motion papers to propose more clear and coherent procedures—despite having even more time to do so[.]" Suppl. Obj. at 1.
  - o **The Truth**: On March 5, 2025, Receiver's counsel requested comments to the proposed orders from AEIL's counsel. AEIL refused to provide any comments and instead stated that AEIL would object to all sale-related motions, and appeal any sale orders, filed outside a bankruptcy proceeding in order to

>prevent the sale of any properties. It is disingenuous for AEIL to complain that the Receiver has not submitted revised papers satisfactory to AEIL, when AEIL has refused to participate meaningfully in the process. Nonetheless, the redline order attached hereto as **Exhibit D** includes AEIL comments that are acceptable to the Receiver.

Clearly, the Receiver's efforts in this and the related cases has been the antithesis of the "inaction" and "favoritism" alleged by AEIL.

The Receiver's push for open communication and coordination is further reflected in his approach to selecting sale-related professionals and the sale-related documents themselves. Suppl. Miller Dec. ¶ 10. That process started in early November 2024, with the Receiver's launch of a solicitation process to find professionals for marketing the Company's and the receivership's assets. *Id.* Around this same time, the Receiver brought to the lenders' attention the need to negotiate with and/or reach out to multiple stakeholders regarding collective marketing of Company assets as a whole or in large pieces, and provided a copy of the request-for-proposal solicitation letter (the "**RFP**") to be distributed to prospective bankers and real estate brokers. *Id.* In that RFP, a copy of which is attached to the Supplemental Miller Declaration, the Receiver asked each recipient to, among other things, provide "[r]ecommendations regarding whether all assets should be marketed through the same process, or whether specific assets can/should be sold separately." *Id.* This RFP letter was distributed to proposed professionals, each of whom provided a written response with their recommendations regarding how best to market the Company's and the receivership's assets. *Id.* Virtually all of those recommendations – including from Capstone and Pearson – recommended a multi-pronged approach whereby blocks of assets would be marketed together as a comprehensive operation, and others would be marketed through a brokerage process. *Id.*

Upon receipt of written responses to the RFP, the Receiver provided each of AEIL, the MOC Defendants, MetLife/Brighthouse, the MetLife/Brighthouse receiver, Prudential, and FarmerMac (collectively, the "**Process Participation Group**") with copies of all pitch materials, along with a lengthy summary presentation prepared by the Receiver. *Id.* ¶ 11. The Receiver then solicited input from each party in the Process Participation Group regarding which professionals should be elevated

to a round of interviews. *Id.* Based on that feedback, the Receiver scheduled interviews with eight different candidates, and invited each member of the Process Participation Group (including AEIL) to attend. *Id.* Each of these parties (including AEIL) accepted the invitation and participated in the interviews. *Id.* During each interview, the Receiver asked each professional about their proposed timeline for completing sales and recommendations for which assets should be sold together and which through a brokerage process. *Id.* AEIL was present for those discussions, and did not raise any objections or concerns. *Id.* Following these interviews, the Receiver provided each member of the Process Participation Group (including AEIL) with his thoughts and recommendations regarding the selection and sought input. *Id.* AEIL did not object to the Receiver's recommendations or raise any concerns regarding the retention of Pearson or Capstone, whereupon the Receiver moved forward to select them as professionals in this case. *Id.*

Moreover, the engagement letter between the Receiver and Capstone [Dkt. No. 171], which is set for hearing on May 5, 2025, continues to give parties an opportunity to participate in the sale process by specifically stating that the Receiver and Capstone will work to add additional properties into the Capstone sale process, including (to the extent each wishes to participate) properties owned/controlled, or subject to liens held, by: (a) the MetLife/Brighthouse receiver; (b) the MOC Defendant that are landowners; (c) third-parties owning properties adjacent, bounded by or otherwise related to the Capstone-marketed properties; and (d) additional lenders to the MOC Defendants or their affiliates. Capstone Engagement Letter § 2(d); Suppl. Miller Dec. ¶ 12. In fact, the Receiver has reached agreement on a form of joinder with certain MOC Defendants and continues to work with MetLife/Brighthouse and the MetLife/Brighthouse receiver on a similar joinder. *Id.* And, on top of that, there is absolutely nothing preventing potential buyers from purchasing parcels administered by different receivers and the Receiver would gladly work with others in this regard. *Id.*; Grosz Suppl. Dec. ¶ 8.

Similarly, the Marketing Procedures were based on the procedures filed by the MetLife/Brighthouse receiver that were previously approved by this Court on April 1, 2025 [Case No. 24-1261 Dkt. No. 132]. *Id.* ¶ 13. This was done intentionally since both receivers were seeking to employ Pearson to market certain real estate and consistency between estates should help avoid

confusion in the market (or difficulties if a party wishes to purchase Pearson-marketed properties across multiple estates). *Id.* It is hard to understand how similar procedures can be acceptable in one case, but wholly unworkable in another, particularly when the objecting MOC Defendants are involved in both cases.

Despite these efforts, AEIL accuses the Receiver of neglecting his duties and relies on misplaced allegations of "inaction" as grounds to deny the Motions and potentially ask the Court to discharge him of his duties. The Court should not condone these bullish actions by a junior lender who has threatened to hold this case (and now also the Prudential case[5]) hostage unless and until the MOC Defendants are placed into a bankruptcy proceeding.

**II.     Reply to AEIL Objections**

**A.     Despite False Accusations to the Contrary, the Receiver Met and Conferred with AEIL on Multiple Occasions Since Entry of the March 6 Minute Order.**

Respective counsel for the Receiver and AEIL conferred at approximately 4:30 p.m. CT on March 5, 2025. During that call, AEIL's counsel informed Receiver's counsel that AEIL believed the MOC Defendants should be in a bankruptcy proceeding (not a receivership), AEIL would <u>not</u> provide any comments to the proposed orders approving the Motions (despite a request to do so), and that AEIL intended to object to and appeal all sale-related motions and orders outside of a bankruptcy proceeding, effectively preventing *any* property sales through this receivership. The call ended without any resolution.

The Court entered its Minute Order the following morning, directing that "[p]rior to the opposition deadline, receiver shall meet and confer with Rooster Capital IV, LLC, and American Equity Investment Life Insurance Company, and with any other entity that informs the Receiver of its intended opposition to the motions, to attempt to reach a potential resolution to any objections

---

[5] Notably, AEIL also filed the Supplemental Objection in the Prudential case, despite readily admitting it holds no collateral subject to a Prudential lien. *See* Case No. 24-cv-1102, Dkt. No. 198. This filing has prevented the Receiver from filing a Certificate of No Objection in the Prudential case related to the proposed Ca Ag marketing procedures, thus causing unwarranted delay in both cases.

by such entities."[6]  In compliance with the Minute Order, the Receiver personally reached out to Mr. Rudnick, via both email and telephone, in an attempt to reach a resolution. Suppl. Miller Dec. ¶ 16. Despite multiple telephone calls and the exchange of various documents, the parties were unable to reach a resolution. *Id.* ¶¶ 16-20. The Receiver's counsel reached out to Rooster, whose objection is resolved.

Despite all of this, AEIL claims that the Receiver disregarded this Court's meet-and-confer mandate and that such action is not only a basis to deny the Motions but grounds to potentially discharge the Receiver from his duties. AEIL Obj. at 1-4 and n.1. These baseless allegations are clearly not supported by the record in this case.

**B. AEIL's Concerns Regarding the Need for an Integrated Sale Process were Previously Considered, and Overruled, by this Court in Relation to the Coordination Motion.**

Allegations regarding the need for an integrated or single-case sale process were previously considered and overruled by this Court on March 17, 2025, in relation to the *Motion to Implement Procedures Coordinating Receivership Sale Process* filed by the Maricopa Orchards LLC and certain affiliates [Case No. 24-1105, Dkt. No. 147] (the "**Coordination Motion**"). Indeed, the issues raised by AEIL in its Objection are so similar to those raised in the Coordination Motion that the Joinder states:

> To the extent the Oppositions renew arguments made by the Maricopa Defendants in connection with their [Coordination Motions], the Maricopa Defendants do not join such arguments. The Court, in denying the Coordination Motions, found that the receivers in the respective cases were already in regular communication and coordinating on issues related to the interconnectivity of the respective receivership properties. The Maricopa Defendants presume that the Receiver is also engaged in such communications and coordination efforts.

Joinder at 2 n.1.

---

[6] Despite additional service as directed by the Court, no other parties reached out to the Receiver or his counsel raising concerns.

As the MOC Defendants correctly presume, the Receiver is in weekly contact with the MOC Defendants, FarmerMac, Prudential, the MetLife/Brighthouse receiver, and others, and is working with those parties with respect to the sale process and to help ensure that properties that should remain together are sold together. Suppl. Miller Dec. ¶¶ 9, 14, 28-32. The issues raised in the Objection are clearly on the Receiver's radar, as reflected in his seeking to employ Capstone to sell properties whose value will be maximized by being sold together (such as Kamm Ranch[7]) and Pearson to sell other properties, and there is also nothing preventing third parties from purchasing properties across receiverships. *Id.* ¶¶ 10, 12, 15; Grosz Suppl. Dec. ¶ 8. Indeed, the Receiver is working with MetLife/Brighthouse, the MetLife/Brighthouse receiver, the MOC Defendants, and various landowners to include additional properties in the Capstone marketing process with the goal of maximizing value for all interested parties. Suppl. Miller Dec. ¶¶ 10, 12, 14. The Receiver and Pearson have also taken the concerns raised in the Tracy Declaration into consideration. *Id.* ¶¶ 28-32; Suppl. Grosz Decl. ¶¶ 5-8.

Perhaps most importantly, the process pursued by the Receiver is providing the very thing that AEIL purports to want. Through a series of negotiations and cooperation with the various stakeholders in these cases, the Receiver has managed to coordinate a marketing process for ***substantially all*** of the MOC Defendants' assets (both receivership and non-receivership property). Suppl. Miller Dec. ¶ 15. As reflected in the table below, the marketing efforts for Capstone and Pearson combined are addressing approximately 86% of the Company's properties.[8] *Id.*  AEIL is

---

[7] With respect to AEIL's complaints regarding the sale value of Kamm Ranch and the "landlocked parcel" that is subject to an AEIL third lien/FarmerMac first lien, (*see* Tracy Decl. [Dkt. 74-2] ¶ 17), the Receiver filed a motion in this case to employ Capstone that would have added the landlocked parcel to Capstone's sale of the surrounding Prudential parcels. AEIL objected to that motion [Dkt. No. 56], which resulted in the Receiver withdrawing and ultimately re-filing the motion [Dkt. Nos. 61 and 71, respectively], which is now set for hearing on May 5, 2025. The Receiver fully expects AEIL to again object to Capstone's employment and marketing of the landlocked parcel as part of Kamm Ranch, while simultaneously complaining that the parcel is not being marketed as part of Kamm Ranch. *See* Suppl. Miller Dec. ¶ 30.

[8] Amounts reflected for "Included in Sale Process" include acreage that is currently being marketed/sold by the Touchstone and MetLife/Brighthouse receivers, in consultation and coordination with the Receiver's process. It also includes acreage for which Modern Woodsman has a first lien, because the Receiver understands that Modern Woodsman is favorably inclined to ultimately including its collateral in the Capstone process.

the sole remaining material holdout from the process, and if AEIL would simply "say yes" to the Receiver's coordination, that percentage would increase to approximately 93%. *Id.* AEIL's refusal to participate speaks volumes.

**Total Participation w/o AEIL**

| 1st Lien/Owner | Total Assessed Acres | Included in Sale Process | Excluded from Process |
|---|---|---|---|
| 3rd Party | 424 | 70 | 354 |
| FAMC (Solar Loans) | 1,430 | 1,430 | |
| AEIL | 4,226 | | 4,226 |
| FAMC | 2,956 | 2,956 | |
| Met Life | 4,108 | 4,108 | |
| Met Life/Prudential | 79 | 79 | |
| Prudential | 44,098 | 44,098 | |
| AgWest Farm Credit | 1,981 | | 1,981 |
| RaboBank | 1,182 | | 1,182 |
| Modern Woodsman | 3,311 | 3,311 | |
| Assemi | 1,922 | 757 | 1,165 |
| **Totals:** | 65,716 | 56,808 | 8,908 |
| **Percentages** | 100% | 86% | 14% |

**Total Participation w/ AEIL Participating**

| 1st Lien/Owner | Total Assessed Acres | Included in Sale Process | Excluded from Process |
|---|---|---|---|
| 3rd Party | 424 | 70 | 354 |
| FAMC (Solar Loans) | 1,430 | 1,430 | |
| AEIL | 4,226 | 4,226 | |
| FAMC | 2,956 | 2,956 | |
| Met Life | 4,108 | 4,108 | |
| Met Life/Prudential | 79 | 79 | |
| Prudential | 44,098 | 44,098 | |
| AgWest Farm Credit | 1,981 | - | 1,981 |
| RaboBank | 1,182 | - | 1,182 |
| Modern Woodsman | 3,311 | 3,311 | |
| Assemi | 1,922 | 757 | 1,165 |
| **Totals:** | 65,716 | 61,035 | 4,682 |
| **Percentages** | 100% | 93% | 7% |

If AEIL is concerned about the value of its collateral as it relates to receivership sales, it has the option of adding its properties to the Capstone or Pearson sale processes, either through a joinder (as contemplated in the Capstone Engagement Letter) or through its related receivership case already pending before this Court, *American Equity Investment Life Insurance Company v. Maricopa Orchards, LLC et al.*, Case No. 24-cv-1406. Instead, AEIL has chosen to let its request for a receiver lie dormant while it seeks to derail the processes being coordinated among the receivers.

### C.  The Sale Procedures are in Substantially the Same Form as Previously Approved by the Court in the MetLife/Brighthouse Cases and Should be Approved.

AEIL and the MOC Defendants each complain that the proposed Marketing Procedures are patently unworkable. And, for the first time, AEIL provides comments to the proposed order approving the Marketing Procedures, despite previously demanding the procedures be withdrawn and refusing to provide comments.

Notably, the Marketing Procedures are based on the procedures submitted by the MetLife/Brighthouse receiver in relation to his employment of Pearson, which were approved by the Court on April 1, 2025 [Case No. 24-1261, Dkt. No. 132]. Miller Suppl. Dec. ¶ 13. Since Pearson is already serving as broker for the MetLife/Brighthouse properties, it only makes sense that the same (or substantially the same) procedures govern both cases in order to avoid confusion in the market and to make it easier for parties to purchase properties across multiple estates (if they so choose). *Id.* Yet, somehow, the marketing procedures approved by the Court in the MetLife/Brighthouse cases are alleged patently unworkable in this case.

Moreover, many of the issues raised in the Supplemental Objection are already addressed in the sale procedures (or will be addressed by agreed amendments, as reflected in **Exhibit D)**. For example:

- <u>Time for Marketing</u>. The Receiver is not contemplating a four-week sale process. The publication period is four weeks, per statute. The properties will be marketed *no less* than four weeks, with any auction and sale hearing to occur *after* the publication period

expires. To the extent this is unclear, the Receiver agrees to amend the order accordingly. *See* **Exhibit D**; *see also* Suppl. Grosz Decl. ¶¶ 4-8.

- <u>Time to Submit Qualified Bids</u>. It is appropriate that the Receiver be permitted to receive Qualified Bids both during and after the publication period. Once he receives a Qualified Bid he intends to move forward with, the Receiver will file a Sale Notice providing parties with all relevant information, including the deadline to submit competing Qualified Bids and the proposed date/time of the auction and sale hearing. There is simply no reason for interested parties to wait until the end of the publication period to submit bids. Contrary to AEIL's assertion, the Receiver does not intend to sell a property prior to expiration of the publication period. To the extent this is unclear, the Receiver agrees to amend the order accordingly. *See* **Exhibit D.**

- <u>Parties Entitled to Receive Notice</u>. The Receiver agrees to amend the proposed Marketing Procedure Order to state that the Sale Notice will be served to all parties claiming a lien, claim, or encumbrances in the subject property(ies) that could be affected by a sale free and clear, and those parties shall have the right to object to the proposed sale pursuant to the proposed Marketing Procedures Order. *See* **Exhibit D.**

- <u>Time to Object to Sale</u>. The Receiver is willing to extend the objection period related to sales by an additional 7 days, giving parties 21 days' notice and 14 days to object. This timeline is appropriate considering the 14-day objection deadline under LR 230(c) and the 14-day notice period for sales set forth in paragraph 4.d.ii of the Receivership Order [Dkt. No. 29]. Subject to Court availability, there is no need to wait an additional 21 days between the objection deadline and the proposed auction/sale hearing date. *See* **Exhibit D.**

- <u>Amount of Overbids</u>. The Receiver agrees to remove the word "material" from the phrase "material increase in value" as used in the proposed order approving the Marketing Procedures. *See* **Exhibit D.**

- <u>Consultation Rights</u>. The Receiver has been working directly with Mr. Rudnick for weeks in an attempt to establish a consultation protocol that would provide AEIL with pre-notice of sale-related actions, weekly status calls, and consultation rights in

exchange for AEIL withdrawing its objection to the Motions (along with the motion to employ Capstone). Suppl. Miller Dec. ¶ 16. The Receiver was even willing to permit AEIL to object to sales to the extent its lien would not be paid in full. *Id.* To date, AEIL has refused. *Id*. ¶ 20. The Receiver previously agreed to include consultation rights for Rooster in the proposed order and is willing to extend the same to AEIL and the MOC Defendants. *See* **Exhibit D.**

- <u>Free and Clear Relief</u>. It is not appropriate to remove the phrase "free and clear" from the Marketing Procedures Order since it gives parties notice of the Receiver's intent to request, at a future date, that sales be free and clear. Moreover, to the extent a proposed sale is insufficient to clear AEIL's liens and AEIL wishes to object on that basis, the Receiver is willing to work with AEIL (and the MOC Defendants) to establish a briefing schedule on the free and clear issue and, absent agreement as to timing, to abide by a scheduling order entered by the Court. The Receiver will not sell any real estate free and clear of liens, claims, or encumbrances absent further order of the Court.

- <u>Discretion to Modify Marketing Procedures</u>. It is appropriate to give the Receiver discretion to modify the Marketing Procedures. The Receiver will prove-up each sale at a sale hearing, and the Court may determine at that time whether modifications to the Marketing Procedures, if any, chilled the bidding process.

### D.  AEIL's Remaining Objections

To the extent still pursued, AEIL's objections set forth in its Initial Objection should be overruled.

#### 1. Pearson's Compensation is Reasonable and Market-Based

AEIL complains that it should be afforded the opportunity to evaluate whether the Receiver's proposed compensation rate for Pearson represents market rates and requests the opportunity take discovery on the issue. Initial Objection at 4, 18. As a result of AEIL's and Rooster's objections, the Court continued the hearing on the Motions from March 10 to March 31 and then the parties further continued the hearing from March 31 to April 21 by agreement. Despite being given nearly 50 days to evaluate the Motions, AEIL has not requested any information

14

regarding Pearson's employment or compensation and has declined the Receiver's offer to set up a call between Pearson and AEIL. Suppl. Miller Dec. ¶ 18.

As reflected in the Supplemental Miller Declaration, the Receiver participated in a fulsome engagement process, including sending an RFP to potential brokers and investment bankers, interviewing eight separate firms and, in consultation with FarmerMac, as required by the Receivership Order, determined to hire Pearson. *Id.* ¶¶ 10, 11, 22. Notably, the Receiver opened the interview process to various parties in interest, ***including AEIL who attended Pearson's pitch meeting (as well as other pitches) prior to the Receiver's selection and participated in post-interview calls with the Receiver where it raised no concerns regarding the Receiver's proposed employment of Pearson***. *Id*. Despite this, AEIL now complains it was caught off guard by Pearson's engagement and needs additional time to consider whether Pearson's employment terms are market based. Yet, when given that time by the Court and by agreement of the parties, AEIL made no attempt to obtain the information it claims to be missing. *Id.* ¶ 18. A request for further continuance is a clear delay tactic that will add extra costs to these proceedings in hopes of gaining unwarranted leverage over the process and forcing the MOC Defendants into a bankruptcy proceeding.

        2.    <u>All Information Required to Analyze the Terms of Pearson's Employment Is Filed on the Docket.</u>

AEIL complains that the Receiver failed to identify in the Motions the receivership property sought to be marketed and each party claiming an interest in such property, justifying denial of the Marketing Motion. AEIL Initial Objection § I.A.3. During the continuance, the Receiver filed Exhibit A to the Marketing Motion on the docket [Dkt No. 58] and served it to parties as directed by this Court, including AEIL [Dkt. Nos. 62, 64, 65, 69, 72]. Further, there is neither a requirement nor need for the Motions to list each party holding a potential interest in the properties sought to be marketed.

        3.      <u>The Motions Were Properly Served and All Parties were Provided a Full Notice Period.</u>

AEIL's objections that the Motions were not properly served or that parties were given an inadequate notice period were resolved by the Court's Minute Order and the continuance of the Motions to April 21, 2025, thus mooting this objection.

### III. Conclusion

For the foregoing reasons, the Receiver respectfully requests that the Court overrule the Objection in full and grant the Receiver such other and further relief to which he is justly entitled.

Dated: April 18, 2025

Respectfully submitted by:

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/ *Terence G. Banich*
Terence G. Banich
*Attorneys for the Receiver*
Lance Miller

# PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On April 18, 2025, I served the following document(s) described as:

**OMNIBUS REPLY TO OBJECTIONS FILED BY AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY [DKT. NOS. 56 &74] AND JOINDER FILED BY THE MARICOPA DEFENDANTS [DKT. NO. 75]**

as follows:

**[ ]   BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ X ]   BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

- Jsmcnutt@kerncounty.com

**[ ]   BY OVERNIGHT MAIL (FedEx):** I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]   BY PERSONAL SERVICE:** I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]   E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on April 18, 2025, at Chicago, Illinois.

*/s/Terence G. Banich*
Terence G. Banich