UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC,<br><br>Defendants. | No. 1:24-cv-01455-KES-SAB<br><br>ORDER GRANTING ROOSTER CAPITAL IV LLC'S MOTION TO INTERVENE<br><br>(Doc. 73) |

Rooster Capital IV LLC ("Rooster"), a junior lienholder on certain parcels of real property that are the subject of this action, moves to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). Doc. 73 ("Mot. Intervene"). No party filed an opposition. For the reasons addressed below, the Court grants Rooster's motion to intervene.

**I.     BACKGROUND**

From January 8, 2018 to February 2, 2023, defendants Assemi Brothers, LLC, Maricopa Orchards, LLC, C & A Farms, LLC, Whitesbridge Farms, LLC, Willow Avenue Investments,

1

1  LLC, Lincoln Grantor Farms, LLC, Copper Avenue Investments, LLC, ACAP Farms, LLC,
2  Cantua Orchards, LLC, and Gradon Farms, LLC signed a series of notes (the "Farmer Mac
3  Notes") in favor of Conterra Agricultural Capital, LLC ("CAC"). Doc. 1 ("Compl.") ¶ 18. The
4  Farmer Mac Notes are secured by deeds of trust on real property (the "Farmer Mac Deeds of
5  Trust") in Fresno County, Kings County, and Kern County. *Id.* ¶ 20. Upon origination, the
6  Farmer Mac Notes were assigned by CAC to plaintiff Federal Agricultural Mortgage Corporation
7  ("Farmer Mac"). *Id.* Defendants allegedly defaulted on the Farmer Mac Notes, and Farmer Mac
8  asserts in this action that, as of November 21, 2024, it is owed at least $41,416,040.49. *Id.* ¶¶ 2,
9  4.
10      On February 2, 2023, defendants Maricopa Orchards, LLC, Copper Avenue
11 Investments, LLC, C&A Farms, LLC, ACAP Farms, LLC, Willow Avenue Investments, LLC,
12 Lincoln Grantor Farms, LLC, Cantua Orchards, LLC, and Gradon Farms, LLC ("the Rooster
13 Borrowers") signed another note in favor of CAC in the amount of $7,400,000. Doc. 73-1, Ex. A
14 ("Rooster Note"). Pursuant to several deeds of trust ("the Rooster Deeds of Trust"), the Rooster
15 Note is secured by some of the same parcels of real property that secure Farmer Mac's loans.
16 Doc. 73-1 ("Second Smith Decl.") ¶ 9; Doc. 73-1, Exs. B–D. Upon origination, the Rooster Note
17 and Rooster Deeds of Trust were assigned to Rooster. Second Smith Decl. ¶ 8; Doc. 73-1, Exs.
18 E–G. The Rooster Deeds of Trust are in a junior position to the Farmer Mac Deeds of Trust.
19 Second Smith Decl. ¶ 10.
20      The Rooster Borrowers allegedly defaulted on the Rooster Note. *Id.* ¶ 12. Rooster asserts
21 that as of February 28, 2025, the current balance of the Rooster Note is $8,400,606.46,
22 constituting $7,400,000 in unpaid principal balance, $961,871.62 in interest, and $38,734.84 in
23 fees and charges. *Id.* ¶ 13.
24      On November 27, 2024, Farmer Mac filed the complaint in this action, asserting claims
25 for breach of contract, appointment of receiver, accounting, and specific performance, and
26 injunctive relief. Compl. ¶¶ 33–51. On January 3, 2025, at the agreement of Farmer Mac and all
27 defendants except Assemi Brothers, LLC, this Court appointed Lance Miller as receiver (the
28 "Receiver") over the real property that secures the Farmer Mac Deeds of Trust. Doc. 29

1  ("Receivership Order") at 2 n.1, 4–5 ¶ 1. The Court authorized the Receiver to, among other

2  things, sell the property. Receivership Order ¶ 4.

3  On February 25, 2025, the Receiver filed a motion for entry of an order establishing

4  marketing, bid, and auction procedures so that he could proceed with an orderly process for

5  liquidating the property. Doc. 50 ("Sale Procedures Motion"). On March 3, 2025, Rooster filed

6  an opposition to the motion, noting that it had not been served with the motion. Doc. 55.

7  Accordingly, the Court continued the hearing on the motion, Docs. 57, 67, and the Receiver and

8  Rooster subsequently resolved their dispute about the motion, *see* Doc. 80. The Court held a

9  hearing on April 21, 2025, at which Rooster noted that it no longer had an objection to the sale

10  procedures motion. Doc. 81. However, Rooster has indicated that it may object to any future

11  motion by the Receiver to sell the property. Mot. Intervene at 6–7.

12  On April 14, 2025, Rooster filed a motion to intervene. Mot. Intervene. No party has

13  filed an opposition to Rooster's motion to intervene, and the Court took the matter under

14  submission without oral argument pursuant to Local Rule 230(g). Doc. 91.

## II.    LEGAL STANDARD

16  "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit."

17  *U.S. ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928, 933 (2009) (citing *Marino v.*

18  *Ortiz*, 484 U.S. 301, 304 (1988)). Whether made as of right or permissively, a motion to

19  intervene in a federal court suit is governed by Federal Rule of Civil Procedure 24. *NAACP v.*

20  *New York*, 413 U.S. 345, 365 (1973). Rule 24(a)(2) mandates that courts must allow anyone to

21  intervene as of right who, upon making a timely motion, "claims an interest relating to the

22  property or transaction that is the subject of the action, and is so situated that disposing of the

23  action may as a practical matter impair or impede the movant's ability to protect its interest,

24  unless existing parties adequately represent that interest." Fed. R. Civ. P. 24. To satisfy the

25  requirements of Rule 24(a)(2), a prospective intervenor bears the burden of establishing that:

26  
27  
28  
> (1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) its interest is inadequately represented by the parties to the action.

3

*Sweet v. Cardona*, 121 F.4th 32, 47–48 (9th Cir. 2024) (quoting *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021)); *see also Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("Failure to satisfy any one of the requirements is fatal to the application, and we need not reach the remaining elements if one of the elements is not satisfied.").

"In determining whether intervention is appropriate, [courts] are 'guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention.'" *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

### III. DISCUSSION

Rooster is entitled to intervene as of right pursuant to Rule 24(a)(2). The Court examines each element of Rule 24(a)(2) in turn.

#### A. Timeliness

Timeliness hinges on "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers*, 22 F.4th at 822 (internal quotation marks and citation omitted). "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation.*" *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (emphasis added).

Rooster learned that its interests may no longer be adequately protected by the parties shortly after the Receiver filed the Sale Procedures Motion on February 25, 2025. *See* Doc. 55-1 ("First Smith Decl.") ¶ 14. Rooster learned that the Receiver was preparing to sell the property when the parties to this action informed Rooster, which appears to have occurred sometime after

the Sale Procedures Motion was filed because Rooster was not initially served with the motion.[1] *Id.* This information alerted Rooster that its interests were no longer adequately protected by existing parties because a sale of the real property that secures the Rooster Notes could potentially result in less than full satisfaction of the debt owed to Rooster. Rooster filed its motion to intervene on April 14, 2025, a week prior to the date of the hearing on the Sale Procedures Motion. Mot. Intervene. Given that Rooster learned that its interests might no longer be adequately protected by existing parties sometime between February 25 and March 3, 2025, and Rooster filed the motion to intervene about seven weeks later, there was no substantial delay. *See Western Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (finding motion to intervene timely when the proposed intervenor's "motion came just three months after it discovered that its leases were involved in this litigation").

Additionally, even though Rooster moved to intervene only a week prior to the hearing on the Sale Procedures Motion, no party would be prejudiced by the timing of Rooster's motion to intervene because Rooster promptly filed an opposition to the Sale Procedures Motion on March 3, 2025, well in advance of the hearing on that matter. *See* Doc. 55. The parties were made aware of the grounds for Rooster's objection to the Sale Procedures Motion no later than eight days after the Sale Procedures Motion was filed, so the fact that Rooster did not immediately file a motion to intervene could not have prejudiced them. *See Western Watersheds Project v. Haaland*, 22 F.4th at 838 ("[T]he only relevant prejudice [under the timeliness factor] is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." (quotations omitted)). Accordingly, Rooster's motion to intervene was timely.

### B. Significantly Protectable Interest

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Greene v. United States,* 996 F.2d 973, 976

---

[1] Given that Rooster was not served with the Sale Procedures Motion but filed its opposition on March 3, 2025, *see* Doc. 55, this date was sometime between February 28 and March 3, 2025.

1  (9th Cir. 1993) (citing *Portland Audubon Soc'y v. Hodel,* 866 F.2d 302, 308 (9th Cir. 1989)). "It
2  is generally enough that the interest [asserted] is protectable under some law, and that there is a
3  relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra*
4  *Club v. United States EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993)).

5  Rooster possesses a significantly protectable interest. Under California law, a deed of
6  trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*
7  *Mortgage Co. v. Rothwell,* 10 Cal. 4th 1226, 1235 (Cal. 1995). Pursuant to the Rooster Deed of
8  Trust, the Rooster Note is secured by the real property that is the subject of this action. First
9  Smith Decl. ¶ 9; Doc. 73-1, Exs. B–D. Its legally protected interest therefore shares a clear
10 relationship to the claims at issue in this case. Accordingly, Rooster has a significantly
11 protectable interest.

### C. Practical Impairment

Courts should "follow the guidance of [the] Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes).

The Receiver has made clear that, upon the conclusion of an auction, he may seek to sell the property free and clear of all liens, claims, and encumbrances, with all such liens, claims, and encumbrances to attach to the proceeds from the sale. *See* Doc. 83 ("Sale Procedures Order") ¶ 7. While the specific terms of any such sale are not presently before the Court and will likely be the subject of a subsequent motion by the Receiver, Rooster would be substantially affected if its liens were to attach only to the sale proceeds and those proceeds were insufficient to satisfy the full amount of the debt owed to Rooster. Thus, Rooster's significantly protectable interest may be impaired by determinations to be made in this action.

### D. Inadequacy of Representation

The final element, adequacy of representation, "'is satisfied if the applicant shows that representation of his interest *may* be inadequate'—a 'minimal' burden." *Kalbers*, 22 F.4th at 828

(quotations omitted). "Particularly relevant factors here include 'whether the present party is capable and willing to make [the intervenor's] arguments' and 'whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted).

Rooster's interest in this action will not necessarily be adequately represented by other parties. Plaintiff Farmer Mac's interest as the senior lien holder may be significantly different than Rooster's interest as a junior lien holder, including depending on the amount of sale proceeds available to repay the lienholders. The Receiver has indicated that he may seek to sell the property free and clear of all liens, with all such liens to attach to the proceeds of the sale. Sale Procedures Order ¶ 7. There may be appropriate business justifications for doing so, although that issue is not presently before the Court. Nevertheless, Rooster has indicated that it may oppose any such request by the Receiver because of Rooster's status as a junior lienholder. *See* Mot. Intervene at 6–7. Of course, "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate . . . for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). "Nonetheless, even if the Receiver's actions ultimately benefit the receivership entity's creditors, . . . the Receiver stands in the shoes of the receivership entities, not in the shoes of the creditors." *Winkler v. McCloskey*, 83 F.4th 720, 727 (9th Cir. 2023). While the Court has no doubt that the Receiver will seek to maximize the recovery to all creditors, his duty to the receivership estate generally may potentially be at odds with Rooster's arguments seeking to maximize Rooster's specific interests. Accordingly, Rooster may be inadequately represented by the existing parties to this action.

**IV.   CONCLUSION**

Each element of Rule 24(a)(2) is satisfied by Rooster's proposed intervention. Accordingly, Rooster's motion to intervene as of right, Doc. 73, is GRANTED.

IT IS SO ORDERED.

Dated:   May 16, 2025

UNITED STATES DISTRICT JUDGE