1   Terence G. Banich (SBN 212173)[1]
    terence.banich@katten.com
2   **KATTEN MUCHIN ROSENMAN LLP**
    525 W. Monroe St.
3   Chicago, IL 60661-3693
    Telephone:    (312) 902-5200
4   Facsimile:    (312) 902-1061

5   John E. Mitchell (*pro hac vice*)
    Michaela C. Crocker (*pro hac vice*)
6   **KATTEN MUCHIN ROSENMAN LLP**
    2121 North Pearl St., Ste. 1100
7   Dallas, TX 75201-2591
    Telephone:    (214) 765-3600
8   Facsimile:    (214) 765-3602

9   *Attorneys for the Receiver*
    Lance Miller
10

11                  **UNITED STATES DISTRICT COURT**

12                  **EASTERN DISTRICT OF CALIFORNIA**

13

14  FEDERAL AGRICULTURAL MORTGAGE          ) No. 1:24-cv-01455-KES-SAB
    CORPORATION,                           )
15                                         ) **AMENDED[2] DECLARATION OF**
                       Plaintiff,          ) **LANCE MILLER**
16                                         )
          v.                               ) Related to Dkt. Nos. 105 and 106
17                                         )
    ASSEMI BROTHERS, LLC; MARICOPA         )
18  ORCHARDS, LLC; C & A FARMS, LLC;       ) Judge:    Hon.  Kirk E. Sherriff
    WHITESBRIDGE FARMS, LLC; WILLOW        )
19  AVENUE INVESTMENTS, LLC; LINCOLN       ) Action Filed: November 27, 2024
    GRANTOR FARMS, LLC; COPPER             )
20  AVENUE INVESTMENTS, LLC; ACAP          )
    FARMS, LLC; CANTUA ORCHARDS, LLC;      )
21  GRADON FARMS, LLC,                     )
                                           )
22                                         )
                       Defendants.         )
23                                         )

24

25

26

27
    ────────────────────────
28  [1]   Designated as counsel for service pursuant to L.R. 182(c)(1).
    [2]   This Amended Declaration is filed to correct the purchase price listed in paragraph 4.  The
    original Declaration stated $9,884,400, when the correct purchase price is $9,854,542.

303889340

I, Lance E. Miller, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.      I am over the age of eighteen, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this amended declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this Amended Declaration.

2.      I submit this Amended Declaration in support of the *Agreed Motion of Receiver Lance Miller for an Order Authorizing the Private Sale of Certain Receivership Property Free and Clear of Liens, Claims, and Encumbrances, and Settlement of Claims in Connection Therewith* [Dkt. No. 105] (the "**Motion**").

3.      I am the Founder and a Managing Director of Pivot Management Group, LLC ("**Pivot Group**"), a financial advisory and turnaround management firm with an office located at 1230 Rosecrans Avenue, Suite 530, Manhattan Beach, California 90266.  I have more than 19 years of experience in complex receiverships, workouts, restructurings, corporate and shareholder disputes, and distressed M&A processes. As an attorney and later as a partner in distressed advisory firms (including Pivot Group), I have provided services over a multitude of industries and markets to companies, creditors, equity holders, asset purchasers, receiverships, and creditors' trusts.

4.      Soon after my appointment, I, FAMC, and Buyer began discussions regarding the potential sale of the Property to Buyer and related matters. Those discussions were later extended to include Rooster Capital IV, LLC ("**Rooster**"), the second lienholder on the Property, American Equity Investment Life Insurance Company ("**AEIL**"), the third lienholder on the Property, and the Defendant record owners of the Property (the "**Owner/Defendants**").  After exchanging multiple offers and counter offers, on or about May 16, 2025, I received an initial form of offer from Buyer to purchase approximately 1,464 total acres of real property comprised of the following parcels, which offer also included proposed sale terms concerning properties that are not part of this receivership estate, and which offer later was bifurcated into a proposal for purchase of the Property for a purchase price of **$ 9,854,542.00** (the "**Purchase Price**")**,** subject to the other terms of the offer or as set forth in any applicable Purchase Sale Agreement(s) following the offer:

303889340

| OWNER OF RECORD | KERN COUNTY APN | LEGAL | ACRES |
|---|---|---|---|
| Maricopa Orchards, LLC | 295-040-30 | T32S-R26E, SEC 19: ALL | 323.15 |
| Maricopa Orchards, LLC | 295-040-31 | T32S-R26E, SEC 19: ALL | 329.07 |
| C&A Farms, LLC | 220-130-02 | T32S-R25E, SEC 26: N2N2 | 152.79 |
| Maricopa Orchards, LLC | 239-150-11 | Parcel 2 of Parcel Map No. 12451 | 429.50 |
| C&A Farms, LLC | 220-110-10 | T32S-R25E, SEC 22: S2NE4 | 80.40 |
| C&A Farms, LLC | 220-110-87 | Parcel B of Parcel Map 12196 | 149.26 |

(collectively, the "**Property**"). Buyer also seeks to purchase APN 220-130-49, which is not Receivership Property, from Maricopa Orchards, LLC.

5.    After extensive negotiations, the parties reached agreement regarding the terms of the proposed sale and entered into a Purchase and Sale Agreement (the "**PSA**"), a copy of which is attached to the Motion. Among the conditions precedent to the proposed transaction are that (i) I, on behalf of the receivership estate, release any claims I may hold against NOC in relation to Maricopa Orchards, LLC's pre-receivership transfer of Tract 17-C to NOC; and (ii) the Court approve a private sale of the Property to Buyer outside the confines of 28 U.S.C. §§ 2001 and 2002 and the *Order Granting Motion of Receiver Lance Miller for an Order Establishing Marketing Bid, and Auction Procedures for Broker-Marketed Properties* [Dkt. No. 83] (the "**Marketing Procedures Order**").

6.    Pursuant to Buyer's offer as later modified, and pursuant to the PSA, the deadline to close the proposed sale is not later than on or about October 10, 2025. Buyer has stated that it requires this date to meet its stated necessary timeframe and construction schedule, including obtaining building permits related thereto, for an affiliate of Buyer to install the Kyan Solar Project on a portion of the Property. I believe that the Purchase Price, which I and affected lienholders believe is favorable to the receivership estate, is indicative of Buyer's necessity to close by such date.

7.    Especially because the Property is subject to the Property Option in favor of Buyer's

303889340

affiliate (Kyan), and since the Property is encumbered by substantial liens, I, the Owner/Defendants, and the lienholders on the Property all believe Buyer's offer and the Purchase Price are favorable to all such affected parties in this Case, and I am not confident that I would receive a higher or better offer if Buyer's current offer is withdrawn and the Property marketed by a real estate broker.

8.    Moreover, based on preliminary title reports, I believe that the sale proceeds will be sufficient to pay in full, at closing, all taxes, assessments, and customary closing costs, as well as any liens held by parties other than FAMC, Rooster, and AEIL. The net proceeds of the sale are proposed to be distributed to FAMC at closing. Rooster and AEIL, the junior lienholders on the Property, each consent to the sale and proposed distribution of proceeds.

9.    Since I have determined in the exercise of my business judgment that the terms of the proposed sale and release are fair and reasonable, I believe that subjecting the Property to a public auction and jeopardizing the current offer would not be in the best interests of the receivership estate, particularly considering that a sale of the Property to a different entity would either be subject to the option in favor of Buyer's affiliate (Kyan) or, alternatively, give rise to litigation costs associated with any attempt by me to reject such option, likely negatively affecting value. Further, under these circumstances, I believe that the cost of obtaining three separate appraisals for the Property would be burdensome and subject the estate to unnecessary costs and delay, also jeopardizing the sale. Accordingly, with the consent of the Parties, I request that the Court authorize and approve the private sale of the Property in accordance with the PSA and approve the settlement of claims related to the pre-receivership transfer of Tract 17-C to NOC.

10.    I believe that ample cause exists to grant the Motion. I, with the consent of FAMC, the Owner/Defendants, and the second and third lienholders, have determined, in the exercise of my sound business judgment, that a sale of the Property pursuant to the PSA represents a market-based price and that the overall transaction is fair, reasonable, and in the best interests of the receivership estate. Moreover, marketing the Property not only risks the current sale, but I believe it is unlikely to result in a sales price meaningfully higher than that approved by the Parties. Finally, I believe that a sale to a party other than Buyer will likely be subject to Buyer's affiliate's Purchase Option on the Property or, alternatively, result in the costs, risks, and delays associated with my seeking to

4

1    reject the Purchase Option.

2        11.   Moreover, in the exercise of my business judgment, I believe that the proposed

3    release of claims, if any, related to Maricopa Orchards, LLC's pre-receivership transfer of the

4    Property to NOC represents a fair and reasonable compromise that is in the best interests of the

5    receivership estate. The settlement will allow the estate to avoid costly and uncertain litigation, sell

6    the Property with the consent of the Parties, and provide a meaningful recovery to Plaintiff.

7        12.   Although I believe that I may hold disgorgement claims against NOC related to the

8    pre-receivership transfer of Tract 17-C, NOC and Buyer have informed me that they believe NOC

9    has valid defenses to any such claims and that NOC would have potential cross-claims for recovery

10    of the substantial amounts it paid for the purchase of Tract 17-C and for the value of the substantial

11    improvements it has made to Tract 17-C. Moreover, NOC and Buyer have stated an unwillingness

12    to settle outside the parameters set forth in the PSA and the Motion, which includes a release of any

13    and all claims against NOC (and all related entities and persons) regarding Tract 17-C. Moreover,

14    pursuing such litigation will be expensive and, even if I am successful, it is uncertain that I would

15    be able to sell Tract 17-C *and* the Property for an amount in excess of the Purchase Price, especially

16    considering that the Property is subject to the Property Option in favor of Buyer's affiliate (Kyan),

17    and further when taking the costs of litigation and appeal into account. I believe it is also likely that

18    NOC would intensely litigate any lawsuit and appeals, in part because of the substantial investment

19    NOC has apparently already made in Tract 17-C. Under these facts, I believe, in the exercise of my

20    business judgment, that the proposed settlement easily falls within a range of reasonableness and

21    that this factor weighs in favor of approving the settlement.

22        13.   Although Tract 17-C potentially could be conveyed to the receivership estate if any

23    disgorgement action and any appeals were successful, I believe, in the exercise of my business

24    judgment, that collection effort likely will be outweighed by the losses the receivership estate will

25    suffer as a result of Buyer's affiliate's remaining Property Option on the Property, and/or any

26    financial recovery (and/or set-off) NOC may obtain in the litigation based on the value of the

27    improvements it has made to Tract 17-C, possibly turning any potential "win" regarding Tract 17-

28    C into a net collection loss for the receivership estate.

303889340

14.     I also believe that, based on my experience, it would be complex, expensive, and time-consuming for the parties to litigate a potential disgorgement action against NOC, likely requiring extensive discovery, retention of experts, and numerous witnesses. A trial and appeal would likely take substantially more than one year to complete and cost the estate several hundred thousand dollars in fees and expenses.

15.     Finally, the proposed sale and release are supported by Plaintiff, Defendants, Rooster, and AEIL (the "**Parties**") and I believe that the purchase price will be sufficient to satisfy all non-Party liens and assessments, with the only affected parties holding Interests being junior lienholders Rooster and AEIL, each of whom consent.

16.     Overall, I believe in the exercise of my business judgement that the proposed settlement is fair, equitable, and adequate under the circumstances to realize the value of the estate's potential disgorgement action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 26, 2025
In Manhattan Beach, California

By:  /s/ *Lance E. Miller*
        Lance E. Miller

No. 1:24-cv-01455-KES-SAB
**AMENDED DECLARATION OF LANCE MILLER**

303889340