Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:    (312) 902-5200
Facsimile:    (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:    (214) 765-3600
Facsimile:    (214) 765-3602

Arlen P. Moradi (SBN 353956)
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067-5010
Telephone:    (310) 778-4449

*Attorneys for the Receiver* Lance Miller

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC, <br><br> Defendants. | No. 1:24-cv-01455-KES-SAB <br><br> **NOTICE OF MOTION AND AGREED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER AUTHORIZING THE PRIVATE SALE OF CERTAIN RECEIVERSHIP PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES (GARDNER)** <br><br> Hearing Date:   July 6, 2026 <br> Hearing Time:  1:30p.m. PT <br><br> Objections Due: June 15, 2026 <br><br> Location:    Robert E. Coyle U.S. Courthouse <br> Courtroom 6, 7th Floor <br> 2500 Tulare Street <br> Fresno, CA 93721 <br><br> Judge:      Hon. Kirk E. Sherriff <br><br> Action Filed:   November 27, 2024 |

305403001v1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT,** on **July 6, 2026, at 1:30 p.m. Prevailing Pacific Time** or as soon thereafter as the matter may be heard in Courtroom 6, located at the United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Lance Miller, solely in his capacity as Court-appointed receiver (the "**Receiver**"), will and hereby does move the Court for entry of an order authorizing and approving the Receiver's private sale of certain Property (as defined in the Motion) to Western Natural Resources, LLC or its assign ("**Buyer**") free and clear of all liens, claims, and encumbrances, other than easements, rights of way, and other encumbrances running with the land (collectively, the "**Interests**"), to the fullest extent permitted by law, with such Interests attaching to the proceeds of the sale with the same force and in the same priority as existed immediately prior to the sale closing and granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** the Motion is based on the *Memorandum of Points and Authorities* below and is supported by the *Declaration of Lance Miller* (the "**Miller Declaration**") a copy of which is attached hereto as **Exhibit A**, the *Stipulation and Agreed Order to Waive Provisions of 28 U.S.C. §§ 2001 and 2002 in Connection with Receiver's Proposed Sale of Certain Real Property* signed by the parties listed below and filed concurrently herewith, other files and records in this action, and any other evidence or argument the Court may consider.

**PLEASE TAKE FURTHER NOTICE THAT** this Motion is made following the conference of counsel pursuant to the Local Rules which took place on or about August 20, 2025, with:

- Steve Gruendel and Zachary Smith of Moore & Van Allen PLLC on behalf of Federal Agricultural Mortgage Corporation ("**FAMC**"), Plaintiff and the first lien holder on the Property;

- Riley Walter and Ian Quinn of Wagner Jones Helsey PC on behalf of the Farming Defendants, including the record owners of the Property subject to the Motion (the "**Owner/Defendants**");

---

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

305403001v1

- Bernie Kornberg of Miller Nash LLP on behalf of Rooster Capital IV, LLC ("**Rooster**"), the second-lien holder on the Property; and

- Richard Pachulski and Ira Kharasch of Pachulski Stang Ziehl & Jones LLP on behalf of American Equity Investment Life Insurance Company ("**AEIL**"), the third-lien holder on the Property.

**Each of the above parties supports the Motion and does not request a hearing on the Motion.**

Dated: June 1, 2026

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:      /s/ *Arlen P. Moradi*
Arlen P. Moradi

*Attorneys for the Receiver*
Lance Miller

No. 1:24-cv-01455-KES-SAB
**NOTICE OF MOTION AND MOTION**

305403001v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Lance Miller (the "**Receiver**"), solely in his capacity as Court-appointed receiver in the above-captioned case (the "**Case**"), hereby requests that the Court enter an order: (i) authorizing and approving the Receiver's private sale of certain Property (defined below) to Western Natural Resources, LLC or its assignee ("**Buyer**") free and clear of all liens, claims, and encumbrances, other than easements, rights of way, and other encumbrances running with the land (collectively, the "**Interests**"), to the fullest extent permitted by law, with such Interests attaching to the proceeds of the sale with the same force and in the same priority as existed immediately prior to the sale closing and granting related relief, including authorizing the distribution of sale proceeds at closing. The relief requested herein is supported by the Receiver, the Defendant record owners of the Property (the "**Owner/Defendants**"), and the first, second, and third lienholders on the Property. The Receiver believes, in the exercise of his business judgment, that these facts, and the facts, authorities, and arguments presented herein, justify the private sale of the Property to Buyer.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A. The Receivership Case

On November 27, 2024, Plaintiff Federal Agricultural Mortgage Corporation ("**FAMC**") filed a *Complaint for Breach of Contract, Appointment of Receiver, Accounting and Specific Performance of Rents and Profits Clause, and Injunctive Relief* [Dkt. No. 1] initiating the Case and an *Ex Parte Application Regarding Motion for Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 15].

On January 3, 2025, after the notice period passed without objection, the Court entered the *Order Appointing Receiver and for Preliminary Injunction* [Dkt. No. 29] (the "**Receivership Order**") appointing the Receiver as receiver over the Receivership Property (as defined in the Receivership Order). The scope of the Receiver's duties under the Receivership Order includes "to assess whether a sale of the Receivership Property would maximize value, and, following that assessment and if appropriate in the Receiver's reasonable judgment, implement an organized sale

305403001v1

process of the Receivership Property, whether in whole or part, with any sale of Receivership Property outside of the ordinary course of business subject to the Court's approval." Receivership Order ¶ 15.

## II.     Proposed Sale of the Property

### A.     The Property

The Receiver, with the assistance of Pearson Realty, began marketing the Property soon after his appointment.  Approximately three months ago, Buyer contacted Pearson Realty to state its interest in buying the Property and those parties began discussions. Those discussions were later extended to include Plaintiff, Rooster Capital IV, LLC ("**Rooster**"), the second lienholder on the Property, American Equity Investment Life Insurance Company ("**AEIL**"), the third lienholder on the Property, and the Owner/Defendants. Miller Decl. ¶ 4. After exchanging offers, on May 28, 2026, the Receiver and Buyer reached agreement for the sale and purchase of approximately 1,271,30 assessed acres of real property located in Kern County and associated interests (the "**Property**") for a purchase price of $4,000,000.00 (the "**Purchase Price**")**,** subject to the terms of the Purchase and Sale Agreement and Joint Escrow Instructions (the "**PSA**") attached hereto as **Exhibit B**. *Id*. ¶ 5. Included among the conditions precedent to the proposed transaction is that the Court approve a private sale of the Property to Buyer outside the confines of 28 U.S.C. §§ 2001 and 2002 and the *Order Granting Motion of Receiver Lance Miller for an Order Establishing Marketing Bid, and Auction Procedures for Broker-Marketed Properties* [Dkt. No. 83] (the "**Marketing Procedures Order**").[2] *Id.*

Buyer requested that the Receiver forego an auction process to shorten the sale period and obtain an expedited closing so that it may begin developing the Property. *Id.* ¶ 6. The Purchase Price is above listing price and indicative of Buyer's desire for an expedited closing. *Id.* ¶¶ 6- 7.  This is notable considering that the Property has been marketed for sale for over a year.

---

[2] As reflected in the Sale Stipulation filed concurrently herewith, the Parties each consent to an expedited private sale of the Property to Buyer outside the provisions of 28 U.S.C. §§ 2001 and 2002 and the Marketing Procedures Order.

305403001v1

As set forth in the *Stipulation and Agreed Order to Waive Provisions of 28 U.S.C. §§ 2001 and 2002 in Connection with Receiver's Proposed Sale of Certain Real Property* (filed concurrently herewith) (the "**Sale Stipulation**"), the Receiver, Owner/Defendants, and the first, second and third lienholders on the Property all believe Buyer's offer and the Purchase Price are favorable and the Receiver is not confident that he would receive a higher or better offer if the Property were placed in the auction process contemplated in the Marketing Procedures Order. *Id.* ¶ 6.

Moreover, based on preliminary title reports, the Receiver believes that the sale proceeds will be sufficient to pay in full, at closing, all taxes, assessments, and customary closing costs, as well as any liens held by parties other than FAMC, Rooster, and AEIL. The net proceeds of the sale are proposed to be distributed to the secured lenders in the order of their lien priority. Miller Decl. *Id.* ¶ 7.

Since the Receiver has determined that the terms of the proposed sale as set forth in the PSA are fair and reasonable, subjecting the Property to a public auction and jeopardizing the current offer would not be in the best interests of the receivership estate. Miller Decl. ¶ 8. Further, under these circumstances, the cost of obtaining three separate appraisals for the Property would be burdensome and subject the estate to unnecessary costs and delay, also jeopardizing the sale. *Id.* Accordingly, with the consent of the Parties, the Receiver respectfully requests that the Court authorize and approve the private sale of the Property in accordance with the PSA and with a determination that the purchase price for the Property constitutes reasonably equivalent and fair consideration.

## LEGAL STANDARD

### I.     This Court Has Broad Discretion to Grant the Motion

#### A.     The Proposed Sale is Fair, Reasonable, and in the Best Interests of the Receivership Estate

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). "The power of a district court to impose a receivership or grant other forms of ancillary relief . . . derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363,

305403001v1

1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *Hardy*, 803 F.2d at 1038. As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of a receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit has explained that:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also CFTC. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

Moreover, when specifically analyzing a proposed sale of property by a receiver, courts apply the highly deferential "business judgment" standard. *See, e.g., Golden Pacific Bancorp v. Fed. Deposit Ins. Corp.*, No. 95 Civ. 9281(NRB), 2002 WL 31875395, at *9 (S.D.N.Y. Dec. 26, 2002) *aff'd b*y 375 F.3d 196 (2d Cir. 2004). This standard is identical to the test courts use to analyze whether other fiduciaries, such as bankruptcy trustees, acted in accordance with their fiduciary duties. *See, e.g., In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (challenges to a

305403001v1

bankruptcy trustee's discretion when selling estate property are judged under the highly deferential business judgment test).

For the reasons described herein, ample cause exists to grant the Motion. The Receiver, with the consent of FAMC, the Owner/Defendants, and the second and third lienholders, has determined, in the exercise of his sound business judgment, that a sale of the Property pursuant to the PSA represents a market-based price and that the overall transaction is fair, reasonable, and in the best interests of the receivership estate. Miller Decl. ¶ 6. Moreover, marketing the Property not only risks the current sale, but is unlikely to result in a sales price meaningfully higher (if at all) than that approved by the Parties. *Id.* Accordingly, the Receiver requests that the Court approve the sale of the Property on the terms set forth in the PSA.

**B.     The Parties Have Agreed to Waive of the Provisions of 28 U.S.C. §§ 2001-2002**

"The [receivership] statute on its face vests the court with discretion in directing the terms and conditions of the public sale." *Keybank Nat'l Ass'n v. Perkins Rowe Assocs., LLC*, 2012 U.S. Dist. LEXIS 157828, *4 (M.D. La. Nov. 2, 2012); *see also United States v. Little*, 2008 U.S. Dist. LEXIS 93467, *4-5 (E.D. Cal. June 30, 2008) (finding that the "Court has broad discretion in setting the terms and conditions of a sale under 28 U.S.C. § 2001."); *United States v. Heasley*, 283 F.2d 422, 426 (8th Cir. 1960) (finding that in the context of 28 U.S.C. § 2001(b), "the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court . . ."); *United States v. Peters*, 777 F.2d 1294, 1298 n.6 (7th Cir. 1985) (noting that, as argued above, 28 U.S.C. § 2001(a) authorizes a court to direct the terms and conditions of the sale). And, while the court cannot unilaterally waive the requirements of §§ 2001 and 2002, the requirements can be waived by agreement of the parties. *See SEC v. Yin Nan Wang*, 2015 WL 12656907, at *3 (C.D. Cal. Aug. 25, 2015) (quoting *Huntington Nat. Bank v. Najero, Inc.*, 2014 WL 5473054, at *1 (E.D. Mich. Oct. 27, 2014)). Here, all parties with an interest in the Property will either be paid at closing or have consented to waiver of the statutory provisions, giving this Court sufficient grounds to waive the provisions of 28 U.S.C. §§ 2001 and 2002 and approve the private sale of the Property to Buyer. *See id.*; *see also* Sale Stipulation

305403001v1

## CONCLUSION

Based on the foregoing, the Receiver requests that this Court enter an order, substantially in the form of **Exhibit C** attached hereto, authorizing and approving the sale of the Property to Buyer in accordance with the terms of the PSA and the disbursement of funds at closing. The Receiver also requests such other and further relief to which he may be justly entitled.


Dated: June 1, 2026

Respectfully submitted by:

**KATTEN MUCHIN ROSENMAN LLP**


By: */s/ Arlen P. Moradi*
    Arlen P. Moradi

*Attorneys for the Receiver*
Lance Miller

No. 1:24-cv-01455-KES-SAB
NOTICE OF MOTION AND MOTION

305403001v1

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Ste. 1100, Los Angeles, CA 90067-5010. On June 1, 2026, I served the following document(s) described as:

**NOTICE OF MOTION AND AGREED MOTION OF RECEIVER LANCE MILLER FOR AN ORDER AUTHORIZING THE PRIVATE SALE OF CERTAIN RECEIVERSHIP PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES (GARDNER)**

as follows:

**[X]    BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed on **Exhibit 1** and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]    BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

ali.mojdehi@mgr-legal.com
Jsmcnutt@kerncounty.com
jon@cavalrei.com
degan@wilkefleury.com
storigiani@youngwooldridge.com
RStewart@pearsonrealty.com
kstewart@pearsonrealty.com
aferdinandi@pearsonrealty.com
DKevorkian@pearsonrealty.com
sgrosz@pearsonrealty.com
ckay@caagproperties.com
mindynili@gmail.com

OKatz@sheppardmullin.com
RSahyan@sheppardmullin.com
Robert.D.Lewis@t-mobile.com
kvote@wjhattorneys.com
kdodd@wjhattorneys.com
snb300@aol.com
llindenau@larsonlindenau.com
jdh@harrislawfirm.net
legal@goldenstatecleanenergy.com

**[X]    BY EXPEDITED MAIL (FedEx):** I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed on **Exhibit 1**. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]    BY PERSONAL SERVICE:** I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

10

305403001v1

**[X]    E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 1, 2026, at Los Angeles, California

*/s/Arlen P. Moradi*
Arlen P. Moradi

No. 1:24-cv-01455-KES-SAB
**NOTICE OF MOTION AND MOTION**

305403001v1

# EXHIBIT A

Terence G. Banich (SBN 212173)[1]
terence.banich@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661-3693
Telephone:     (312) 902-5200
Facsimile:     (312) 902-1061

John E. Mitchell (*pro hac vice*)
Michaela C. Crocker (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl St., Ste. 1100
Dallas, TX 75201-2591
Telephone:     (214) 765-3600
Facsimile:     (214) 765-3602

Arlen P. Moradi (SBN 353956)
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067-5010
Telephone:     (310) 778-4449

*Attorneys for the Receiver* Lance Miller

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; WILLOW AVENUE INVESTMENTS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC, <br><br> Defendants. | No. 1:24-cv-01455-KES-SAB <br><br> **DECLARATION OF LANCE MILLER** <br><br> Judge:     Hon. Kirk E. Sherriff <br><br> Action Filed: November 27, 2024 |

---

[1] Designated as counsel for service pursuant to L.R. 182(c)(1).

305403434

I, Lance E. Miller, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1.    I am over the age of eighteen, am under no disability, and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this Declaration.

2.    I submit this declaration in support of the *Agreed Motion of Receiver Lance Miller for an Order Authorizing the Private Sale of Certain Receivership Property Free and Clear of Liens, Claims, and Encumbrances, and Settlement of Claims in Connection Therewith (Gardner)* (the "**Motion**").

3.    I am the Founder and a Managing Director of Pivot Management Group, LLC ("**Pivot Group**"), a financial advisory and turnaround management firm with an office located at 1230 Rosecrans Avenue, Suite 530, Manhattan Beach, California 90266.  I have more than 19 years of experience in complex receiverships, workouts, restructurings, corporate and shareholder disputes, and distressed M&A processes. As an attorney and later as a partner in distressed advisory firms (including Pivot Group), I have provided services over a multitude of industries and markets to companies, creditors, equity holders, asset purchasers, receiverships, and creditors' trusts.

4.    I, with the assistance of Pearson Realty, began marketing the Property soon after my appointment.  Approximately three months ago, Buyer contacted Pearson Realty to state its interest in buying the Property and those parties began discussions. Those discussions were later extended to include Plaintiff, Rooster Capital IV, LLC ("**Rooster**"), the second lienholder on the Property, American Equity Investment Life Insurance Company ("**AEIL**"), the third lienholder on the Property, and the Owner/Defendants.

5.    After exchanging offers, on May 28, 2026, the Receiver and Buyer reached agreement for the sale and purchase of the Property (as defined in the Motion) for a purchase price of $4,000,000.00 (the "**Purchase Price**")**,** subject to the terms of the Purchase and Sale Agreement and Joint Escrow Instructions (the "**PSA**") attached to the Motion as Exhibit B. Included among the conditions precedent to the proposed transaction is that the Court approve a private sale of the Property to Buyer outside the confines of 28 U.S.C. §§ 2001 and 2002 and the *Order Granting*

*Motion of Receiver Lance Miller for an Order Establishing Marketing Bid, and Auction Procedures for Broker-Marketed Properties* [Dkt. No. 83] (the "**Marketing Procedures Order**").[2] *Id.*

6.    Buyer requested that the Receiver forego an auction process to shorten the sale period and obtain an expedited closing so that it may begin developing the Property. I believe that the Purchase Price, which is above the listing price, is market-based, favorable to the receivership estate, and is indicative of Buyer's necessity quickly close the sale. I do not believe the additional marketing or an auction process is likely to garner a higher or better offer for the Property.

7.    Based on preliminary title reports, I believe that the sale proceeds will be sufficient to pay in full, at closing, all taxes, assessments, and customary closing costs, as well as any liens held by parties other than FAMC, Rooster, and AEIL. The net proceeds of the sale are proposed to be distributed to the secured lenders in the order of their lien priority.

8.    Moreover, under these circumstances, I believe that the cost of obtaining three separate appraisals for the Property would be burdensome and subject the estate to unnecessary costs and delay, also jeopardizing the sale. Accordingly, with the consent of the Parties, I request that the Court authorize and approve the private sale of the Property in accordance with the PSA.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 1, 2026
In Manhattan Beach, California

By: /s/ *Lance E. Miller*
   Lance E. Miller

---

[2] As reflected in the Sale Stipulation filed concurrently herewith, the Parties each consent to an expedited private sale of the Property to Buyer outside the provisions of 28 U.S.C. §§ 2001 and 2002 and the Marketing Procedures Order.

3

305403434

# EXHIBIT B

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

**PURCHASE AND SALE AGREEMENT**
**AND**
**JOINT ESCROW INSTRUCTIONS**

This Purchase and Sale Agreement and Joint Escrow Instructions (the "**Agreement**") dated May 28, 2026, (the "**Buyer Effective Date**"), to be effective on the date when all parties have executed it and after entry of the Sale Order (defined below), which date shall be noted on the signature page hereto (the "**Effective Date**"), is made and entered into by and between (i) LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the *Order Appointing Receiver and for Preliminary Injunction* (as supplemented or amended, the "**Receivership Order**") entered in the case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et. al.*, Case No. 1:24-cv-01455-KES-SAB (the "**Proceeding**"), pending in the U.S. District Court for the Eastern District of California (the "**Court**") and (ii) WESTERN NATURAL RESOURCES, LLC, a Delaware limited liability company ("**Buyer**"). For convenience, Buyer and Seller are sometimes referred to herein collectively as the "**Parties**" and individually as a "**Party**." This Agreement is made with respect to the following facts and circumstances which the Parties affirm as true and accurate:

A.      Seller, solely in his capacity as Court-appointed receiver, has the exclusive possession and control of, and authority to sell (subject to entry of the Sale Order), that certain real property consisting of approximately 1,271.30 assessed acres of land, as more particularly described on **Exhibit A** attached hereto (collectively, the "**Land**").

B.      Buyer desires to purchase and Seller desires to sell the Land and other components of the Property (defined below) on the terms and subject to the conditions herein set forth.

C.      The transactions contemplated by this Agreement are subject to the approval of the Court and will be consummated only pursuant to an order of the Court entered in the Proceeding authorizing the transactions contemplated herein, substantially in the form attached hereto as **Exhibit B** ("**Sale Order**").

**NOW, THEREFORE**, in consideration of the foregoing, the parties hereto hereby covenant and agree as follows:

### 1.      Purchase and Sale

1.1      <u>Purchase and Sale of Property</u>. Subject to the terms and upon satisfaction or proper waiver of the conditions set forth herein, Seller hereby agrees to sell and convey to Buyer, and Buyer hereby agrees to purchase and acquire from Seller, the Property, which shall consist of the following and, when used herein, the term "**Property**" shall mean and include collectively all of the following solely to the extent it is Receivership Property (as defined in the Receivership Order):

(a)      The Land;

(b)      All structures, permanent plantings, trees, whether *fructus naturales* or *fructus industriales*, whether mature or immature, together with all trellises, wires, endposts, and stakes relating thereto, and other improvements located on the Land (collectively, the "**Improvements**"),

-1-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

together with all fixtures located on or attached to the Land or attached to the Improvements which are deemed real property under the law of the State of California (the "**Fixtures**"), including without limitation all roads, paved areas, implement covers, fences, gates, cattle guards, and all improvements and infrastructure; and all water tanks, wells, casings, pumps, gearheads, motors, engines, control panels, fuel storage, all Receivership Property that consists of utility poles and transmission lines (if any), water and irrigation system equipment and facilities, pivots, sprinklers, drip irrigation systems, hand lines, drainage system equipment and facilities, irrigation motors, pipelines, pressure systems, lift pumps, siphons, filtration equipment, water treatment equipment and apparatus, ditches, culverts, canals, ponds, all drainage pipelines, settlement and/or detention/retention ponds, lagoons, leech systems, borrow pits and equipment, all mainlines and drip lines, emitters, all spare and replacement parts, components and supplies located on the Land or that provides drainage, irrigation and/or water to the Land;

(c)    All rights and interests, if any, in and to all rights, rights of way, reversions, remainders, strips or gores, if any, between the Land and abutting properties, and any land lying in or under the bed of any street, alley, road or right-of way, abutting or adjacent to the Land, all covenants, conditions and restrictions, privileges, easements, servitudes, hereditaments, and appurtenances appurtenant to the Land, or otherwise used or useful to or of benefit to the use and enjoyment of the Land and/or providing any benefit with respect to access, ingress, egress, irrigation water, domestic water, electricity, gas, telephone, sewer or other utility service to the Land, whether or not of record (collectively, the "**Appurtenant Rights**");

(d)    All crops and farm products, whether *fructus naturales* or *fructus industriales* (emblements), for the **2026** crop year and thereafter generated by the Land (the "**Crops**"), if any;

(e)    All rights that are Receivership Property in and to all oil, gas, minerals, and other hydrocarbon substances, on or hereafter on or under the Land before or after extraction, if any (collectively, the "**Oil, Gas and Mineral Rights**");

(f)    All surface water rights, groundwater rights and other water rights or water credits appurtenant to the Land, which are Receivership Property, including riparian, littoral, appropriative, prescriptive, permitted, overlying, adjudicated and other rights, any and all shares of water stock or mutual water company stock appurtenant to the Land, all public agency water entitlements, credits, allocations, pumping rights or similar rights associated with or derived from the Property relative to groundwater as the result of any adjudications or other court or regulatory proceedings, or under any groundwater sustainability plan or similar plan associated with the Land, and all rights in any contracts for the sale of water generated from irrigation wells located on the Land, which is Receivership Property (collectively, "**Water Rights**"); and

(g)    Any licenses or other agreements material to the Property and operations thereon as listed on Schedule 1.1(g) that Buyer would like to have assigned to it at Closing; provided that (i) such licenses or agreements are Receivership Property assignable by Seller to Buyer without any liability or consideration and (ii) in the event that there are any licenses or agreements that are material but not Receivership Property, Seller will use commercially reasonable efforts to provide partial assignments where possible (and without any liability or consideration) and enter into other

-2-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

agreements or arrangements that are reasonably satisfactory to Buyer and approved by the Court, as necessary.

For clarity, all vehicles, trailers, rolling farm machinery and equipment are excluded and are not a part of the sale. Seller shall cause such items to be removed from the Property prior to the Closing.

1.2    <u>As-Is Condition of Property; Disclaimer of Warranties; Certain Disclosures</u>.

(a)    Buyer acknowledges that Seller is acting solely in his capacity as Court-appointed receiver and, consequently, has limited knowledge of the condition of the Property. **ACCORDINGLY, BUYER ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE PROPERTY "AS-IS", "WHERE-IS", AND "WITH ALL FAULTS AND DEFECTS" AS OF THE BUYER EFFECTIVE DATE AND CLOSING DATE, AND BUYER FURTHER ACKNOWLEDGES AND AGREES THAT SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL IMPLIED WARRANTIES CONCERNING THE CONDITION, VALUE AND QUALITY OF THE PROPERTY AND ANY PORTIONS THEREOF, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE. BUYER ACKNOWLEDGES THAT NO WARRANTY HAS ARISEN THROUGH TRADE, CUSTOM OR COURSE OF DEALING WITH SELLER. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT IT HAS HAD THE OPPORTUNITY TO INSPECT THE PROPERTY AND BUYER WILL RELY SOLELY ON ITS INVESTIGATION OF THE PROPERTY IN ITS ACQUISITION THEREOF. SELLER HAS NO OBLIGATION TO ALTER, REPAIR OR IMPROVE THE PROPERTY. BUYER REPRESENTS TO SELLER THAT BUYER WILL CONDUCT PRIOR TO CLOSING SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY.**

(b)    Buyer acknowledges and agrees that Buyer will not rely upon any (i) representations or warranties (oral or written) made by or purportedly on behalf of Seller, unless expressly set forth in this Agreement or documents executed by Seller at Closing, or any representations or warranties (oral or written) of any Lenders (as defined below) or (ii) documents or other information (oral or written) supplied by, or purportedly on behalf of, Seller, including Lenders. **BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY DOCUMENTS OR INFORMATION PROVIDED TO BUYER BY SELLER OR ON SELLER'S BEHALF HAVE BEEN OBTAINED FROM A VARIETY OF SOURCES, HAVE NOT BEEN INDEPENDENTLY INVESTIGATED OR VERIFIED BY SELLER, AND ARE NOT TO BE RELIED UPON BY BUYER IN ENTERING INTO THIS AGREEMENT OR PURCHASING THE PROPERTY. SELLER MAKES NO EXPRESS REPRESENTATIONS OR WARRANTIES AND DISCLAIMS ANY AND ALL IMPLIED WARRANTIES CONCERNING THE TRUTH, ACCURACY, AND COMPLETENESS OF ANY DOCUMENTS OR INFORMATION SUPPLIED TO BUYER BY SELLER OR ANYONE ACTING OR PURPORTING TO ACT ON SELLER'S BEHALF.**

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

(c)      **EXCEPT TO THE EXTENT EXPRESSLY PROVIDED IN THIS AGREEMENT OR DOCUMENTS EXECUTED BY SELLER AT CLOSING, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, CONCERNING ANY MATTERS INVOLVING THE PROPERTY. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER HEREBY AFFIRMATIVELY DISCLAIMS ANY EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES CONCERNING THE FOLLOWING MATTERS: (i) EXCEPT AS EXPRESSLY SET FORTH IN THE DEED, ANY MATTERS AFFECTING TITLE TO THE REAL PROPERTY INCLUDING THE EXISTENCE OR SUFFICIENCY OF LEGAL AND PHYSICAL ACCESS; (ii) THE COMPLIANCE OF THE PROPERTY OR ANY PORTION THEREOF, INCLUDING BUT NOT LIMITED TO IMPROVEMENTS, SOIL, GROUNDWATER AND SUBSURFACE GEOLOGY, WITH ANY AND ALL APPLICABLE FEDERAL, STATE, AND LOCAL LAWS, ORDINANCES, PERMITS, RULES, REGULATIONS, OR REQUIREMENTS, INCLUDING, BUT NOT LIMITED TO, ANY OF THE FOREGOING PERTAINING TO ENVIRONMENTAL PROTECTION, POLLUTION AND LAND USE; (iii) THE SUITABILITY OR APPROPRIATENESS OF THE PROPERTY OR ANY PORTION THEREOF FOR AGRICULTURAL USES OR FOR THE CONDUCT OF ANY USES OR ACTIVITIES THAT BUYER MAY CONTEMPLATE OR ELECT TO CONDUCT THEREON, OR THE AVAILABILITY OF WATER OR WATER RIGHTS ON OR BENEFITTING THE PROPERTY; (iv) THE PRESENCE OF ANY LATENT OR PATENT DEFECTS AFFECTING THE PROPERTY INCLUDING BUT NOT LIMITED TO IMPROVEMENTS, SOIL, GROUNDWATER AND SUBSURFACE GEOLOGY; AND (v) THE QUALITY OF CONSTRUCTION AND MATERIALS INCORPORATED INTO ANY IMPROVEMENTS LOCATED ON THE PROPERTY AND THE EXISTENCE, QUALITY, NATURE, ADEQUACY, OR CONDITION OF ANY UTILITIES SERVING THE PROPERTY.**

(d)      **BUYER, FOR ITSELF AND ITS HEIRS, SUCCESSORS AND ASSIGNS, AND ANYONE CLAIMING BY, THROUGH, OR UNDER BUYER, HEREBY EXPRESSLY (i) WAIVES ANY CLAIM AND CAUSE OF ACTION WHICH RELATE, REFER, PERTAIN TO, OR ARISE OUT OF ANY OF THE MATTERS DESCRIBED IN THIS SECTION 1.2, AND ANY FAILURE BY SELLER TO DISCLOSE INFORMATION TO BUYER CONCERNING THE PROPERTY (COLLECTIVELY, "SUCH CLAIMS") (REGARDLESS OF WHETHER SUCH CLAIMS ARE KNOWN OR DISCOVERABLE AS OF THE BUYER EFFECTIVE DATE OR THE CLOSING DATE) AND (ii) RELEASES SELLER FROM ANY AND ALL LIABILITY FROM ANY SUCH CLAIMS.**

With respect to the waivers and releases set forth herein and elsewhere in this Agreement, in each case relating to claims unknown to or unsuspected by Buyer, Buyer hereby acknowledges that such waivers and releases are being made after obtaining the advice of counsel and with full knowledge and understanding of the consequences and effects of such waivers and releases, and that such waivers and releases are made with the full knowledge, understanding and agreement that California Civil Code Section 1542 provides as follows, and that the protections afforded by said code section are hereby waived:

-4-

20039.002/Gardner PSA (ex)

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

_____
**Buyer's Initials**

For clarity, the waivers and releases provided in this Section 1.2 shall not include matters arising due to Seller's breach or default under this Agreement, or Seller's fraud or intentional misconduct.

   1.3 <u>Release</u>.  At the Closing, as a condition of Seller's obligation to convey the Property to Buyer, Buyer shall deliver to Seller and Federal Agricultural Mortgage Corporation ("**FAMC**"), Rooster Capital IV LLC ("**Rooster**"), and American Equity Investment Life Insurance Company (collectively with FAMC and Rooster, the "**Lenders**") a release (the "**Release**") in the form and content set forth on **Exhibit C.**

   1.4 <u>Not a Residential Purchase</u>.  Notwithstanding the existence of any residence upon the Land, any such residence is incidental to the Property and the parties acknowledge, understand, and agree that this Agreement is a commercial transaction and Buyer is not a homebuyer purchasing a dwelling or residence.  As a material inducement to Seller to sell the Property, Buyer represents and warrants:  (i) that it is purchasing the Property as a commercial transaction; (ii) that the existence of any residence is not a material consideration of its desire to purchase the Property; (iii) that nothing of value is being attributed to any such residence; and (iv) that Buyer does not intend to occupy any such residence as Buyer's residence.  To the fullest extent permitted by applicable law, Buyer waives any and all disclosures and requirements specific to the sale of any dwelling, home, or residence.

   1.5 <u>Bid Deposit</u>.  Within three (3) business days with Buyer's execution of this Agreement, Buyer shall deposit into a non-interest-bearing receiver account with Escrow Holder (as defined below) an amount equal to 10% of the Purchase Price (the "**Bid Deposit**") in immediately available, goods funds of the United States of America.  If the Court enters the Sale Order naming Buyer as the approved buyer of the Property and Closing occurs, the Bid Deposit shall be credited and applied toward payment of the cash consideration due at the Closing.

   **2.** **Escrow**.  Within three (3) business days following the Effective Date, Seller will deliver a fully executed counterpart of this Agreement to Old Republic Title Company, 77451 North Remington Avenue, Fresno, CA  93711 (Attention:  Allison Moore) who shall act as "**Escrow Holder**," in connection with an escrow to be established to complete the transaction contemplated by this Agreement (the "**Escrow**"). Escrow Holder shall send electronic notice to each of the Parties on the date of the opening of Escrow, together with writing instructions for the Bid Deposit.   The parties agree to execute any additional standard instructions reasonably required by Escrow Holder except for instructions that would excuse, release, or relieve Escrow Holder from theft of funds or

-5-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

any other criminal act, gross negligence, willful misconduct, violation of the standard of care with respect to its conduct, or breach of this Agreement on the part of Escrow Holder.

**3.** **Close of Escrow**. Provided all of the conditions to close of escrow set forth herein shall have been acknowledged as waived or satisfied by the Party benefitted by the subject condition, the close of escrow for the purchase and sale transaction provided for herein (the "**Closing**" or "**Close of Escrow**") shall occur on or before **5:00 p.m., Pacific Time, on a date which is no later than twenty-one (21) days following the date the Sale Order becomes final and non-appealable** (the "**Closing Date**") or such other date as agreed to by the Parties; provided that the Closing Date shall in no event occur later than the Outside Date (as set forth in Section 6.4).

3.1    Purchase Price. The Purchase Price of the Property ("**Purchase Price**") is **Four Million and 00/100ths Dollars ($4,000,000.00) United States currency**. The Purchase Price shall be payable as follows:

(a)    Notwithstanding any term or provision of this Agreement, Buyer hereby delivers to Seller an amount equal to **One Hundred 00/100ths Dollars ($100.00)** from the Bid Deposit  (the "**Independent Consideration**") as independent consideration to Seller for having entered into this Agreement at any time subsequent to execution hereof.  The Independent Consideration shall be nonrefundable if Close of Escrow does not occur for any reason related to a Buyer default or termination under this Agreement, or due to a failure of a Buyer condition under Section 6.3, and to the extent that this Agreement requires any funds to be refunded to Buyer, any amount so refunded shall not include the Independent Consideration; provided, however, that the Independent Consideration shall be refunded to Buyer from Seller, as part of Buyer's damages, in the event of a Seller default under this Agreement.

(b)    [Reserved]

(c)    The balance of the Purchase Price (the **"Balance"**) shall be deposited by Buyer into Escrow prior to the Closing and paid to Seller in cash, by cashier's check or wire transfer of immediately available good funds, at the Close of Escrow.

**4.** **LIQUIDATED DAMAGES**. **NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT TO THE CONTRARY, IN THE EVENT THAT THE ESCROW FAILS TO CLOSE DUE TO A BREACH OF OR DEFAULT BY BUYER, AND BUYER FAILS TO CURE SUCH DEFAULT WITHIN TEN (10) BUSINESS DAYS OF RECEIVING WRITTEN NOTICE FROM SELLER OF THE SAME, OR, IF THE BREACH IS OF A NATURE THAT IT CANNOT BE REASONABLY CURED WITHIN TEN (10) BUSINESS DAYS, AND BUYER HAS DILIGENTLY COMMENCED SUCH CURE WITHIN SAID TEN (10) BUSINESS DAY PERIOD, BUYER SHALL HAVE SUCH ADDITIONAL TIME AS IS NECESSARY TO CURE THE BREACH BUT IN NO EVENT MORE THAN A TOTAL OF THIRTY (30) DAYS, THEN SELLER SHALL BE ENTITLED TO THE BID DEPOSIT SET FORTH IN SECTION 1.5 AS LIQUIDATED DAMAGES, AND NOT AS A PENALTY AND AS SELLER'S EXCLUSIVE REMEDY AGAINST BUYER AT LAW OR OTHERWISE FOR BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY.  THE PARTIES HERETO EXPRESSLY ACKNOWLEDGE AND AGREE THAT THE AMOUNT OF SELLER'S ACTUAL**

20039.002/Gardner PSA (ex)

DAMAGES IN THE EVENT OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY OR OTHER EVENT OF DEFAULT BY BUYER UNDER THIS AGREEMENT WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO ASCERTAIN, AND THE AMOUNT SET FORTH ABOVE AS LIQUIDATED DAMAGES HAS BEEN AGREED UPON BY SELLER AND BUYER AFTER SPECIFIC NEGOTIATION. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY. THE PARTIES AGREE THAT THE BID DEPOSIT AMOUNT SET FORTH IN SECTION 1.5 REPRESENTS A REASONABLE ESTIMATE OF THE ACTUAL DAMAGES WHICH SELLER WOULD INCUR IN THE CASE OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY. BY INITIALING THE SPACES WHICH FOLLOW, SELLER AND BUYER SPECIFICALLY AND EXPRESSLY AGREE TO ABIDE BY THE TERMS AND PROVISIONS OF THIS SECTION CONCERNING LIQUIDATED DAMAGES IN THE EVENT OF BUYER'S FAILURE TO CLOSE THE PURCHASE OF THE PROPERTY. FOR THE AVOIDANCE OF DOUBT, THE FOREGOING LIQUIDATED DAMAGES COVENANT SHALL NOT APPLY TO ANY BUYER INDEMNITY OF SELLER, OR ANY OTHER DEFAULT BY BUYER UNDER THIS AGREEMENT, OTHER THAN (I) THE FAILURE OF BUYER TO CLOSE THE PURCHASE OF THE PROPERTY IF REQUIRED HEREUNDER, OR (II) A DEFAULT WHICH PERMITS SELLER TO TERMINATE THIS AGREEMENT AND RETAIN THE DEPOSIT AS LIQUIDATED DAMAGES HEREUNDER.

ACKNOWLEDGMENT AS TO ACCEPTANCE OF THE IMMEDIATELY PRECEDING LIQUIDATED DAMAGES PROVISION



Seller                                               Buyer
Lance Miller, solely in his capacity
as Court-appointed Receiver

### 5.    Seller's Deliveries; Condition of Title.

5.1    Seller's Deliveries.  Seller will deliver to Buyer as soon as practical following the Buyer Effective Date, a Natural Hazards Disclosure Statement (the "**Natural Hazards Disclosure**") with respect to the Land.  Prior to the Close of Escrow, Buyer shall deliver to Seller through Escrow, documents evidencing and acknowledging receipt and acceptance of the Natural Hazards Disclosure and all other disclosures that are required in connection with the conveyance of the property, if any, in California. The written report prepared by the natural hazards disclosure company retained by Seller (the "**Natural Hazard Expert**") regarding the results of its full examination will fully and completely discharge Seller from its disclosure obligations referred to herein, if and to the extent any such obligations exist, and, for the purpose of this Agreement, the provisions of Civil Code Section 1102.4 regarding non-liability of Seller for errors or omissions not within its personal knowledge shall be deemed to apply and the Natural Hazard Expert shall be deemed to be an expert, dealing with matters within the scope of its expertise with respect to the examination and

-7-

written report regarding the natural hazards referred to above.  As used in this Agreement, "**Disclosure Statutes**" means, without limitation, collectively, California Government Code Sections 8589.3, 8589.4 and 51183.5, California Public Resources Code Sections 2621.9, 2694 and 4136, and any other California statutes that require Seller to make disclosures concerning the Property.  Buyer hereby agrees as follows with respect to the Disclosure Statutes and the Natural Hazards Disclosure, provided that the following will not apply if Seller delivers any inaccurate or untrue information to the Natural Hazard Expert:

(a)    Seller shall not be liable for any error or inaccuracy in, or omission from, the information in the Natural Hazards Disclosure.

(b)    The Natural Hazards Disclosure is being provided by Seller for purposes of complying with the Disclosure Statutes and shall not be deemed to constitute a representation or warranty by Seller as to the presence or absence in, at or around of the Property of the conditions that are the subject of the Disclosure Statutes.

5.2    Condition of Title. Seller agrees to convey fee simple title in and to the Property to Buyer.  Title shall be conveyed by Seller to Buyer by receiver's deed, using the form attached hereto as **Exhibit D** (the "**Deed**"), subject to the items enumerated in this Section.  Buyer shall accept title to the Property subject to the following exceptions:

(a)    any lien for current real property taxes, special taxes, special assessments, and water and other utility district taxes and assessments, if any, not yet due;

(b)    any lien for supplemental taxes and assessments resulting from the change in ownership created by the sale of the Property to Buyer;

(c)    easements, covenants, conditions, restrictions, defects, encumbrances, and other matters of record on the Buyer Effective Date, including all such covenants, conditions, restrictions, easements, and agreements affecting the Property which are Permitted Exceptions (as defined below), except to the extent Seller has agreed in writing or is otherwise required under this Agreement to terminate or remove;

(d)    physical matters and conditions, if any, that exist at the Property on the Buyer Effective Date and that would be disclosed by a current survey or inspection of the Property;

(e)    laws, regulations, or ordinances relating to zoning, environmental protection, subdivision, occupancy, use, construction, or development of the Property (but not any violations of any of the foregoing);

(f)    any matters or interests created or otherwise caused by Buyer or its agents, consultants, and representatives;

(g)    the printed standard exceptions listed in the Preliminary Report; and

(h)    such other matters as Buyer either waives, assumes, or consents to in writing, but expressly including the leasehold and other rights listed in Schedule 5.2(h).

-8-

5.3     No Liens.  The Property shall be sold and conveyed to Buyer free and clear of any and all financial liens, liabilities, obligations, encumbrances, or claims (except for any such liens, encumbrances, claims or interests set forth and described in Section 5.2 above), in each case whether or not of public record, effective upon the Closing. As directed by Buyer, Seller shall have caused or obtained, to Buyer's reasonable satisfaction, prior to the Closing, a release of all liens in and to the Crops, whether or not of public record, by any persons having an interest therein.

5.4     Buyer's Indemnification of Seller. Any damage caused to the Property in connection with Buyer's Inspection shall be promptly and fully repaired by Buyer and the Property returned to its condition prior to such damage, all at Buyer's sole cost and expense, which obligation shall survive any termination of this Agreement.  Buyer shall keep the Property free and clear of any mechanic's liens and materialmen's liens and all other liens and encumbrances arising out of any of Buyer's or Buyer's Agent's activities, which obligation shall survive any termination of this Agreement. Further, except for the discovery and remediation or repair of existing conditions on the Property (including, without limitation, the existence of hazardous or toxic materials not placed on the Property by Buyer or its agents or representatives) or to the extent arising from any Seller Party's (as defined below) gross negligence or willful misconduct, Buyer hereby agrees to indemnify, defend and hold Seller, Lenders, and Seller's and Lenders' respective beneficiaries, partners, affiliates, subsidiaries, principals, members, shareholders, agents, employees, professionals, successors, and assigns (together with Seller, collectively, the "**Seller Parties**"), harmless from and against any and all claims, actions, losses, costs, liabilities, obligations and expenses arising out of the acts or omissions of Buyer or Buyer's Agents in connection with any such entry, inspection, test, study or other activity, including without limitation all legal expenses reasonably incurred by Seller Parties in connection therewith.  The indemnity provided herein shall survive the Close of Escrow and any termination of this Agreement for a period of three (3) years.

5.5     SGMA Disclosure.    The Sustainable Groundwater Management Act ("**SGMA**") is a law enacted in the year 2014.  SGMA may limit the amount of well water that may be pumped from underground aquifers.  Applicable rules and regulations are in place implementing SGMA.  Seller and its agents and representatives make no representation on water rights or the effect of SGMA on the Property now or in the future.  Buyer has been advised to consult an expert on water rights and SGMA to determine the effect of SGMA on the Property now and in the future.  In making the decision to purchase the Property, Buyer is not relying upon any statement, representation, or warranty of Seller (or any other Seller Party), but rather, Buyer is relying upon Buyer's own independent investigation and analysis of water rights and SGMA in regards to the Property.  Upon Closing, Buyer assumes the risk of implementation of SGMA on the Property.  Buyer releases Seller and all other Seller Parties, from any liability, known or unknown, arising from the implementation of SGMA in regards to the Property.

6.     **Conditions Precedent; Termination**.

6.1     Conditions to Obligations of all Parties. The obligation of each Party to consummate the transactions contemplated by this Agreement at Closing is subject to the fulfillment on or prior to the Closing of the following conditions:

(a)     the Court shall have entered the Sale Order substantially in the form set forth in Exhibit B, and such order shall be in full force and effect and shall not have been stayed

-9-

or vacated, and any applicable appeal period thereafter having lawfully expired, with no appeal having been filed with respect thereto. The Sale Order shall be deemed obtained prior to the lapse of the appeals period if the Court approves this Agreement, the sale of the Property pursuant to the terms of this Agreement, and Closing by Seller upon a motion joined in, or their approval stipulated to the Court as agreed to, by Owner, Lenders, and all parties of interest in the Action, and Title Company agrees to insure title to the Property without taking exception to the appeals period or any potential appeal that could be filed during such period. Buyer acknowledges and confirms that neither Seller nor any of Lenders has made any representations or warranties, express or implied, that the Sale Order will be obtained. Promptly upon obtaining the Sale Order, Seller shall deliver a copy of the Sale Order to Buyer and Escrow Holder. If: (i) the Court denies approval of this Agreement, or if the Court does not approve the sale to Buyer pursuant to this Agreement through no fault of the Buyer within three (3) months after the Buyer Effective Date, (ii) the Sale Order is overturned in an appeal through no fault of Buyer, (iii) Seller designates another bidder as the successful bidder at Auction (if an Auction is held) and either (x) Seller does not designate Buyer as the back-up bidder at the conclusion of the Auction, or (y) an Alternative Sale Closing (as defined below) occurs, this Agreement shall be terminated, the Bid Deposit shall be delivered to Buyer and neither party shall have any further rights or obligations hereunder except with respect to the provisions hereof which specifically survive termination; and

(b)     no injunction or stay pursuant to Bankruptcy Code Section 362 by any court or other tribunal of competent jurisdiction shall have been entered and shall continue to be in effect and no law shall have been adopted that remains in effect or be effective, in each case, that prevents, enjoins, prohibits, or makes illegal the consummation of the transactions contemplated by this Agreement.

6.2     <u>Seller's Conditions Precedent</u>.  Seller's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

(a)     Buyer shall have performed each of the acts to be performed by it pursuant to this Agreement, including without limitation, depositing the Bid Deposit, and the Buyer's share of the Closing Costs (as defined in <u>Section 12</u> below) and Prorations (as defined in <u>Section 13</u> below) into the Escrow by the Closing Date.

(b)     Each of Buyer's representations and warranties set forth in <u>Section 8</u> hereof shall be true and correct at the Close of Escrow as if affirmatively made at that time.

The foregoing conditions are solely for the benefit of Seller, any or all of which may be waived by Seller in his sole discretion.

6.3     <u>Buyer's Conditions Precedent</u>.  Buyer's obligation to perform as set forth in this Agreement is hereby expressly conditioned on satisfaction of each and every one of the following conditions precedent:

(a)     Seller shall have performed every act to be performed by it pursuant to this Agreement, including without limitation, depositing into the Escrow the Deed.

-10-

20039.002/Gardner PSA (ex)

(b)    Except as listed in Schedule 5.2(h), Seller shall have terminated any and all existing leases on the Property and provided Buyer with satisfactory written evidence of the same, in each case solely to the extent such leases are Receivership Property and terminable under applicable law without damages.

(c)    Each of the representations and warranties of Seller contained in Section 7 or elsewhere in this Agreement shall be true and correct at the Close of Escrow as if affirmatively made at that time.

(d)    Title Company shall be unconditionally committed (other than payment of the title insurance premium) to issue the Title Policy to Buyer upon Closing, in the full amount of the Purchase Price, in the condition set forth in Section 5.2 above.

The foregoing conditions are solely for the benefit of Buyer, any or all of which may be waived by Buyer in Buyer's sole discretion.

6.4    Termination.  This Agreement may be terminated in accordance with this Section 6.4 at any time prior to the Closing:

(a)    By written notice of either Buyer or Seller if the Closing shall not have occurred on or before thirty (30) days after the Sale Order becomes a final, non-appealable order, unless otherwise agreed to by Buyer and Seller in writing (such date, the "**Outside Date**") and the Party seeking to terminate this Agreement has not breached this Agreement in a manner that has been the principal cause of the Closing not occurring on or prior to the Outside Date; provided, however, that the Outside Date may be extended by Seller and Buyer upon mutual agreement;

(b)    By written notice of either Buyer or Seller if an order by a governmental authority of competent jurisdiction shall have been issued permanently restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby and such order shall have become final and nonappealable; provided that the right to terminate this Agreement pursuant to this Section 6.4(b) shall not be available to a Party if such order resulted from, or could have been avoided but for, the breach by such Party of any covenant or other agreement of such Party set forth in this Agreement;

(c)    By written notice of either Buyer or Seller if Seller closes or consummates an alternative transaction for the Property (an "**Alternate Sale Closing**") or the Court enters an order approving such alternative transaction; provided that, if Buyer is not the successful bidder at the Auction, but is the back-up bidder (at Buyer's sole discretion), then notwithstanding anything to the contrary contained in this Agreement, Buyer shall not be permitted to terminate this Agreement pursuant to this Section 6.4(c) until after the Alternate Sale Closing;

(d)    By Buyer by giving written notice to Seller at any time prior to Closing (i) in the event there has been a material breach of or material inaccuracy in any representation or warranty made by Seller in this Agreement or if Seller has breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in Section 6.3 to be satisfied, and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

Outside Date and thirty (30) days after delivery by Buyer of written notice to Seller of such breach, or (ii) in the event that any condition set forth in <u>Section 6.3</u> shall become incapable of being satisfied by the Outside Date; provided that, Buyer's right to terminate this Agreement pursuant to this <u>Section 6.4(d)</u> will not be available to Buyer at any time that Buyer is in material breach of any covenant, representation or warranty hereunder;

(e)    by Seller by giving written notice to Buyer at any time prior to Closing (i) in the event there has been a breach of or inaccuracy in any representation or warranty made by Buyer in this Agreement or if Buyer has breached any covenant contained in this Agreement in any respect, which breach, inaccuracy or failure to perform (1) gives rise to a failure of the conditions set forth in <u>Section 6.2</u> to be satisfied and (2) (A) is not capable of being cured by the Outside Date or (B) if capable of being cured by the Outside Date, is not cured by the earlier of the Outside Date and thirty (30) days after delivery by Seller of written notice to Buyer of such breach, or (ii) in the event that any condition set forth in <u>Section 6.2</u> shall become incapable of being satisfied by the Outside Date; provided that, Seller's right to terminate this Agreement pursuant to this <u>Section 6.4(e)</u> will not be available to Seller at any time that Seller is in material breach of any covenant, representation or warranty hereunder; and

(f)    by Buyer (1) if the Sale Order (in form and substance required by this Agreement) is not entered by the Court through no fault of Buyer by the date that is ninety (90) days after the Buyer Effective Date or (2) prior to the designation of Buyer as the "Stalking Horse Bidder" pursuant to Section 6.5(b) below, if Seller or the Court elects to have or require the Auction for any reason; and.

(g)    by the mutual written consent of Seller and Buyer.

6.5    <u>Effect of Termination</u>

(a)    In the event of the termination of this Agreement as provided in <u>Section 6.4</u>, this Agreement shall forthwith become void and there shall be no liability on the part of either Party (except with respect to confidentiality, liquidated damages, obligations relating to indemnity, the return or disbursement of the Bid Deposit, and any rights or obligations that expressly survive the termination of this Agreement, each of which shall survive any termination); provided, however, that in the event this Agreement is terminated (x) pursuant to <u>Section 6.4(e)</u> and Seller is not then in material breach of Sellers' obligations hereunder, then Seller shall be entitled to retain the Bid Deposit and (y) for any reason other than pursuant to <u>Section 6.4(e)</u>, Buyer shall be entitled to return of the Bid Deposit notwithstanding any other provision to the contrary set forth in this Agreement. Notwithstanding the foregoing, nothing in this <u>Article 6</u> will be deemed to release any Party from liability for any willful breach of this Agreement prior to its termination pursuant to <u>Section 6.4</u>, willful misconduct, fraudulent, or criminal acts, the remedies for which shall not be limited by the provisions of this Agreement.

(b)    In the event Seller elects to hold an Auction for the Property (which Seller election must be made prior to entry of the Sale Order), and Buyer elects to participate in said Auction (which Buyer election shall be made within five (5) business days of notice from Seller that an Auction will be held), Seller shall file a notice with the Court designating Buyer as the "Stalking Horse Bidder" pursuant to the Marketing Procedures Order (as defined in <u>Section 16</u> below). In such

-12-

20039.002/Gardner PSA (ex)

event, and only if Buyer is designated the Stalking Horse Bidder, in consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation thereof, if this Agreement is terminated pursuant to Sections 6.4(c), and an Alternative Sale Closing occurs, Seller shall pay to Buyer a break-up fee in an amount equal to $80,000.00 (the "**Breakup Fee**"); provided that the Breakup Fee shall be payable concurrently with the consummation of, and only out of the cash proceeds of, an alternative transaction, to an account designated by Buyer in writing to Seller.

(c)    In the event of any breach by Seller of this Agreement, whether or not a willful breach, or any failure of the transaction contemplated by this Agreement to be consummated for whatever reason whatsoever, the sole and exclusive remedy of Buyer shall be to terminate this Agreement in accordance with Section 6.4 and, if applicable, to receive the Breakup Fee or return of the Bid Deposit in accordance with Section 6.5, if payable thereunder; provided that once the Sale Order approving this Agreement has been entered, so long as Seller is not entitled to terminate the Agreement under the provisions of Sections 6.4(a),(b),(c), or (e), Buyer may, as an alternative remedy and not as a cumulative remedy, seek an order to obtain specific performance of Seller's obligations under this Agreement from the Court.

(d)    Each of the Parties acknowledges and agrees that the agreements contained in this Section 6.5 are an integral part of this Agreement and that the Breakup Fee is not a penalty, but rather represents liquidated damages in a reasonable amount that will reasonably compensate Buyer in the circumstances in which such Breakup Fee is payable for the efforts and resources expended and opportunities foregone by Buyer while negotiating and pursuing this Agreement and in reasonable reliance on this Agreement and on the reasonable expectation of the consummation of the transactions contemplated herein, which amount would otherwise be impossible to calculate with precision.

## 7.    **Seller's Representations and Warranties**.

7.1    Seller's Representations and Warranties.  Except as set forth on Schedule 7.1, attached hereto, Seller hereby warrants, represents, covenants, and certifies to Buyer that:

(a)    Court-Appointed Receiver.  Seller is the Court-appointed receiver over the Receivership Property.

(b)    Authority.  Subject to entry of the Sale Order, this Agreement has been duly authorized, executed and delivered by Seller, is the legal, valid and binding obligation of Seller, and neither this Agreement nor compliance with or fulfillment of the terms and conditions hereof will conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default under, any agreement to which any Seller is a party or by which any Seller is otherwise bound, or any judicial order to which any Seller is a party or to which any Seller is subject.  All documents to be executed by Seller which are to be delivered at Closing, will, at the time of Closing, (i) be duly authorized, executed and delivered by such Seller, (ii) be legal, valid and binding obligations of such Seller, and (iii) not violate, to such Seller's knowledge, any provision of any agreement or judicial order to which such Seller is a party or to which such Seller is subject.

20039.002/Gardner PSA (ex)

(c)    OFAC Compliance.    Seller (which, for the purposes of this Section 7.1(c), shall include its partners, members, beneficial owners and affiliates) (i) has not been designated as a "specifically designated national and blocked person" on the most current list published by the Office of Foreign Asset Control of the U.S. Department of the Treasury ("**OFAC**") at its official website (http://www.treas.gov/ofac/t11sdn.pdf) or at any replacement website or other replacement official publication of such list (collectively, the "**List**"); (ii) is currently in compliance with and will at all times during the term of this Agreement (including any extension thereof) remain in compliance with the regulations of OFAC and any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto; and (iii) will not transfer or permit the transfer of any controlling interest in Seller to any person or entity who is, or any of whose beneficial owners are, listed on the List.

(d)    Foreign Person and Withholding.    Seller is not a "foreign person" within the meaning of Sections 1445(f)(3) and 7701(a)(3) of the Internal Revenue Code of 1986, as amended (the "**Code**"), and is not subject to any federal, state, or local withholding obligation of Buyer under the tax laws applicable to such Seller or the Property.    Seller will provide Buyer an Affidavit of Exemption pursuant to Section 1445(b)(c) of the Code, or provide Escrow Holder an Affidavit of non-foreign status under the Housing and Economic Recovery Act of 2008.    A Seller may be subject to withholding tax under California Revenue and Taxation Section 18662, and if so will submit California Form 593 as may be applicable to Buyer through Escrow Holder.

(e)    Organic Trees or Vines.    The Property may include one or more varieties of trees or vines that are organic and/or are the subject of plant royalties.    Seller makes no representations or warranties in this regard.

7.2    Survival.    The express representations and warranties made in this Article by Buyer or Seller will not merge into any instrument of conveyance delivered at the Closing; provided, however, that any action, suit or proceeding with respect to the truth, accuracy or completeness of any such representations and warranties shall be commenced, if at all, on or before the date which is three (3) months after the date of the Closing and, if not commenced on or before such date, thereafter will be void and of no force or effect.

**8.**    **Buyer's Representations and Warranties**.    Buyer hereby warrants, represents, convents and certifies to Seller and agrees that as of the Close of Escrow:

(a)    Good Standing.    Buyer is a limited liability company that is properly and duly formed, validly existing and in good standing under the laws of the Delaware and qualified to do business in the State of California.

(b)    Authority.    Buyer, and its Authorized Assignee(s) (defined below), acting through any of their respective duly empowered and authorized managers, members, partners or officers, as applicable, has all necessary entity power and authority to transact the business in which it is engaged, and has full power and authority to enter into this Agreement, to execute and deliver the documents and instruments required of Buyer herein, and to perform its obligations hereunder.    This Agreement has been duly authorized, executed and delivered by Buyer, is the legal, valid and binding obligation of Buyer, and, neither this Agreement nor compliance with or fulfillment of the terms and

-14-

20039.002/Gardner PSA (ex)

conditions hereof will conflict with, or result in a breach of, the terms, conditions or provisions of, or constitute a default under, any agreement to which Buyer is a party or by which Buyer is otherwise bound, or any judicial order to which Buyer is a party or to which Buyer is subject. All documents to be executed by Buyer which are to be delivered at Closing, will, at the time of Closing, (i) be duly authorized, executed and delivered by Buyer, (ii) be legal, valid and binding obligations of Buyer, and (iii) not violate, to the best of Buyer's knowledge, any provision of any agreement or judicial order to which Buyer is a party or to which Buyer is subject.

(c)    OFAC Compliance. Buyer or its Authorized Assignee (which, for the purposes of this Section 8(c), shall include its members, officers, and beneficial owners with a 50% or greater beneficial interest) (i) has not been designated as a "specifically designated national and blocked person" on the most current list published by the OFAC at its official website (http://www.treas.gov/ofac/t11sdn.pdf) or at any replacement website or other replacement official publication of such List; (ii) is currently in compliance with and will at all times during the term of this Agreement (including any extension thereof) remain in compliance with the regulations of OFAC and any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action relating thereto; and (iii) will not transfer or permit the transfer of any controlling interest in Buyer to any person or entity who is, or any of whose beneficial owners are, listed on the List.

(d)    Bankruptcy. Buyer has not (i) filed or been the subject of any filing of a petition under the U.S. bankruptcy code (11 U.S.C. § 101, et seq.) or any insolvency laws, or any laws for composition of indebtedness or for the reorganization of debtors; (ii) made a general assignment for the benefit of creditors, (iii) suffered the appointment of a receiver to take possession of all or substantially all of Buyer's assets, or (iv) suffered the attachment or other judicial seizure of all or substantially all of Buyer's assets.

(e)    Debts, Liens, and Encumbrance. Buyer shall pay, when due, any claims, liabilities, debts, injuries, liens or other encumbrances, and any consultant or other expense contracted for or incurred by Buyer incurred or arising before the Close of Escrow or the earlier termination of this Agreement that relate in any manner to any of Buyer's activities relating to the Property prior to the Closing (collectively, "**Claims**") and shall indemnify, defend and hold Seller, the Seller Parties, and the Property harmless from any Claims relating thereto.

(f)    No Collusion. Buyer represents and warrants that it has not engaged in any collusion with respect to its bid on the Property and the transaction contemplated hereunder.

9.    **No Cultural Cost Reimbursement**. There is no active farming of the property, and as such there will be no reimbursement for cultural costs at the Closing.

10.    **Closing**.

10.1    Closing Date. Closing shall evidence Buyer's and Seller's satisfaction of their respective Closing obligations, as set forth herein. Closing shall occur on or before the Closing Date. Closing shall be conditioned upon:

-15-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

(a)　Full Performance.　Seller and Buyer shall have performed all of their respective obligations under this Agreement unless waived in writing by the other Party.

(b)　Conditions.　The conditions precedent set forth in Section 6.1, 6.2, and 6.3 have been satisfied or waived by the Party for whose benefit the condition exists.

(c)　Title Policies.　Title Company shall be irrevocably committed (subject only to the payment of the applicable premium) to issue upon the Closing and following recordation of the Deed to Buyer, a current Owner's CLTA Standard Coverage Policy of title insurance (or ALTA Extended Coverage Policy, if Buyer shall elect to obtain an ALTA Survey), at no more than the insurer's standard rates ("**Buyer's Title Policy"**).　Buyer's Title Policy shall show title to the Land, Improvements and appurtenant easements vested in Buyer, subject only to the lien of real property taxes for the current fiscal year not yet due and payable, those Schedule B exceptions listed in the title commitment for the Buyer's Title Policy (except to the extent Seller and/or Escrow Holder has agreed in writing to remove), and the following exceptions (the "**Permitted Exceptions**"): Schedule B Exceptions 1, 3 – 45, 48, and 49, all as shown in that certain Preliminary Report, title order number 1421004168-DB, Fourth Amended Report, dated May 5, 2026, issued by Old Republic Title Company (the "**Preliminary Repor**t").　The premium for such title policy shall be paid as required under Section 12.　Buyer shall be entitled to request and obtain title endorsements, in Buyer's sole discretion and at Buyer's expense

(d)　Delivery.　Possession of the Property shall be delivered to Buyer at the time of the Closing free of all leases, contracts, occupancy agreements, tenancies, licenses, use agreements or otherwise, except as may be included within the Permitted Exceptions, if applicable, or to the extent such items are not Receivership Property.

10.2　Seller's Closing Obligations.　On or before the Closing Date, Seller shall deposit or cause the following to be deposited into Escrow (duly executed, as appropriate), for recordation or delivery to Buyer as appropriate:

(a)　The Deed, executed by Seller.

(b)　If applicable, a bill of sale for the Crops in substantially the form attached hereto as **Exhibit E** (the "**Bill of Sale**").

(c)　To the extent required, duplicate counterparts of an assignment and assumption agreement (the "**Assignment Agreement**"), in substantially the form attached hereto as **Exhibit F,** with respect to any contracts, licenses or other agreements material to the Property and operations thereon that are Receivership Property and that Buyer informs the Seller in writing that Buyer would like to have assigned to it at Closing (to the extent that Seller can transfer or assign such licenses or agreements to Buyer without breach or liability).

(d)　The Closing Statement (as defined below) executed by Seller.

(e)　To the extent they are then in Seller's possession, comprise Receivership Property, and not posted at the Property, any licenses or permits issued for or with respect to the Property by governmental and quasi-governmental authorities having jurisdiction.

-16-

(f)     Seller's certification to the effect that it is not a "foreign person," as such term is defined in Section 1445 of the Internal Revenue Code of 1986, or evidence that any taxes due have been paid or otherwise provided for, using Escrow Holder's standard form.

(g)     Seller's California Form 593,.

(h)     Seller's IRS Form 1099-S if required by Escrow.

(i)     All keys, codes and combinations for locks, safes or security devices under Seller's control located on the Property, if any.

(j)     Such other documents, resolutions, consents, and affidavits reasonably necessary or advisable to effect the valid consummation of the transaction evidenced by this Agreement.

(k)     A copy of the Sale Order entered by the Court.

10.3     <u>Buyer's Closing Obligations</u>.     On or before the Closing, Buyer or its Authorized Assignee shall deposit or cause the following to be deposited into Escrow (duly executed as appropriate) for recordation or delivery to Seller, as appropriate:

(a)     The Balance of the Purchase Price and Buyer's share of the Closing Costs and Prorations.

(b)     Evidence reasonably acceptable to Seller that the documents delivered to Seller by Buyer or its Authorized Assignee have been duly authorized by Buyer or its Authorized Assignee, duly executed on behalf of Buyer or its Authorized Assignee and when delivered constitute valid and binding obligations of Buyer or its Authorized Assignee.

(c)     A Preliminary Change of Ownership Report in the form specified by Kern County (the "**PCOR**").

(d)     To the extent required, duplicate counterparts of the Assignment Agreement.

(e)     The Closing Statement (as defined below) executed by Buyer.

(f)     Such other documents, resolutions, consents, and affidavits reasonably necessary or advisable to effect the valid consummation of the transaction evidenced by this Agreement.

10.4     **Escrow Holder Closing Obligations.**     The Escrow Holder shall close escrow on or before the Closing Date (i) if it has received all of the items to be deposited by Seller pursuant to <u>Section 10.2</u>, and all of the items to be deposited by Buyer pursuant to <u>Section 10.3</u>, and (ii) the Title Company is prepared to issue Buyer's Title Policy in the condition required in <u>Section 10.1(c)</u> above.  The Escrow Holder shall close escrow by:

-17-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

(a)      Recording the Deed in the Official Records of Kern County), California, and return the recorded Deed to Buyer with a conformed copy to Seller and file the PCOR in Kern County, California;

(b)      Issuing the Buyer's Title Policy effective upon Closing with a copy thereof to be delivered to Buyer(within fifteen (15) days after the Closing);

(c)      Delivering to Seller the proceeds due Seller from the Purchase Price, after deducting Seller's share of Closing Costs, and adjusting for Prorations;

(d)      Delivering to Buyer, Seller's certification that it is not a "foreign person;"

(e)      Delivering to Buyer the items deposited into Escrow by Seller for delivery to Buyer, including the Bill of Sale;

(f)      If applicable, delivering to each of Buyer and Seller, a fully executed counterpart of the Assignment Agreement; and

(g)      Delivering to Seller the items deposited into Escrow by Buyer for delivery to Seller.

11.      **Like-Kind Exchange**.  Each Party agrees to cooperate, in all reasonable respects, relating to any 1031 exchange requested by the other Party; provided that (i) such cooperation is at no cost, expense, or liability to the non-exchanging Party and (ii) that the Closing is not delayed as a result thereof.

12.      **Closing Costs**.  All closing costs incurred in connection with closing the Escrow (the "**Closing Costs**") shall be paid as follows:

(a)      Buyer and Seller shall pay their respective:  (i) legal fees and expenses, and (ii) share of Prorations as provided in the Closing Statement.

(b)      Seller shall pay (i) all documentary transfer taxes, sales taxes and transfer taxes applicable to the sale, (ii) the title search costs and premium for a CLTA Standard Owner's Policy of Title Insurance and (ii) one-half of the escrow fees and the cost of recording and filing of any instrument to be recorded or filed as provided herein

(c)      Buyer shall pay (i) one-half of the escrow fees, (ii) one-half of the cost of recording and filing of any instrument to be recorded or filed as provided herein, (iii) the premium for Buyer's Title Policy in excess of the premium for a CLTA Standard Owner's Policy of Title Insurance, and any endorsements requested by Buyer, and (iv) the costs of any new or updated ALTA site survey, if elected by Buyer.

(d)      Escrow Holder shall prepare a closing statement in form and content satisfactory to Buyer and Seller with respect to the transaction contemplated by this Agreement and deliver the same to Buyer and Seller within ten (10) days prior to the Close of Escrow for their approval

in writing (provided each will provide Escrow Holder with the information necessary to prepare such closing statement) ("**Closing Statement**").

13.    **Prorations**.  Except to the extent included in Cultural Cost Reimbursement, the following are to be paid by Buyer or Seller or prorated and apportioned on the Closing (the "**Prorations**"):

13.1    Utility Charges.  The Parties agree that utility and water charges (other than assessments collected with real property assessments by the county tax assessor) shall not be prorated in Escrow.  Except as expressly noted herein, Seller shall be liable for all such charges incurred prior to the Closing and Buyer shall be liable for all such charges incurred after the Closing.

13.2    Other Apportionments.  Liability for real property taxes and assessments and water district or water company assessments if any, shall be prorated at and as of the Close of Escrow using the latest bills or assessments.  Rent or income under all residential leases, and hunting and mineral leases, if any, shall be prorated as of the Close of Escrow.  Such prorations and apportionments shall be made in the manner customary in the County in which the Land is located for the sale of agricultural land; provided however, that:

(a)    Buyer shall be responsible for  (and shall receive upon Closing the water attributable to) all 2026 Wheeler Ridge-Maricopa Water Storage District assessments, except those which are the responsibility of any tenant under any agricultural lease, and shall reimburse Seller at the Closing for any amounts paid with respect thereto prior to the Closing; and

(b)    Upon receipt of the annual 2025 water year financial accounting from Wheeler Ridge-Maricopa Water Storage District with respect to the Property, Buyer shall within fifteen (15) days of receipt thereof, provide a copy of such accounting to Seller.  If the accounting shows a overpayment, Buyer shall remit the amount of such overpayment to Seller, together with the accounting.  If the accounting shows an amount due, Seller shall remit to such amount to Wheeler Ridge-Maricopa Water Storage District within fifteen (15) days of receipt of the accounting, and provide Buyer will evidence of payment thereof.

13.3    Survival.  The provisions of this Section 13 shall survive the Closing; provided, however, that all claims for improper proration or adjustment under this Section 13 must be made in writing to the other Party within six months after the Closing Date.

14.    **Risk of Loss**.  Risk of physical loss to the Property shall be borne by Buyer from and after the date that Buyer receives title and possession thereof.  In the event of the loss or destruction of a material part of the Property prior to the Closing, from a cause other than the intentional act or omission or gross negligence of Buyer then, at Buyer's sole option, and upon Buyer's written notice to Seller within ten (10) business days of Buyer's receipt of notification of such loss, both Parties may be relieved of their obligations and this Agreement shall be deemed void and without further effect, and the Bid Deposit shall be returned to Buyer, unless Seller shall restore the lost or destroyed portion of the Property, within thirty (30) days of receipt of notice and has fully paid all costs thereof and cleared any potential liens associated therewith or Buyer and Seller agree to reduce the Purchase Price by the value of the lost or destroyed portion of the Property.

-19-

20039.002/Gardner PSA (ex)

15.    **Assignment**.  Buyer may assign to an entity owned or controlled by, or under common control with, Buyer, any or all of its rights and obligations under this Agreement, including the right to purchase the Property, by giving Seller notice of such assignment at least seven (7) days prior to the Close of Escrow, containing the name of the assignee ("**Authorized Assignee**") and the portion of the Property to be acquired by such Authorized Assignee, provided that Buyer shall not be released from any liability under this Agreement.  Any other proposed assignment shall require the written consent of Seller, which may be withheld at his sole discretion.  Each Authorized Assignee, along with Buyer, shall be obligated jointly and severally to fulfill all of Buyer's duties and obligations under this Agreement with respect to the portion of the property to be purchased by such Authorized Assignee and the warranties and representations of Buyer shall be the warranties and representations of the Authorized Assignee.

16.    **Receivership Matters.** Seller and Buyer acknowledge that this Agreement and the sale of the Property are subject to Court approval and the consideration by Seller of alternative bids (if any). Seller and Buyer acknowledge that to obtain such approval, Seller must demonstrate that he has taken reasonable steps to obtain the highest or otherwise best offer possible for the Property, including giving notice of the transactions contemplated hereby to creditors and certain other interested parties as ordered by the Court, and if there are additional offers to purchase the Property conducting an auction in respect of the Property (the "**Auction**") pursuant to the *Order Granting Motion of Receiver Lance Miller for an Order Establishing Marketing, Bid, and Auction Procedures for Broker-Marketed Properties* [Dkt. No. 83] (the "**Marketing Procedures Order**"). Seller and Buyer shall use commercially reasonable efforts to cooperate, assist, and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement.

17.    **Backup Bidder**. If an Auction is conducted, and Buyer has elected to participate in the Auction as the Stalking Horse Bidder, and Seller does not choose Buyer as the successful bidder, but instead chooses Buyer as the back-up bidder in accordance with the Marketing Procedures Order, Buyer will serve as the back-up bidder.  If Buyer is so chosen as the back-up bidder, Buyer will be required to keep its bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to or at the Auction) open and irrevocable until the closing of the sale to the successful bidder. If an alternative transaction with the successful bidder is terminated prior to the termination of this Agreement, and Buyer is the back-up bidder, Buyer will be deemed to be the successful bidder and will forthwith consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to or at the Auction).

18.    **Brokers**.  Buyer and Seller each represent and warrant to the other that, except for Pearson Realty ("**Seller's Broker**") and Alliance Ag Service, Inc. (Georger Ming) ("**Buyer's Broker**"), neither has engaged the services of any other real estate broker, salesperson, agent or finder, nor has either done any other act nor made any statement, promise or undertaking which would result in the imposition of liability for the payment of any other real estate brokerage commission, finder's fee or other fee or commission in connection with the transaction described herein.  Seller shall be responsible for the payment of a commission or fee to Seller's Broker in accordance with its separate agreement therewith, and such commission  will be split with Buyer's Broker pursuant to a cooperating

agreement between the Seller's Broker and Buyer's Broker. Seller's Broker has the right to enter into a cooperating agreement with outside brokers to be paid a portion of Seller's Broker's commission. Except as provided herein above, if any person or entity perfects a claim for a brokerage commission, finder's fee or otherwise, based upon any such agreement, statement or act, the Party through whom such person or entity makes such claim shall be responsible therefor and shall defend, indemnify and hold the other Party and the Property harmless from and against such claim and all loss, cost and expense associated therewith, including attorney's fees.

19.     **Attorney's Fees; Pre-litigation Dispute Resolution**. Each Party shall pay the fees and expenses of its own attorneys in connection with the preparation, negotiation, and execution of this Agreement. In the event of any action between the Parties hereto for breach of or to enforce any provision or right hereunder, the unsuccessful Party in such action shall pay to the prevailing Party all costs and expenses expressly including, but not limited to, reasonable attorneys' fees and costs, including but not limited to expert fees, incurred by the prevailing Party in connection with such action. The Parties agree that before either institutes litigation against the other arising from this Agreement, it will make a good faith attempt to meet with the other Party first and attempt to resolve the dispute.

20.     **Notices**. All notices and demands which either Party is required or desires to give to the other shall be given in writing (i) by certified mail, return receipt requested with appropriate postage paid, (ii) by personal delivery or by private overnight courier service to the address set forth below for the respective Party, or (iii) by e-mail with an electronic confirmation of delivery; provided that if any Party gives notice of a change of name or address, notices to that Party shall thereafter be given as demanded in that notice. All notices and demands so given shall be effective upon receipt by the Party to whom notice or demand is being given, except that any notice given by certified mail shall be deemed delivered three (3) business days after deposit in the United States Mails, and any notice given by overnight courier shall be deemed delivered one (1) business day after delivery to the overnight courier.

| | |
|---|---|
| If to Buyer: | Western Natural Resources, LLC<br>4275 Executive Square #400<br>La Jolla, CA 92037<br>Attn: Vice President, Real Estate<br>Email: kwagner@terra-gen.com |
| With a copy to: | Reed Smith LLP<br>1901 Avenue of the Stars, Suite 700<br>Los Angeles, CA 90067<br>Attn: Stephane Nguyen<br>Email: snguyen@reedsmith.com |

-21-

If to Seller:                Lance Miller, Receiver
                             c/o Pivot Group
                             1230 Rosecrans Avenue
                             Suite 300 – PMB928
                             Manhattan Beach, CA 90266
                             Attn:  Lance Miller or Matt Covington
                             Telephone:     424-363-0599
                             Email:  lance.miller@pivotgrp.com and
                             matt.covington@pivotgrp.com

With a copy to:              Katten Muchin Rosenman LLP
                             2121 North Pearl Street, Suite 1100
                             Dallas, TX 75201-2591
                             Attn:  John Mitchell and Michaela Crocker
                             Telephone:     214-765-3600
                             Email:  john.mitchell@katten.com and
                             michaela.crocker@katten.com

And      Cutts Law, PC
         5088 N. Fruit Ave, Ste 101
         Fresno, CA 93711
         Attn:  Lisa A. Cutts
         Telephone:     559-226-8177
         Email: lac@cutts-law.com

21.     **Waivers**.  Any Party can waive a provision, condition or covenant contained in this Agreement, which is included herein for the benefit of the Party making such waiver.  Any such waiver shall be in writing and delivered to the other Party and the Escrow Holder.  No waiver by any Party of any covenant, condition or breach hereunder shall be deemed a waiver of any other subsequent covenant, condition, or breach.

22.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with California law without regard to conflict of laws principles.  The Court shall have exclusive jurisdiction over any legal action brought by any Party to interpret or enforce this Agreement. To the extent the Court declines jurisdiction, any legal action brought by any Party to interpret or enforce this Agreement shall be venued in the appropriate state or federal court sitting in the County of Kern, California.

23.     **Business Days**.  In the event that this Agreement calls for an act to be performed, or a notice to be given, on or by a specific date, which date falls on a Saturday, Sunday, or holiday (as defined in Section 6700 and 6701 of the California Government Code), then such act may be performed upon or such notice given on the next business day with the same effect as if it had been performed on the day appointed.  Any reference to "business days" herein shall mean those days other than Saturdays, Sundays, or holidays (as defined in Section 6700 and 6701 of the California Government Code).

-22-

20039.002/Gardner PSA (ex)

24.    **WAIVER OF JURY TRIAL**.  TO THE FULLEST EXTENT THAT IT MAY HEREAFTER BE PERMITTED BY LAW, THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY.  THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES (EACH A "DISPUTE", AND COLLECTIVELY, ANY OR ALL, THE "DISPUTES") OF ANY KIND WHATSOEVER THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, ANTITRUST CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON-LAW OR STATUTORY CLAIMS.  THE PARTIES FURTHER WARRANT AND REPRESENT TO ONE ANOTHER THAT IT HAS REVIEWED THIS WAIVER WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.

25.    **Entire Agreement**.  This Agreement constitutes the entire agreement between the Parties hereto with respect to the subject matter hereof and supersede all prior agreements between the Parties hereto with respect thereto.  This Agreement may not be altered, amended, changed, terminated, or modified in any respect or particular, unless the same shall be in writing and signed by the Party to be charged.

26.    **Pending Receivership**.  Buyer, on behalf of itself and its successors and assigns, acknowledges, and expressly agrees that Seller is entering into this Agreement solely in his capacity as Court-appointed receiver in the Proceeding and, as such, shall have no personal liability for any claims arising under or related to this Agreement, the Property, or otherwise.

27.    **Intentionally Deleted**.

28.    **Validity**.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but, if any provision of this Agreement shall be invalid or prohibited thereunder, such provision shall be effective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

29.    **Facsimile Electronic Signatures**.  For all documents to be executed by the Parties pursuant hereto, except documents to be recorded or where originals are otherwise required by either Party or Escrow Holder, Escrow Holder is instructed to accept, and the Parties agree to accept, (i) facsimile or electronic e-mail signatures of the signor if the signor or his representative has assured Escrow Holder and the other Party that the original has been placed in regular mail to the Escrow Holder, or (ii) DocuSign signatures of the signor.

30.    **Time**.  Time is of the essence of this Agreement.

31.    **Counterparts**.  This Agreement may be signed by the Parties in different counterparts and the signature pages combined to create a document binding on all Parties.

-23-

        **32.**      **Binding Offer**. Buyer agrees that, upon execution of this Agreement by Buyer only, this Agreement (as may be amended by written agreement of Seller and Buyer) shall be irrevocable for a period of 90 days or such other period as agreed to by the Parties in writing (the "**Irrevocable Period**"). If the Court enters a Sale Order approving this Agreement (as may be amended by written agreement of the Seller and Buyer), then a binding agreement of purchase and sale (without any conditions whatsoever for the benefit of the Buyer, including any conditions for review or approval by third party advisors of the Buyer, financial, planning, banking, legal or otherwise) comes into existence immediately upon the Seller's acceptance. Buyer acknowledges that this Section 32 obligates the Buyer to complete the purchase of the Property in accordance with the terms of this Agreement (as may be amended by written agreement of Seller and Buyer) upon Seller's acceptance. Notwithstanding the foregoing, the provisions of Section 14 of this Agreement shall apply during the Irrevocable Period in the event of a casualty or condemnation affecting the Property.

*SIGNATURES FOLLOW NEXT PAGE*

-24-

20039.002/Gardner PSA (ex)

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement effective as of the date first above written.

SELLER

_____
_Lance Miller_
LANCE MILLER, solely in his capacity as
Court-appointed Receiver

Date of Execution: ___5/28/2026_____

BUYER

WESTERN NATURAL RESOURCES, LLC,
a Delaware limited liability company

By: _____
_Gus Luna_
GUS LUNA
Senior Chief Marketing Officer


Date of Execution: ___5/28/2026_____


Effective Date:_____

-25-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

ACCEPTANCE BY ESCROW HOLDER

OLD REPUBLIC TITLE COMPANY, a California corporation, hereby acknowledges that it has received an executed counterpart of the foregoing Purchase and Sale Agreement and Joint Escrow Instructions and agrees to act as Escrow Holder thereunder, and to be bound by and perform the terms thereof as such terms apply to Escrow Holder.

OLD REPUBLIC TITLE COMPANY,
a California corporation

By: _____

Name: _____

Title: _____

Escrow Number: _____

Dated: _____

-26-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

EXHIBIT A

LEGAL DESCRIPTION OF THE LAND

The land situated in the County of Kern , State of California, and is described as follows:

PARCEL 1:

THE NORTHWEST QUARTER OF SECTION 30, TOWNSHIP 32 SOUTH, RANGE 25 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN AN UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL OIL AND GAS WITHIN OR UNDERLYING SAID LAND, AS PREVIOUSLY RESERVED OF RECORD.

APN: 220-170-01

PARCEL 2:

THE NORTHEAST QUARTER OF SECTION 30, TOWNSHIP 32 SOUTH, RANGE 25 EAST, M.D.B.&M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL RIGHT, TITLE AND INTEREST IN AND TO THE MINERAL RIGHTS IN THE PROPERTIES DESCRIBED HEREIN (EXPRESSLY EXCLUDING, HOWEVER, THE RIGHT TO USE THE SURFACE FOR OPEN PIT MINING, QUARRYING AND STRIP MINING), AND ALL RIGHTS, TITLE AND INTEREST IN ANY OTHER CONTRACT AGREEMENTS OR RIGHTS, TANGIBLE OR INTANGIBLE THAT ARE OWNED BY THE GRANTOR, IN WHOLE OR IN PART, AND THAT ARE RELATED TO THE OWNERSHIP AND USE OF THE MINERAL RIGHTS CONVEYED HEREBY, FROM THE LANDS.

SPECIFICALLY EXCEPTING THEREFROM ALL SURFACE RIGHTS (EXCEPT FOR THE RIGHTS OF SURFACE ACCESS FOR THE PURPOSE OF GRANTEE AND ITS ASSIGNS EXPLORING FOR, DEVELOPING, PRODUCING, TRANSPORTING AND SELLING MINERALS FROM THE PROPERTY AND WHICH ARE RECOGNIZED BY CALIFORNIA LAW, RULES, ORDER AND REGULATION), PERSONAL PROPERTY OR FIXTURES ASSOCIATED WITH, AFFIXED TO OR LOCATED UPON THE SURFACE, WELL BORES (IF ANY), WATER OR WATER RIGHTS OR ENTITLEMENTS (EXCEPT SUCH WATER AS MAY BE ASSOCIATED AND INCIDENTALLY PRODUCED WITH THE MINERALS FROM THE PROPERTY) OR ANY EXISTING OIL, GAS OR MINERAL PRODUCTION (IF ANY) FROM THE PROPERTY, AS GRANTED TO CALIFORNIA MINERALS, L.P., A TEXAS LIMITED PARTNERSHIP, IN DEED RECORDED DECEMBER 30, 1998 AS INSTRUMENT NO. 0198184684 OF OFFICIAL RECORDS.

APN: 220-170-02

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

PARCEL 3:

THE WEST HALF OF SECTION 29, TOWNSHIP 32 SOUTH, RANGE 25 EAST, M.D.B.M., IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING OF THE OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM ALL RIGHT, TITLE AND INTEREST IN AND TO THE MINERAL RIGHTS IN THE PROPERTIES DESCRIBED HEREIN (EXPRESSLY EXCLUDING, HOWEVER, THE RIGHT TO USE THE SURFACE FOR OPEN PIT MINING, QUARRYING AND STRIP MINING), AND ALL RIGHTS, TITLE AND INTEREST IN ANY OTHER CONTRACT AGREEMENTS OR RIGHTS, TANGIBLE OR INTANGIBLE THAT ARE OWNED BY THE GRANTOR, IN WHOLE OR IN PART, AND THAT ARE RELATED TO THE OWNERSHIP AND USE OF THE MINERAL RIGHTS CONVEYED HEREBY, FROM THE LANDS.

SPECIFICALLY EXCEPTING THEREFROM ALL SURFACE RIGHTS (EXCEPT FOR THE RIGHTS OF SURFACE ACCESS FOR THE PURPOSE OF GRANTEE AND ITS ASSIGNS EXPLORING FOR, DEVELOPING, PRODUCING, TRANSPORTING AND SELLING MINERALS FROM THE PROPERTY AND WHICH ARE RECOGNIZED BY CALIFORNIA LAW, RULES, ORDER AND REGULATION), PERSONAL PROPERTY OR FIXTURES ASSOCIATED WITH, AFFIXED TO OR LOCATED UPON THE SURFACE, WELL BORES (IF ANY), WATER OR WATER RIGHTS OR ENTITLEMENTS (EXCEPT SUCH WATER AS MAY BE ASSOCIATED AND INCIDENTALLY PRODUCED WITH THE MINERALS FROM THE PROPERTY) OR ANY EXISTING OIL, GAS OR MINERAL PRODUCTION (IF ANY) FROM THE PROPERTY, AS GRANTED TO CALIFORNIA MINERALS, L.P., A TEXAS LIMITED PARTNERSHIP, IN DEED RECORDED DECEMBER 30, 1998 AS INSTRUMENT NO. 0198184684 OF OFFICIAL RECORDS.

ALSO EXCEPTING ALL OIL, GAS AND OTHER HYDROCARBONS; NON-HYDROCARBON GASSES OR GASEOUS SUBSTANCES; ALL OTHER MINERALS OF WHATSOEVER NATURE, WITHOUT REGARD TO SIMILARITY TO THE ABOVE-MENTIONED SUBSTANCES; AND ALL SUBSTANCES THAT MAY BE PRODUCED THEREWITH FROM SAID REAL PROPERTY.

ALSO EXCEPTING ALL GEOTHERMAL RESOURCES, EMBRACING: INDIGENOUS STEAM, HOT WATER AND HOT BRINES; STEAM AND OTHER GASES, HOT WATER AND HOT BRINES RESULTING FROM WATER, GAS OR OTHER FLUIDS ARTIFICIALLY INTRODUCED INTO SUBSURFACE FORMATIONS; HEAT OR THE ASSOCIATED ENERGY FOUND BENEATH THE SURFACE OF THE EARTH; AND BY-PRODUCTS OF ANY OF THE FOREGOING SUCH AS MINERALS (EXCLUSIVE OF OIL OR HYDROCARBON GAS THAT CAN BE SEPARATELY PRODUCED) WHICH ARE FOUND IN SOLUTION OR ASSOCIATION WITH OR DERIVED FROM ANY OF THE FOREGOING.

ALSO EXCEPTING, THE SOLE AND EXCLUSIVE RIGHT FROM TIME TO TIME TO DRILL AND MAINTAIN WELLS OR OTHER FACILITIES INTO OR THROUGH SAID REAL PROPERTY AND THE ADJOINING STREETS, ROADS AND HIGHWAYS FOR THE

-28-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

PURPOSE OF EXPLORING FOR AND PRODUCING ENERGY RESOURCES; THE EXCLUSIVE RIGHT TO PRODUCE, INJECT, STORE, AND REMOVE FROM AND THROUGH SUCH WELLS OR FACILITIES, OIL, GAS, WATER AND OTHER SUBSTANCES OF WHATEVER NATURE, INCLUDING THE RIGHT TO PERFORM ANY AND ALL OPERATIONS DEEMED BY GRANTOR NECESSARY OR CONVENIENT FOR THE EXERCISE OF SUCH RIGHTS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO CONDUCT SEISMIC TESTING AND CONSTRUCT, MAINTAIN AND OPERATE PIPELINES, VALVES, CATHODIC PROTECTION FACILITIES, AND APPURTENANCES; AND THE EXCLUSIVE RIGHT TO UTILIZE OR OCCUPY SUBSURFACE FORMATIONS TO STORE OR DISPOSE OF PRODUCED WATER OR OTHER FLUIDS WITHOUT REGARD TO THEIR PLACE OF ORIGIN, AS RESERVED BY CHEVRON U.S.A. INC., A PENNSYLVANIA CORPORATION, IN DEED RECORDED JUNE 6, 2004 AS DOCUMENT NO. 0204130494, OFFICIAL RECORDS.

APN: 220-170-07

PARCEL 4:

THE SURFACE AND 500 FEET OF THE SUBSURFACE VERTICALLY IN DEPTH BELOW THE SURFACE OF THE EAST HALF OF SECTION 29, TOWNSHIP 32 SOUTH, RANGE 25 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL OIL, GAS, ASPHALTUM, AND OTHER HYDROCARBONS AND OTHER MINERALS, WHETHER SIMILAR TO THOSE HEREIN SPECIFIED OR NOT, WITHIN OR THAT MAY BE PRODUCED FROM SAID PARCEL, 500 FEET IN DEPTH, TOGETHER WITH THE EXCLUSIVE RIGHT TO ENTER UPON SAID PREMISES FOR THE PURPOSE OF MINING FOR AND REMOVING THE SAME THEREFROM, AS EXCEPTED AND RESERVED IN THE DEED FROM STANDARD OIL COMPANY OF CALIFORNIA, A DELAWARE CORPORATION, TO CALIFORNIA LAND AND CATTLE COMPANY, A CORPORATION, RECORDED SEPTEMBER 18, 1963, IN BOOK 3644, PAGE 951 OF OFFICIAL RECORDS.

APN: 220-170-08 and 220-170-09 and 220-170-10

PARCEL 5:

THE NORTHWEST QUARTER OF SECTION 28, TOWNSHIP 32 SOUTH, RANGE 25 EAST, MOUNT DIABLO MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT 1/2 OF ALL MINERALS, INCLUDING OIL, PETROLEUM, GAS, ASPHALTUM, BREA, AND OTHER HYDROCARBON SUBSTANCES WITHIN OR UNDERLYING SAID LAND, AS EXCEPTED IN A DECREE OF DECLARATION OF TAKING DATED DECEMBER 31, 1942, A CERTIFIED COPY OF WHICH WAS RECORDED JANUARY 13, 1943 IN BOOK 1090, PAGE 341 OF OFFICIAL RECORDS, AND AS EXCEPTED IN DEED

20039.002/Gardner PSA (ex)

FROM UNITED STATES OF AMERICA, DATED JANUARY 24, 1949 RECORDED MARCH 17, 1949 IN BOOK 1602, PAGE 105 OF OFFICIAL RECORDS.

ALSO EXCEPT REMAINING 1/2 OF ALL MINERALS, INCLUDING OIL, PETROLEUM, GAS, ASPHALTUM, BREA AND OTHER HYDROCARBON SUBSTANCES WITHIN OR UNDERLYING SAID LAND, TOGETHER WITH RIGHT OF ENTRY.

APN: 220-170-11

PARCEL 6:

ALL OF THE SOUTHWEST QUARTER OF SECTION 28, TOWNSHIP 32 SOUTH, RANGE 25 EAST, MOUNT DIABLO BASE AND MERIDIAN, IN THE UNINCORPORATED AREA OF THE COUNTY OF KERN, STATE OF CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT THEREOF.

EXCEPT ALL MINERALS OF WHATSOEVER NATURE (INCLUDING BUT NOT LIMITED TO OIL, GAS, OTHER HYDROCARBONS AND ASSOCIATED SUBSTANCES) IN, UNDER OR WHICH MAY BE PRODUCED THEREFROM, TOGETHER WITH ALL RIGHTS AND PRIVILEGES OF INGRESS, EGRESS, USE AND OCCUPANCY OF, UPON AND WITHIN THE SURFACE AND SUBSURFACE THEREOF AS THE OWNER OF THE AFORESAID MINERALS MAY FROM TIME TO TIME DEEM NECESSARY OR CONVENIENT IN CONNECTION WITH THE EXPLORATION, DEVELOPMENT AND OPERATION OF SAID LANDS FOR THE AFORESAID MINERALS AND THE STORING, HANDLING, TREATING AND TRANSPORTATION THEREOF, ALL WITHOUT LIABILITY WHATSOEVER TO GRANTEE AND ALL AS CONVEYED BY GRANTORS TO SONICO, INC., A DELAWARE CORPORATION, BY MINERAL DEED DATED FEBRUARY 28, 1967, AND RECORDED IN BOOK 4030, PAGE 208 OF OFFICIAL RECORDS OF KERN COUNTY.

APN: 220-170-31 and 32

**END OF DESCRIPTION**

-30-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

EXHIBIT B

FORM OF SALE ORDER

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC,<br><br>Defendants. | No. 1:24-cv-01455-KES-SAB<br><br>**[PROPOSED] ORDER (I) AUTHORIZING THE PRIVATE SALE OF REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (II) AUTHORIZING THE PAYMENT OF SALE-RELATED COSTS; AND (III) GRANTING RELATED RELIEF (GARDNER)**<br><br>Related to Dkt. No. ____<br><br>Judge:　　　Hon. Kirk E. Sherriff<br><br>Action Filed:　　November 27, 2024 |

Before the Honorable Kirk E. Sherriff, United States District Judge, is the *Notice of Motion and Agreed Motion of Receiver Lance Miller for an Order Authorizing the Private Sale of Certain Receivership Property Free and Clear of Liens, Claims, and Encumbrances (Gardner)* (the "**Sale Motion**") filed by Lance Miller, solely in his capacity as Court-appointed receiver in the above-captioned case (the "**Receiver**") for entry of an order (a) authorizing the Receiver to sell the Property[1] free and clear of liens, claims, and encumbrances, other than easements, rights of way, and other encumbrances running with the land, to the fullest extent permitted by law (collectively, the "**Interests**") with such Interests attaching to the proceeds of the sale ("**Sale Proceeds**") with the same force and in the same priority as existed immediately prior to the Closing Date; (b) authorizing the Receiver to pay, without further order of the Court, all sale-related costs and expenses, including commissions and transaction fees (but excluding the Receiver's attorneys' fees); and (c) granting

---

[1] Capitalized terms used herein shall have the meanings ascribed in the Purchase and Sale Agreement attached hereto as **Exhibit A** (the "**PSA**").

related relief. The Court hereby finds that:[2] (a) as reflected in the *Stipulation and Agreed Order to Waive Requirements of 28 U.S.C. §§ 2001 and 2002 in Connection with the Receiver's Proposed Sale of Certain Real Property Free and Clear of Liens, Claims, and Encumbrances (Gardner)*, the Receiver is excused from compliance with 28 U.S.C. §§ 2001 and 2002 in relation to his private sale of the Property to Buyer (defined below); (b) it has jurisdiction over the Property and the parties in this case, including exclusive jurisdiction over the administration, control, and possession of the Property; (c) it has the statutory authority to enter this Order; and (d) due and proper notice of the Sale Motion was given  and no other or further notice is necessary. The Court further finds that:

A.    This Order constitutes a final order. Notwithstanding Rule 54(b) of the Federal Rules of Civil Procedures, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

B.    The Receiver published notice of the proposed sale in *The Business Journal* at least once weekly from approximately May 2, 2025, through June 27, 2025, and from January 9, 2026, through January 30, 2026. *See Proof of Service by Publication* [Dkt. Nos. 108, 201].

C.    As demonstrated by (i) the testimony and other evidence submitted by declaration and adduced at the Sale Hearing, if held, including the declarations submitted by Lance Miller and Sullivan Grosz, and (ii) the representations of counsel made on the record at the Sale Hearing, if any, the Receiver has demonstrated good, sufficient, and sound business purpose and justifications for the sale and other transactions contemplated in the PSA, and such actions are an appropriate exercise of the Receiver's business judgment and in the best interest of the receivership estate.

D.    The Receiver conducted the sale process for the Property in accordance with his appointment order in this case (the "**Receivership Order**").

E.    The Receiver and WESTERN NATURAL RESOURCES, LLC or its assignee ("**Buyer**") have acted at arm's length and in good faith with respect to the proposed sale, and the

---

[2] The findings and conclusion set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, or a conclusion of law a finding of fact, they are adopted as such. The Court's finding and conclusions set forth at on the record at the Sale Hearing (if any) are incorporated herein by reference.

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

Purchase Price represents the highest or otherwise best offer for the Property under the circumstances. The Receiver's determination that the PSA executed by Buyer constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Receiver's business judgment.

F.    The purchase price for the Property constitutes (i) reasonably equivalent value under the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession of the United States or the District of Columbia.

G.    Except as expressly set forth in the PSA, the Buyer shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest of or against the Defendants, or otherwise related to the Property, by reason of the transfer of the Property to the Buyer. The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the PSA.

H.    Pursuant to this Order and the Receivership Order, the Receiver has full power and authority to execute, deliver, and perform the obligations under the PSA and all other documents and transactions contemplated thereby and no consents or approvals, other than those expressly provided for herein or in the PSA, are required for the Receiver to consummate the sale transaction. As of the Closing Date, the transfer of the Property to the Buyer will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Defendants and the Receiver in and to the Property free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the PSA.

I.    Sale of the Property other than free and clear of Interests, and without the protections of this Order, would impact materially and adversely the value the Receiver would be able to obtain for the Property. In addition, Plaintiff and the second lienholder on the property have each consented to the sale of the Property free and clear of their respective Interests. Other holders of Interests, if any, who did not object, or who withdrew their objections, to the Sale Motion are deemed to have consented. Therefore, approval of the PSA and the consummation of the sale of the Property free

and clear of Interests is appropriate under the Receivership Order and the interests of equity, and is in the best interests of the Receivership estate, creditors, and other parties in interest.

Accordingly, it is hereby:

**ORDERED** that the Receiver's request to sell the Property is granted as set forth herein and all objections to the Sale Motion, to the extent not resolved or withdrawn on the record, are overruled on the merits. All persons and entities who received notice of the Sale Motion and/or the Sale Hearing that failed to timely object thereto as deemed to have consented to the relief sought in the Motion and set forth in this Order.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into and consummate the transactions set forth in the PSA with Buyer or its assignee. The Receiver is authorized to act on behalf of Defendants in connection with the sale and conveyance of title to the Property to Buyer and no other consents or approvals are necessary or required for the Receiver to carry out the sale and conveyance. All persons and entities are hereby prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Receiver to sell and transfer the Property in accordance with the terms of this Order or the PSA.

**IT IS FURTHER ORDERED** that the Receiver is authorized to sell the Property to Buyer pursuant to the terms of the PSA free and clear of Interests, with such Interests attaching to the Sale Proceeds with the same force and in the same priority as existed immediately prior to the Closing Date.

**IT IS FURTHER ORDERED** that the Receiver is authorized to pay, without further Court order, all sale-related costs and expenses, including closing costs, real estate taxes, title insurance, prorations, recording fees, and commissions (but specifically excluding attorneys' fees) and remit the net sale proceeds to Plaintiff in partial satisfaction of its liens or, upon full satisfaction of Plaintiff's lien, to Rooster Capital IV, LLC as the second lienholder in partial satisfaction of its lien against the Property.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into any documents reasonably necessary or desirable to implement the terms of this Order and effectuate the sale of the Property and to take all further actions as may reasonably be requested by Buyer for the purposes

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

of assigning, transferring, granting, and conveying to the Buyer, as may be necessary or appropriate to the performance of the Receiver's obligations under this Order or the PSA. The Receiver is also authorized to execute any documents on behalf of the Defendants to the extent necessary to complete his obligations under this Order or the PSA.

**IT IS FURTHER ORDERED** that Property shall be transferred on an "AS IS," "WHERE, IS," and "WITH ALL FAULTS" basis. All sale documents shall provide language substantially similar to the following: "Buyer acknowledges and agrees that Buyer is purchasing the Property 'as-is', 'where-is', and 'with all faults' as of the Closing Date, and Buyer further acknowledges and agrees that Seller hereby expressly disclaims any and all implied warranties concerning the condition, value and quality of the Property and any portions thereof, including, but not limited to, the implied warranties of habitability, merchantability, or fitness for a particular purpose. Buyer acknowledges that no warranty has arisen through trade, custom or course of dealing with Seller;"

**IT IS FURTHER ORDERED** that the holders of any Interests in the Property shall be prohibited from pursuing or asserting such Interests against Buyer, any of its assets, property, successors or assigns, or the Property.

**IT IS FURTHER ORDERED** that, except with prior leave of this Court, all persons or entities with notice of this Order are prohibited from (a) commencing, prosecuting, continuing or enforcing any action against the Receiver related to the Property or the Sale Proceeds (except that such actions may be filed, but not prosecuted, to toll any statute of limitations), (b) taking any action to interfere with the Receiver's management, control or possession of the Property or the Sale Proceeds, or (c) interfering in any manner with the exclusive jurisdiction of this Court over the Property or the Sale Proceeds.

**IT IS FURTHER ORDERED** that, on and after the Closing Date, any persons holding an Interest shall execute such documents and take all other actions as may be reasonably necessary to further demonstrate the release of their respective Interests in the Property, as such Interests may have been recorded or otherwise filed. Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which Property is located, or with any other appropriate clerk or recorded with any

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All persons and entities that are in possession or control of any portion of the Property on the Closing Date shall promptly surrender possession and control thereof to the Buyer on, or as soon as reasonably practicable after, the Closing Date unless otherwise set forth in the PSA.

**IT IS FURTHER ORDERED** that the Receiver shall serve a copy of this Order on all parties known to have asserted an Interest in the Property. The Receiver is authorized to file a copy of this Order in any court where an action is pending involving the Property.

**IT IS FURTHER ORDERED** that nothing contained herein shall prevent the Receiver from seeking additional relief from this Court related to the PSA, the Property, or the Sale Proceeds.

**IT IS FURTHER ORDERED** that this Order and the terms and provisions of the PSA shall be binding on Defendants, all of Defendants' creditors (whether known or unknown), Buyer, and their respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting any interest in the Property. The provisions of this Order and the terms and provisions of the PSA, and any actions taken pursuant hereto or thereto, shall survive the entry of any order for relief under title 11 of the United States Code, and shall be binding on Defendants and their successors and assigns, including any debtor-in-possession or any trustee appointed under title 11 of the United States Code, or similar custodian or fiduciary appointed over Defendants or their assets.

**IT IS FURTHER ORDERED** that this Order shall be effective immediately upon entry.

**IT IS FURTHER ORDERED** that this Court shall retain exclusive jurisdiction over any disputes arising from or related to the Property, the PSA, or the implementation or interpretation of this Order.

Dated: _____

_____

Hon. Kirk E. Sherriff
United States District Court

EXHIBIT C

FORM OF RELEASE

_____ ("**Buyer**"), [as successor by assignment to _____], and LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") in the case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et. al.*, Case No. 1:24-cv-01455-KES-SAB, pending in the U.S. District Court for the Eastern District of California (the "**Court**") have previously entered into that certain Purchase and Sale Agreement and Joint Escrow Instructions dated _____ (as such may have been amended, prior to the date hereof, the "**Agreement**"). Unless otherwise indicated, capitalized terms not otherwise defined herein shall have the meanings given to them in the Agreement.

As material consideration for Seller's obligations under the Agreement, effective as of the Closing Date, Buyer on behalf of itself and its members, managers, partners, officers, directors, and employees (collectively, including Buyer, "**Releasors**"), hereby releases Seller, Federal Agricultural Mortgage Corporation, Rooster Capital IV LLC, and American Equity Investment Life Insurance Company and their respective partners, professionals, agents, employees, shareholders, members, affiliates, principals, beneficiaries, subsidiaries, successors, and assigns (collectively with Seller, "**Releasees**") from any and all complaints, claims, charges, claims for relief, demands, suits, actions and causes of action, whether in law or in equity, which Buyer asserts or could assert at common law or under any statute, rule, regulation, order or law, whether federal, state or local, on any ground whatsoever, whether or not known, suspected, liquidated, contingent or matured, with respect to any event, matter, claim, occurrence, damages or injury (collectively, "**Claims**"), to the extent arising out of a condition or state of the Property, including the value of the Property or its suitability for Buyer's use.

Buyer, on behalf of itself, its successors, assigns and successors-in-interest and such other persons and entities, hereby waives the protections and benefits afforded California Civil Coe Section 1542, acknowledging that its waivers and releases herein are being made after obtaining the advice of counsel and with full knowledge and understanding of the consequences and effects of such waivers and releases, and that California Civil Code Section 1542 provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

_____
**Buyer's Initials**

Notwithstanding anything stated to the contrary in this Agreement, the foregoing release shall not extend to (and shall expressly exclude) claims arising from Seller's intentional fraud.

This Release is made by Buyer for the benefit of Seller and the Releasees on _____.

[Buyer Signature Block]

-32-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

EXHIBIT D

Form of Deed

Recording Requested By And

**When Recorded Return To:**

**Mail Tax Statements To:**

_____

(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

**GRANT DEED**

THE UNDERSIGNED GRANTOR DECLARES:

DOCUMENTARY TRANSFER TAX IS $_____

____Unincorporated Area         _____City of _____
___Computed on full value of interest or property conveyed, or
___Computed on full value less value of liens or encumbrances remaining at time of sale

Assessor's Parcel No. _____

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Grantor**") pursuant to the _____("**Sale Order**") entered in the case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et. al.*, Case No. 1:24-cv-01455-KES-SAB, pending in the U.S. District Court for the Eastern District of California, does hereby **grant, sell and convey** to _____ ("**Grantee**")**,** the following described real property in the County of Kern, State of California, and more particularly described as follows:

See Exhibit A, attached hereto and incorporated by reference.

Together with all of Grantor's right, title and interest in and to the improvements and structures thereon, and all privileges, easements, appurtenances, rights-of way, and hereditaments appertaining to the same, and subject to all matters of record and all matters that would be reflected on an accurate survey at the time of recordation of this deed.

THE PROPERTY IS CONVEYED TO GRANTEE WITHOUT ANY COVENANTS OR WARRANTIES, EXPRESS OR IMPLIED, EXCEPT AS SET FORTH IN THE SALE ORDER, AND SPECIFICALLY EXCLUDES THOSE IMPLIED COVENANTS DESCRIBED IN CALIFORNIA CIVIL CODE SECTION 1113.

MAIL TAX STATEMENTS AS SET FORTH ABOVE

Dated: _____, 202_                    _____

                                                    LANCE   MILLER,   solely   in   his
                                                    capacity as Court-appointed Receiver

[attach legal description exhibit and notary acknowledgement]

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

EXHIBIT E

Form of Bill of Sale

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, LANCE MILLER, solely in his capacity as court-appointed receiver (the "**Seller**") pursuant to the _____("**Sale Order**") entered in the case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et. al.*, Case No. 1:24-cv-01455-KES-SAB, pending in the U.S. District Court for the Eastern District of California, does hereby sell, bargain, assign, transfer, convey and deliver to _____ ("**Buyer**"), all of Seller's rights, title, interests in and to the Improvements, Crops (for the 2026 crop year and following), Oil Gas and Mineral Rights, and Water Rights (in so far as any of the foregoing are personal property) (the "**Personal Property**"), as such terms are defined in that certain Purchase and Sale Agreement and Joint Escrow Instructions dated _____ by and between Buyer and Seller (the "**Purchase Agreement**"), for the real property situated in Kern County, California as more particularly described in **Exhibit A** attached hereto and incorporated herein by reference. The Personal Property is conveyed free and clear of all liens and encumbrances, except for the Permitted Exceptions (as defined in the Agreement).

IT IS UNDERSTOOD AND AGREED THAT BUYER HAS EXAMINED THE PERSONAL PROPERTY HEREIN SOLD AND THAT THIS SALE IS MADE "AS IS, WHERE IS" AND SELLER DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTY OTHER THAN THE WARRANTY OF TITLE SET FORTH ABOVE, AS TO THE PERSONAL PROPERTY INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed and delivered as of _____, 202__

SELLER

_____
LANCE MILLER, solely in his capacity as
Court-appointed Receiver

[attach legal description exhibit]

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

EXHIBIT F

Form of Assignment Agreement

**ASSIGNMENT AGREEMENT**

THIS ASSIGNMENT AGREEMENT ("Assignment") is entered into effective as of _____, 202\_\_ ("**Effective Date**"), by and between LANCE MILLER, solely in his capacity as court-appointed receiver (the ("**Assignor**"), pursuant to the _____("**Sale Order**") entered in the case styled *Federal Agricultural Mortgage Corporation v. Assemi Brothers, LLC et. al.*, Case No. 1:24-cv-01455-KES-SAB, pending in the U.S. District Court for the Eastern District of California, and _____("**Assignee**").

A.    Assignor and Assignee are parties to that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated _____ (the "**Purchase Agreement**"), with respect to the purchase and sale of the property described in Exhibit A, attached hereto and incorporated by reference (the "**Property**").

B.    Assignor and Assignee closed the purchase and sale of the Property on the date hereof, and pursuant to the Purchase Agreement and Sale Order, Assignor has agreed to assign to Assignee all of its right, title and interest under those contracts affecting the Property as set forth on Exhibit B, attached hereto and incorporated by reference (the "**Assigned Contracts**").

NOW, THEREFORE, Assignor and Assignee, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, agree as follows.

1.    Assignor hereby assigns to Assignee all its the right, title, obligation, and interest as in and to the Contracts, subject to the receipt of any consents of the counterparties required thereunder, from and after the Effective Date.  Assignee hereby assumes the right, title, obligation, and interest, and agrees to perform all obligations of Assignor under the Contracts to be performed after the date hereof.

2.    Assignee shall indemnify, defend, and hold Assignor harmless from all obligations on the part of Assignee arising under the Contracts from and after the Effective Date, and from all claims, judgments, injuries, losses, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection therewith, provided that any claim under this Section 3 shall be made within 3 months of the Effective Date.

3.    Assignor shall indemnify, defend, and hold Assignee harmless from all obligations on the part of Assignee arising under the Contracts before the Effective Date, and from all claims, judgments, injuries, losses, liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection therewith, provided that any claim under this Section 3 shall be made within 3 months of the Effective Date.

4.    Assignor has not previously assigned the Contracts and has, subject to the required consent

-35-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

of any counterparty, authority to assign the Contracts (and to the extent counterparty consent is required under any Contract and has been obtained, the consent is attached hereto as Exhibit C). Other than as expressly set forth herein or in the Purchase Agreement, Assignor has made no, and disclaims any and all, express or implied warranties concerning the condition, value and quality of the property and any portions the Contracts.

5.      Each party will, at any time and from time to time upon written request therefor, execute and deliver to the other party such documents as such other party may reasonably request in order to fully assign and transfer the Contracts, and cooperate in the obtaining of any additional consents which are required and not obtained prior to the date hereof.

6.      In the event of any litigation initiated to enforce the terms of this Assignment, the prevailing party shall be entitled to an award for its reasonable attorneys' fees and expenses from the non-prevailing party.  This Assignment shall be governed by, interpreted under, and construed and enforced in accordance with, the laws of the State of California.  This Assignment may be executed in one or more counterparts, each of which shall constitute an original, but all of which, when taken together, shall constitute but one agreement.  This Assignment shall bind and inure to Assignor and Assignee and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first written above.


ASSIGNOR                                              ASSIGNEE

                                                      **[assignee sig blocks]**

_____
LANCE MILLER, solely in his capacity as
Court-appointed Receiver




[attach legal description exhibit, contract list exhibit, and counterparty consents (if any)]

-36-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

SCHEDULE 1.1(g)

Contract Schedule

1.  Agricultural Lease with Option to Purchase dated April 27, 2021, made by and between Willow Avenue Investments, LLC, a California limited liability company (as Landlord therein) and US HORTICULTURE FARMLAND, LLC, a Delaware limited liability company (as Tenant therein), a memorandum of which was recorded in the Official Records of Kern County, California, on April 27, 2021, as Document 221079653.

-37-

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

SCHEDULE 5.2(h)

Specific Title Encumbrances

1.  Agricultural Lease with Option to Purchase dated April 27, 2021, made by and between Willow Avenue Investments, LLC, a California limited liability company (as Landlord therein) and US HORTICULTURE FARMLAND, LLC, a Delaware limited liability company (as Tenant therein), a memorandum of which was recorded in the Official Records of Kern County, California, on April 27, 2021, as Document 221079653

-38-

20039.002/Gardner PSA (ex)

Docusign Envelope ID: BC6E02D2-9E91-8FBE-81FE-813D37623377

SCHEDULE 7.1

Exceptions to Seller's Representations

1.  None

20039.002/Gardner PSA (ex)

# EXHIBIT C

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL AGRICULTURAL MORTGAGE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ASSEMI BROTHERS, LLC; MARICOPA ORCHARDS, LLC; C & A FARMS, LLC; WHITESBRIDGE FARMS, LLC; LINCOLN GRANTOR FARMS, LLC; COPPER AVENUE INVESTMENTS, LLC; ACAP FARMS, LLC; CANTUA ORCHARDS, LLC; GRADON FARMS, LLC,<br><br>　　　　　Defendants. | No. 1:24-cv-01455-KES-SAB<br><br>**[PROPOSED] ORDER (I) AUTHORIZING THE PRIVATE SALE OF REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; (II) AUTHORIZING THE PAYMENT OF SALE-RELATED COSTS; AND (III) GRANTING RELATED RELIEF (GARDNER)**<br><br>Related to Dkt. No. ____<br><br>Judge:　　　Hon. Kirk E. Sherriff<br><br>Action Filed:　November 27, 2024 |

Before the Honorable Kirk E. Sherriff, United States District Judge, is the *Notice of Motion and Agreed Motion of Receiver Lance Miller for an Order Authorizing the Private Sale of Certain Receivership Property Free and Clear of Liens, Claims, and Encumbrances (Gardner)* (the "**Sale Motion**") filed by Lance Miller, solely in his capacity as Court-appointed receiver in the above-captioned case (the "**Receiver**") for entry of an order (a) authorizing the Receiver to sell the Property[1] free and clear of liens, claims, and encumbrances, other than easements, rights of way, and other encumbrances running with the land, to the fullest extent permitted by law (collectively, the "**Interests**") with such Interests attaching to the proceeds of the sale ("**Sale Proceeds**") with the same force and in the same priority as existed immediately prior to the Closing Date; (b) authorizing the Receiver to pay, without further order of the Court, all sale-related costs and expenses, including commissions and transaction fees (but excluding the Receiver's attorneys' fees); and (c) granting

---

[1] Capitalized terms used herein shall have the meanings ascribed in the Purchase and Sale Agreement attached hereto as **Exhibit A** (the "**PSA**").

related relief. The Court hereby finds that:[2] (a) as reflected in the *Stipulation and Agreed Order to Waive Requirements of 28 U.S.C. §§ 2001 and 2002 in Connection with the Receiver's Proposed Sale of Certain Real Property Free and Clear of Liens, Claims, and Encumbrances (Gardner)*, the Receiver is excused from compliance with 28 U.S.C. §§ 2001 and 2002 in relation to his private sale of the Property to Buyer (defined below); (b) it has jurisdiction over the Property and the parties in this case, including exclusive jurisdiction over the administration, control, and possession of the Property; (c) it has the statutory authority to enter this Order; and (d) due and proper notice of the Sale Motion was given and no other or further notice is necessary. The Court further finds that:

A. This Order constitutes a final order. Notwithstanding Rule 54(b) of the Federal Rules of Civil Procedures, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

B. The Receiver published notice of the proposed sale in *The Business Journal* at least once weekly from approximately May 2, 2025, through June 27, 2025, and from January 9, 2026, through January 30, 2026. *See Proof of Service by Publication* [Dkt. Nos. 108, 201].

C. As demonstrated by (i) the testimony and other evidence submitted by declaration and adduced at the Sale Hearing, if held, including the declaration submitted by Lance Miller, and (ii) the representations of counsel made on the record at the Sale Hearing, if any, the Receiver has demonstrated good, sufficient, and sound business purpose and justifications for the sale and other transactions contemplated in the PSA, and such actions are an appropriate exercise of the Receiver's business judgment and in the best interest of the receivership estate.

D. The Receiver conducted the sale process for the Property in accordance with his appointment order in this case (the "**Receivership Order**").

E. The Receiver and WESTERN NATURAL RESOURCES, LLC or its assignee ("**Buyer**") have acted at arm's length and in good faith with respect to the proposed sale, and the

---

[2] The findings and conclusion set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, or a conclusion of law a finding of fact, they are adopted as such. The Court's finding and conclusions set forth at on the record at the Sale Hearing (if any) are incorporated herein by reference.

Purchase Price represents the highest or otherwise best offer for the Property under the circumstances. The Receiver's determination that the PSA executed by Buyer constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Receiver's business judgment.

F.    The purchase price for the Property constitutes (i) reasonably equivalent value under the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession of the United States or the District of Columbia.

G.    Except as expressly set forth in the PSA, the Buyer shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest of or against the Defendants, or otherwise related to the Property, by reason of the transfer of the Property to the Buyer. The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the PSA.

H.    Pursuant to this Order and the Receivership Order, the Receiver has full power and authority to execute, deliver, and perform the obligations under the PSA and all other documents and transactions contemplated thereby and no consents or approvals, other than those expressly provided for herein or in the PSA, are required for the Receiver to consummate the sale transaction. As of the Closing Date, the transfer of the Property to the Buyer will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Defendants and the Receiver in and to the Property free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the PSA.

I.    Sale of the Property other than free and clear of Interests, and without the protections of this Order, would impact materially and adversely the value the Receiver would be able to obtain for the Property. In addition, Plaintiff and the second lienholder on the property have each consented to the sale of the Property free and clear of their respective Interests. Other holders of Interests, if any, who did not object, or who withdrew their objections, to the Sale Motion are deemed to have consented. Therefore, approval of the PSA and the consummation of the sale of the Property free

and clear of Interests is appropriate under the Receivership Order and the interests of equity, and is in the best interests of the Receivership estate, creditors, and other parties in interest.

Accordingly, it is hereby:

**ORDERED** that the Receiver's request to sell the Property is granted as set forth herein and all objections to the Sale Motion, to the extent not resolved or withdrawn on the record, are overruled on the merits. All persons and entities who received notice of the Sale Motion and/or the Sale Hearing that failed to timely object thereto as deemed to have consented to the relief sought in the Motion and set forth in this Order.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into and consummate the transactions set forth in the PSA with Buyer or its assignee. The Receiver is authorized to act on behalf of Defendants in connection with the sale and conveyance of title to the Property to Buyer and no other consents or approvals are necessary or required for the Receiver to carry out the sale and conveyance. All persons and entities are hereby prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Receiver to sell and transfer the Property in accordance with the terms of this Order or the PSA.

**IT IS FURTHER ORDERED** that the Receiver is authorized to sell the Property to Buyer pursuant to the terms of the PSA free and clear of Interests, with such Interests attaching to the Sale Proceeds with the same force and in the same priority as existed immediately prior to the Closing Date.

**IT IS FURTHER ORDERED** that the Receiver is authorized to pay, without further Court order, all sale-related costs and expenses, including closing costs, real estate taxes, title insurance, prorations, recording fees, and commissions (but specifically excluding attorneys' fees) and remit the net sale proceeds to Plaintiff in partial satisfaction of its liens or, upon full satisfaction of Plaintiff's lien, to Rooster Capital IV, LLC as the second lienholder in partial satisfaction of its lien against the Property.

**IT IS FURTHER ORDERED** that the Receiver is authorized to enter into any documents reasonably necessary or desirable to implement the terms of this Order and effectuate the sale of the Property and to take all further actions as may reasonably be requested by Buyer for the purposes

4

of assigning, transferring, granting, and conveying to the Buyer, as may be necessary or appropriate to the performance of the Receiver's obligations under this Order or the PSA. The Receiver is also authorized to execute any documents on behalf of the Defendants to the extent necessary to complete his obligations under this Order or the PSA.

**IT IS FURTHER ORDERED** that Property shall be transferred on an "AS IS," "WHERE, IS," and "WITH ALL FAULTS" basis. All sale documents shall provide language substantially similar to the following:  "Buyer acknowledges and agrees that Buyer is purchasing the Property 'as-is', 'where-is', and 'with all faults' as of the Closing Date, and Buyer further acknowledges and agrees that Seller hereby expressly disclaims any and all implied warranties concerning the condition, value and quality of the Property and any portions thereof, including, but not limited to, the implied warranties of habitability, merchantability, or fitness for a particular purpose.  Buyer acknowledges that no warranty has arisen through trade, custom or course of dealing with Seller;"

**IT IS FURTHER ORDERED** that the holders of any Interests in the Property shall be prohibited from pursuing or asserting such Interests against Buyer, any of its assets, property, successors or assigns, or the Property.

**IT IS FURTHER ORDERED** that, except with prior leave of this Court, all persons or entities with notice of this Order are prohibited from (a) commencing, prosecuting, continuing or enforcing any action against the Receiver related to the Property or the Sale Proceeds (except that such actions may be filed, but not prosecuted, to toll any statute of limitations), (b) taking any action to interfere with the Receiver's management, control or possession of the Property or the Sale Proceeds, or (c) interfering in any manner with the exclusive jurisdiction of this Court over the Property or the Sale Proceeds.

**IT IS FURTHER ORDERED** that, on and after the Closing Date, any persons holding an Interest shall execute such documents and take all other actions as may be reasonably necessary to further demonstrate the release of their respective Interests in the Property, as such Interests may have been recorded or otherwise filed.  Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which Property is located, or with any other appropriate clerk or recorded with any

other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All persons and entities that are in possession or control of any portion of the Property on the Closing Date shall promptly surrender possession and control thereof to the Buyer on, or as soon as reasonably practicable after, the Closing Date unless otherwise set forth in the PSA.

**IT IS FURTHER ORDERED** that the Receiver shall serve a copy of this Order on all parties known to have asserted an Interest in the Property. The Receiver is authorized to file a copy of this Order in any court where an action is pending involving the Property.

**IT IS FURTHER ORDERED** that nothing contained herein shall prevent the Receiver from seeking additional relief from this Court related to the PSA, the Property, or the Sale Proceeds.

**IT IS FURTHER ORDERED** that this Order and the terms and provisions of the PSA shall be binding on Defendants, all of Defendants' creditors (whether known or unknown), Buyer, and their respective affiliates, successors and assigns, and any affected third parties, including, but not limited to, all persons asserting any interest in the Property. The provisions of this Order and the terms and provisions of the PSA, and any actions taken pursuant hereto or thereto, shall survive the entry of any order for relief under title 11 of the United States Code, and shall be binding on Defendants and their successors and assigns, including any debtor-in-possession or any trustee appointed under title 11 of the United States Code, or similar custodian or fiduciary appointed over Defendants or their assets.

**IT IS FURTHER ORDERED** that this Order shall be effective immediately upon entry.

**IT IS FURTHER ORDERED** that this Court shall retain exclusive jurisdiction over any disputes arising from or related to the Property, the PSA, or the implementation or interpretation of this Order.

Dated: _____

_____
Hon. Kirk E. Sheriff
United States District Court

# EXHIBIT 1

GARDNER RANCH Property Specific Service List

**Service by FedEx**

Aera Energy LLC
1 World Trade Center, Suite 1500
Long Beach, CA 90831

Allen Matkins Leck Gamble
Mallory & Natsis LLP
865 South Figueroa Street, Ste 2800
Los Angeles, CA 90017
Attention: Michale R. Farrell/Matthew D. Pham

American Equity Investment Life Insurance
Company
6000 Westown Parkway
West Des Moines, IA 50266

American Equity Investment Life
Insurance Company
c/o Brookfield Wealth Solutions
6250 Vesey Street, 15th Floor
New York, NY 10281
Attn: Brad Michaelson

C&A Farms, et. al.
5260 N. Palm Ave., Ste 421, Mail Stop M
Fresno, CA 93704

California Resources Production Corporation
California Resources Petroleum Corporation
1 World Trade Center, Suite 1500
Long Beach, CA 90831

First American Title Insurance Company
9255 Town Center Drive, Suite 200
San Diego, CA 92121

Kern County
Kern County Clerk
1115 Truxtun Ave # 5th
Bakersfield, CA 93301

Maricopa Orchards, LLC, et. al.
5260 N. Palm Ave., Ste 421, Mail Stop M
Fresno, CA 93704

Old Republic Title Company
7451 N Remington Avenue, Suite 102
Fresno CA 93711

Rooster Capital IV LLC
5465 Mills Civic Parkway, Suite 201
West Des Moines IA 50266

U.S. Bank National Association, as
Administrative Agent
400 City Center
Oshkosh, WI 54901

U.S. Bank National Association, as
Custodian/Trustee for Federal Agricultural
Mortgage Corporation programs
1133 Rankin Street, Suite 100
St. Paul, MN 55116

U.S. Bank National Association, Successor to
MUFG Union Bank, N.A.
400 City Center
Oshkosh, WI 54901

U.S. Bank National Association, Successor to
MUFG Union Bank, N.A.
1850 Osborn Ave
MI-WI-FCCL
Oshkosh, WI 54902

US Horticulture Farmland, LLC
c/o Westchester Group Investment
Management, Inc.
2004 Fox Drive, Ste L
Champaign, IL 61820

Vintage Petroleum, LLC
Attn: Land Manager
9600 Ming Ave
Bakersfield, CA 93311

Wheeler Ridge-Maricopa Water Storage District
12109 CA-166
Bakersfield, CA 93313
Attn: Sheridan Nicholas

1

305279884v2

GARDNER RANCH Property Specific Service List

Young Wooldridge LLP
10800 Stockdale Hwy, Suite 202
Bakersfield, CA 93311
Attn: Steven M. Torigiani

Young Wooldridge LLP
10800 Stockdale Hwy, Suite 202
Bakersfield, CA 93311
Attn: Mark Bateman

2

305279884v2

**SERVICE BY U.S. MAIL**

104 Investments, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

ACAP Farms, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

ACAP Farms, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

ACAP Holdings, LLC
1306 W Herndon Ave., #101
Fresno, CA 93711

Aera Energy LLC
PO Box 11164,
Bakersfield, CA 93389

Alva Corporation
8300 N. Hayden Road, Ste. 100,
Scottsdale, AZ 85258

American Equity Investment Life Insurance Company
6000 Westown Parkway
West Des Moines, IA 50266

Ashlan & Hayes Investments, LLC
1306 W Herndon Ave., #101
Fresno, CA 93711

Assemi Brothers, LLC
1306 W, Herndon Ave.
Fresno, CA 93711

Assemi Brothers, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Assemi Group, Inc.
Attn: John A. Bezmalinovic
1396 W. Herndon Ave., Suite 101
Fresno, CA 93711

Ben Nakagama and Julie Nakagawa
946 South Hughes
Fresno, CA 93706

Betsy E. Garcia
575 E. Rumi Ave.
Fresno, CA  93723

C & A Farms LLC
1306 W, Herndon Ave.
Fresno, CA 93711

C & A Farms LLC
1306 W, Herndon Ave., #101
Fresno, CA 93711

C & A Farms LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

C & A Farms LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

C & A Farms
c/o Stan Cornwell,
P.O. Box 1947,
San Joaquin, CA 93360

C&A Farms LLC
Hostetler Ranches LLC
1396 W Herndon #101
Fresno, CA  93711

C&A Farms, LLC
Melanie J. Aldridge, Esq.,
440 West Fallbrook, #106,
Fresno, CA 93711

C. A. Henson & John Landers dba Henson & Landers,
a partnership
Rt. 3, Box 959
Bakersfield, CA  93307

California Minerals, L.P.
1111 Fannin St., Suite 1700
Houston, TX  77002

California's Golden Citrus Company, LLC
c/o Ted Price,
263 Via Oliveria,
Camirillo, CA 93012

Cantua Orchards, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Cantua Orchards, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Cardinal Pipeline, L. P.
1900 Main St. Ste 600
Irvine, CA  92614-7319

Chevron U.S.A. Inc.
4900 California Ave.,
P.O. Box 1392
Bakersfield, CA  93389

Chevron U.S.A. Inc.
P.O. Box 6
Bakersfield, CA  93303

City Clerk City of Fresno
2326 Fresno Street
Fresno, CA

City of Fresno
City Clerk
2600 Fresno Street
Fresno, CA  93721

City of Fresno
Public Works Department
Attn: Bruce Abbott
2600 Fresno Street
Fresno, CA 93721

Clifford A. Henson and Lavern Henson
R. 3 Box 959
Bakersfield, CA 93307

Conterra Agricultural Capital, LLC
5465 Mills Civic Parkway, Suite 201
West Des Moines, IA 50266

Conterra Agricultural Capital, LLC
7755 Office Plaza Drive North, Suite 195
West Des Moines, IA 50266

Conterra Agricultural Capital, LLC
Attn: Mark A Smith
5465 Mills Civic Parkway, Suite 201
West Des Moines, IA 50266

Copper Avenue Investments, LLC
1308 W. Herndon Ave., Suite 101
Fresno, CA 93711

Copper Avenue Investments, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Copper Avenue Investments, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Copus River Farms, LLC
Attn: Legal Department
1306 West Herndon, Suite 101
Fresno, CA 93711

County of Kern
Property Management Dept.
1415 Truxtun Ave.
Bakersfield, CA 93301

County of Kings
Board of Supervisors
1400 W. Lancey Blvd.
Hanford, CA 93230

E.ON Climate & Renewables North America
Attn: General Counsel
353 N. Clark St., 30th Floor
Chicago, IL 60654

Emily Derderian
6668 N. West Street
Fresno, CA 93711

Equilon Enterprises LLC d/b/a Shell Oil Products US
150 N. Dairy Asford
Houston, TX 77079

Federal Agricultural Mortgage Corporation
c/o Brodie Austin Surfus,
Marshall Craig Whitney
Whitney Thompson & Jeffcoach
970 W. Alluvial Ave.
Fresno, CA 93711

Federal Agricultural Mortgage Corporation
c/o William D. Curtis, Gabriel L. Mathless
Moore &VanAllen
100 North Tryon Street, Suite 4700
Charlotte, NC 28202

Federal Aviation Administration
Office of the Chief Counsel
Attn: William "Liam" McKenna
800 Independence Avenue SW
Washington, DC 20591

Federal Land Bank Association of Kingsburg
c/o Scott Anderson,
PO Box 68
Kingsburg, CA 93631

FFGT Farms, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Floyd Lester Roberts and Eva Roberts
13075 West McKinley
Kerman, CA 93630

Fresno Irrigation District
2907 South Maple Ave.
Fresno, CA 93725

Gardner Almonds, LLC
2055 Woodside Road, #195
Redwood City, CA 94061

Golden State Finance Authority
1215 K Street
Sacramento CA 95814

Gradon Farms, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Gradon Farms, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Grapeman 320 Ranch L.P.
PO Box 6157,
Beverly Hills, CA 90212

Grapeman 320 Ranch LP
9777 Wilshire Blvd., Ste. 918
Beverly Hills, CA 90212

Grapeman Exitus Vineyard, LP
9777 Wilshire Blvd. Suite 918
Beverly Hills, CA 98212

James L. Guy
2516 Silver Dr.
Bakersfield, CA 93306

Joan King
James Richard Hunt
33525 S. J&E Road
Auberry, CA 93602

John E. Landers
R. 3 Box 959
Bakersfield, CA  93307

Lance Miller, Receiver
c/o John E. Mitchell, Michaela C. Crocker,
Yelena E. Archiyan
Katten Muchin Rosenman LLP
2121 North Pearl St, Ste. 1100
Dallas, TX 75201-2591

Lance Miller, Receiver
c/o Terence G. Banich
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, IL 60661-3963

Lincoln Grantor Farms, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Lincoln Grantor Farms, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Lisa A. Cutts
Cutts Law, PC
5088 N. Fruit Avenue, Suite 101
Fresno, CA 93711

LJL
4950 Waring Rd., #111
San Diego, CA  93711

Locans Investments, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Maricopa Orchards, LLC
1306 W, Herndon Ave.
Fresno, CA 93711

Maricopa Orchards, LLC
5260 N. Palm #421 Stop M
Fresno, CA 93704

Maricopa Orchards, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Maricopa Orchards, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Maricopa Orchards, LLC
P.O. Box 428,
Lemoore, CA 93245

Maricopa West Solar PV, LLC
c/o E.ON Climate & Renewables North America
Attn: Dave Azzam
20 California Street, Suite 500
San Francisco, CA 94111

Mark R. Baeman, Esq.
Young Woodridge LLP
1800 30th Street, 4th Floor
Bakersfield, CA  93301

Maxine Pilgrim, William L. Gammon,
Jack L. Gammon
1415 18th Street,
Great Westen Savings Building, Room 509,
Bakersfield, CA

Metropolitan Life Insurance Company Agricultural
Investments
Attn:  Director, WRO
205 E. River Park Circle, Suite 330
Fresno, CA  93720

Metropolitan Life Insurance Company
Attn: SSU Director
10801 Mastin Street, Suite 930
Overland Park, KS  66210

MUFG Union Bank, N.A.
Attn: Scott Lisle
7108 N. Fresno Street, Suite 200
Fresno, CA  93720

Nahabedian Exploration Group, LLC
c/o Martin I. Smith, Inc.
45-250 Club Drive
Indian Wells, CA  922210

Old Republic Title Company
7451 N. Remington Ave., Suite 102
Fresno, CA  93711

Pacific Gas and Electric Company
Land Department
1401 Fulton Street
Fresno, CA 93760

Pacific Gas and Electric Company
Land Department,
PO Pin 319,
Bakersfield, CA 93302

Pacific Gas and Electric Company
Land Rights Office - Fresno
650 "O" Street, Third Floor
Fresno, CA 93760

Pacific Gas and Electric Company
Land Services - Fresno
650 "O" Street, Bag 23
Fresno, CA  93760

Palo Verde Investments N.V.
5500 Ming Ave., Suite 100
Bakersfield, CA 93309

Public Works Department
City of Fresno
2600 Fresno Street
Fresno, CA 93721-3623
Attn: Bruce Abbott

Rooster Capital IV LLC
5465 Mills Civic Parkway, Suite 201
West Des Moines, IA  50266

Rooster Capital IV, LLC
c/o Bernard Jaron Kornberg
Miller Nash LLP
340 Golden Shores, Ste 450
Long Beach, CA 90802

San Raphael Fruits Corporation
c/o Keith Mori,
904 Silver Spur Road, Ste. 388,
Rolling Hills Estates, CA 90274

SiteCo, LLC
Attn: Office of the General Counsel
300 California Street, 7th Floor
San Francisco, CA  94104

State of California Department of Transportation
1352 W. Olive Ave.
Fresno, CA  93728

Summit Slough Ranch, LLC
8519 24th Ave.
Lemoore, CA 93245

The Nahabedian Exploration Group, LLC
c/o Martin I. Smith, Inc.
45-250 Club Drive
Indian Wells, CA 92210

The Prudential Insurance Company of America
c/o Prudential Asset Resources
Attn: Agricultural Loan Servicing
2100 Ross Ave., Suite 2500
Dallas, TX  75201

The Prudential Insurance Company of America
c/o Prudential Asset Resources
Attn: Legal Dept.
2100 Ross Ave., Suite 2500
Dallas, TX  75201

U.S. Bank National Association, as Custodian/Trustee
for Federal Agricultural Mortgage Corporation
programs
1133 Rankin Street, Suite 100
St Paul, MN 55116

UNI-CA Enterprises, Inc.
c/o Bill Gammon,
13755 Costajo Street,
Bakersfield, CA 93313

United States of America, Department of
Transportation,
Federal Aviation Administration
Real Property & Utilities Section
P.O. Box 92007
Worldway Postal Center
Los Angeles, CA 90009

US Horticulture Farmland, LLC
c/o Westchester Group Investment Management, Inc.
Attn: Frank Lu
6715 N. Palm Ave., Suite 101
Fresno, CA  93704

Vintage Petroleum LLC
Attn: Land Manager
9600 Ming Ave.
Bakersfield, CA  93311

Wells Fargo Bank, N.A.
Attn: Vahagn Bznouni, Sr. VP
8405 N. Fresno St., Suite 200
Fresno, CA  93720

Wheeler Ridge Maricopa Water Storage District
12109 Highway 166
Bakersfield, CA 93313

Wheeler Ridge Maricopa Water Storage District
P.O. Box 9429
Bakersfield, CA 93389

Wheeler Ridge-Maricopa Water Storage District
Young, Woolridge, Paulden, Self & Williams
1600 "M" Street,
Bakersfield CA

Whitesbridge Farms, LLC
1306 W, Herndon Ave.
Fresno, CA 93711

Whitesbridge Farms, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Whitesbridge Farms, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Willow Avenue Investments, LLC
1306 E. Herndon Ave, Ste. 101,
Fresno, CA 93711

Willow Avenue Investments, LLC
5260 N. Palm Ave., Ste. 421 Mail Stop M
Fresno, CA 93704

Willow Avenue Investments, LLC
5260 N. Palm Ave., Suite 421, Mail Stop A
Fresno, CA  93704

Willow Avenue Investments, LLC
c/o Jane Kim
Keller Benvenutti Kim LLP
425 Market Street, Floor 26
San Francisco, CA 94105

Fresno County
Fresno County Clerk
2220 Tulare St
Fresno, CA 93721

Kern County
Kern County Clerk
1115 Truxtun Ave # 5th
Bakersfield, CA  93301

Kings County
Kings County Clerk
1400 W. Lacey Blvd.
Hanford, CA  93230

Laguna Irrigation District
Attn: Scott Sills
5065 19 1/2 Ave.
Riverdale, CA  93656

Laguna Irrigation District
c/o Upper San Jose Water Company
5065 19 1/2 Ave.
Riverdale, CA  93656

Laguna Irrigation District
c/o Upper San Jose Water Company
Attn: Michael Nordstrom, General Counsel
222 W. Lacey Blvd.
Hanford, CA  93230

Westlands Water District
Attn: Russ Freeman
286 W. Cromwell Ave
Fresno, CA 93711

Fresno Irrigation District
Attn: Jeffrey Boswell
2907 S Maple Ave.
Fresno, CA  93725

Wheeler Ridge
Attn: Sheridan Nicholas
12109 CA-166
Bakersfield, CA  93313

Wheeler Ridge
c/o Young Wooldridge LLP
Attn:  Steven M. Torigiani, General Counsel
10800 Stockdale Hwy, Suite 202
Bakersfield, CA 93311

Michael R. Farrell
Matthew D. Pham
Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Ste 2800
Los Angeles, CA 90071

Richard M. Pachulski
Ira D. Kharasch
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067-4003

Chicago Title Company
5170 Golden Foothill Parkway, Suite 130
El Dorado Hills, CA  95762

First American Title Insurance Company
9255 Town Center Drive, Suite 200
San Diego, CA  92121

First American Title Insurance Company
Attn: Bryant Mendel, Vice President
9255 Town Center Drive, Suite 200
San Diego, CA  92121

First American Title Insurance Company
Attn: David Z Bark, Foreclosure Trustee
9255 Town Center Drive, Suite 200
San Diego, CA  92121

Old Republic Title Company
c/o Thomas L. Palotas
Jameson Pepple Cantu PLC
801 Second Ave., Suite 700
Seattle, WA 98104

Madera Irrigation District
Attn: Thomas Greci
12152 Rd 28 1/4
Madera, CA  93637

Madera Irrigation District
Attn: John Kinsey
12152 Rd 28 1/4
Madera, CA  93637

Kings River Resource Conservation District
Attn: David Merritt
4886 E. Jensen Ave.
Fresno, CA  93725

Fresno Metropolitan Flood Control District
Attn: Peter Sanchez
5469 E. Olive Ave.
Fresno, CA  93727

Buttonwillow Improvement District
Attn: Jason Gianquinto
1101 Central Ave.
Wasco, CA  93280

Pond Poso Improvement District
Attn: Jason Gianquinto
1101 Central Ave.
Wasco, CA  93280

North Kern South Tulare Hospital District
Attn: Kathy Gutierrez
1509 Tokay Ave.
Delano, CA  93215

Kern Community College District
Attn: Tracy Blakemore
2100 Chester Ave.
Bakersfield, CA  93301

104 Investments, LLC, a California limited liability
company
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

ACDF, LLC, a California limited liability company
Cantua Orchards, LLC, a California limited liability
company
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Bear Flag Farms, LLC
Attn: Legal Department
5260 N. Palm Ave., Suite 421, Mail Stop M
Fresno, CA 93704

Bishop Farms 15, LLC
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Boulevard Associates, LLC
700 Universe Blvd.
Juno Beach, FL 33408
Attn: Land Services Administration

C&A Farms, LLC
Maricopa Orchards, LLC
Attn: Jon Reiter, CEO and Jennifer Reisz, General
Counsel
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Cantua Orchards, LLC
Lincoln Grantor Farms, LLC
5260 N. Palm Ave., Suite 421, Mail Stop M
Fresno, CA  93704
Attn: Legal Department

Donna Brown
Old Republic Title Company
7451 N. Remington Ave., Suite 102
Fresno, CA  93711

Grandon Farms, LLC, a California limited
liability company
ACDF, LLC, a California limited liability company
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Granville Farms, LLC, a California limited liability
5260 N. Palm Ave., Suite 421, Mail Stop M
Fresno, CA  93704

GSCE Valley Solar Development, LLC, a Delaware
limited liability company
Attn: Legal Department
3857 Birch Street, Suite 441
Newport Beach, CA  92660

GVM Investments, LLC
Grandon Farms, LLC
Attn: Legal
1306 W. Herndon Ave., Suite 101
Fresno, CA  93711

Lincoln Grantor Farms, LLC, a California limited
liability company
Grandon Farms, LLC, a California limited liability
company
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Locans Investments, LLC, a California limited
liability company
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Maricopa Orchards, LLC
Attn: Legal Department
1306 West Herndon Ave., Suite 101
Fresno, CA  93711

Maricopa Orchards, LLC,
a California limited liability company
Attn: Eric Thor
5260 N. Palm Ave., Suite 421
Fresno, CA  93704

Origis Holdings USA Subco, LLC
800 Brickell Ave., Suite 1000
Miami, FL 33131
Attn: Samir Verstyn

Origis Holdings USA Subco, LLC
c/o Allen Matkins
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111
Attn: Barry Epstein, Esq.

Sageberry III, LLC
Sageberry IV, LLC
Attn: Legal
1306 W. Herndon Ave., Suite 101
Fresno, CA 93711

San Luis West Solar, LLC
c/o Dos Puntos, LLC
Attn: General Counsel
10 Ivy Drive
Orinda, CA  94563

Wegis Family Farms LLC
Attn: Michael C. Young
34929 Flyover Court
Bakersfield, CA  93308

Westlands Cherry, LLC
c/o 4700 Wilshire Blvd.
Los Angeles, CA  90010
Attn:  Jennifer Gandin

Westlands Cherry, LLC
c/o 4700 Wilshire Blvd.
Los Angeles, CA  90010
Attn: General Counsel

Westlands Cherry, LLC
c/o Matthew C. Fragner, Esq.
Fragner Seifert Pace & Mintz, LLP
800 S. Figueroa, Ave., Suite 680
Los Angeles, CA  90017

Willow Avenue Investments, LLC
Attn: Legal Department
1306 West Hendon Ave., Suite 101
Fresno, CA  93711

Office of County Counsel
Attn: Jeremy S. McNutt,
Deputy County Counsel
1115 Truxtun Ave., 4th Floor
Bakersfield, CA 93301

American Equity Investment Life Insurance Company
c/o Brookfield Wealth Solutions
Brookfield Place New York
250 Vesey Street, 15th Floor
New York, New York 10281
Attn: Brad Michaelson

Daniel L. Egan
Wilke Fleury LLP
621 Capitol Mall, Suite 900
Sacramento, CA 95814

Jonathan Reiter
7058 N. West Avenue
Suite 101
Fresno CA 93711

Nili Holdings, LLC
Attn: Mindy Nili
21 Rockrose
Aliso Viejo, CA 92656